# EXHIBIT 18

# IN THE SUPREME COURT OF THE STATE OF MISSISSIPPI

*Mississippi Supreme Court Case No. 2007-DR-01758-SCT*
*Itawamba County Case No. 03-090(G)1*

*THOMAS EDWIN LODEN, Petitioner*

*v.*

*STATE OF MISSISSIPPI, Respondent*

## AFFIDAVIT OF C. GERALD O'BRIEN, Ph.D.

State of Mississippi
Hinds County

I, C. Gerald O'Brien, Ph. D., do declare as follows:

1.    I maintain a private practice in psychology in Jackson, Mississippi. In
2001, I maintained a private practice in psychology in Jackson,
Mississippi. I treat patients with mental health issues and also perform
forensic evaluations.

2.    In early July 2001, I was contacted by an assistant for Mr. Daniels, who
informed me that Mr. Daniels represented Thomas E. Loden Jr. and asked
me if I could conduct an evaluation of Mr. Loden in relation to him being
charged with capital murder and sexual battery. I was not asked to
evaluate whether Mr. Loden was competent to plead guilty, or to discuss
whether his depression and suicidal ideation were motivating his desire to
plead guilty. I was not asked to evaluate whether Mr. Loden was
competent to direct his attorneys to pursue a legal strategy that would

secure a death penalty. I informed Mr. Daniels' assistant that I would not be able to evaluate Mr. Loden until late July 2001. Neither Mr. Daniels nor his assistant informed me what defense theory counsel intended to pursue.

3. Mr. Daniels and I did not speak prior to the evaluation. Mr. Daniels and I had a brief conversation in August 2001, during which he asked me to prepare my report by mid-September 2001.

4. I have never spoken to or met with James Johnstone, Mr. Loden's second attorney, in relation to Mr. Loden's case.

5. Mr. Daniels provided me with the following documents prior to Mr. Loden's evaluation:

   a. Police reports, interviews, autopsy report and videotape, supplied by the District Attorney's Office;

   b. Mississippi State Hospital Report by R. McMichael M.D., Philip Merideth, M.D., Shirley M. Beall, Ph.D. (Psychiatric Evaluation, 6-22-01);

   c. The MSH psychological test results in summary form;

   d. A copy of the Court's Order approving Mr. Loden's evaluation by an independent psychologist; and

   e. A copy of the Indictment against Mr. Loden.

6. Neither Mr. Daniels nor his assistant provided me with any other information about Mr. Loden or Mr. Loden's case. In particular, I have requested that Mr. Daniels obtain the raw data from the psychological tests

performed at Mississippi State Hospital Forensic Unit on June 21, 2001. I received the test results in summary form only. It is my standard procedure to review the raw data from those tests whenever possible. Mr. Daniels did not provide me with this data.

7.    On August 13, 2001, I examined Mr. Loden in a two hour face-to-face interview at my office in Jackson, Mississippi. Neither Mr. Daniels nor Mr. James Johnstone, Mr. Loden's other counsel, was present. I performed ability/neuropsychological and psychological/personality tests. Based on my observations at the time and the limited history that was given to me, I concluded that Mr. Loden was competent to stand trial and assist in his own defense. I also concluded that at the time of the crime, Mr. Loden was under the influence of extreme mental and emotional disturbance and distress, although this probably did not rise to the level that he did not know the nature and quality of his acts or the difference between right and wrong in relation to those acts at that time. However, his capacity to appreciate the criminality of his conduct and conform his conduct to the requirements of the law was substantially impaired.

8.    At the time, I had no history of Mr. Loden's memory problems. This information would have been helpful in evaluating the significance of Mr. Loden's amnesia at the time of the crime.

9.    While Mr. Loden reported his history of suicide attempts to me, I had no history of suicidal behavior in Mr. Loden's family; in particular, I was not

aware that Mr. Loden's half-sister, Sonia Brown, also attempted to commit suicide.

10. I had not received any military records, interviews of Mr. Loden's military colleagues, or even basic information about Mr. Loden's combat experience. This information would have been helpful in evaluating Mr. Loden for Post Traumatic Stress Disorder. I planned to request this information, as well as additional information regarding Mr. Loden's social history, from Mr. Daniels; however, Mr. Daniels never called me back after our conversation in August 2008. Requesting that attorneys provide me with additional information regarding their client's family background and social history is my standard practice and I would have requested these additional documents had Mr. Daniels called me back.

11. Mr. Loden reported to me that he had a long history of substance use and abuse. However, he attempted to minimize the effects of the substances on him. Because I was not aware of Mr. Loden's military history and information of friends and family regarding Mr. Loden's Post Traumatic Stress Disorder symptoms, I could not put Mr. Loden's substance abuse in proper context.

12. I have received a copy of the report regarding Mr. Loden's evaluation by the psychiatrists at the Mississippi State Hospital. I was not asked to provide a rebuttal opinion to this report.

13. On September 17, 2001, after completing my evaluation of Mr. Loden, I faxed my report to Mr. Daniels. Mr. Daniels did not acknowledge that he

received the report or contact me to discuss the report in any manner. Mr. Daniels never informed me that he needs the report completed sooner than September 17.

14. Mr. Daniels never contacted me after I faxed my report. If Mr. Daniels had additional concerns about Mr. Loden's mental condition, I would have been happy to address them.

15. I learned that Mr. Loden's trial was continued to October 2001 from a newspaper article. Along with my report, I sent a letter to Mr. Daniels inquiring whether he would like me to testify during the upcoming trial and informing him of my availability. Mr. Daniels never responded to my letter.

16. I learned that Mr. Loden pled guilty shortly after Mr. Loden's plea. At that time, I attempted to contact Mr. Daniels in relation to this case and was informed that Mr. Daniels was no longer a private attorney, but had started working for the District Attorney's Office.

17. I have reviewed the affidavit of Dr. High who evaluated Mr. Loden during his post-conviction proceedings. A significant portion of factual information contained in Dr. High's affidavit was unknown to me when I examined Mr. Loden. If I had all the data and information that Dr. High had relied upon, I would have come to the same conclusions and diagnoses that Dr. High did. That additional data and information would have also provided more support for the conclusions I reached in my report.

18.     In the forensic work that I have done, I depend on counsel and other

members of the defense team to conduct a thorough life history

investigation.  Because conducting such an investigation competently is

such a time-intensive exercise, it would be very costly for a forensic

psychologist to do the document collection, traveling and witness

interviews necessary to prepare a thorough psycho-social history.  I was

not given such a report in this case.


FURTHER AFFIANT SAYETH NOT.


C. GERALD O'BRIEN, Ph. D.


Sworn to and subscribed before me
this 4th day of December 2008.


NOTARY PUBLIC FOR THE
STATE OF MISSISSIPPI

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 61769
HAROLD JOHNSON
Commission Expires
Jan. 10, 2013
RANKIN COUNTY

# EXHIBIT 19

DEC-8-2008 09:10A FROM:JAMES P JHNSTONE 6624888524 ; 2138925454 P.2

## IN THE SUPREME COURT OF THE STATE OF MISSISSIPPI

*Mississippi Supreme Court Case No. 2007-DR-01758-SCT*
*Itawamba County Cause No. 03-090(G)1*

---

*THOMAS EDWIN LODEN, Petitioner*

*v.*

*STATE OF MISSISSIPPI, Respondent*

---

## AFFIDAVIT OF JAMES P. JOHNSTONE

I, James P. Johnstone, do declare as follows:

1.     I am attorney licensed to practice before this Court. My office is located in Pontotoc, Mississippi. I have personal knowledge of the following facts and if called as a witness I would and could competently testify to them.

2.     On or about July 5, 2000, Circuit Judge Thomas Gardner contacted me and informed me that he intended to appoint me to represent Thomas E. Loden. I agreed to represent Mr. Loden.

3.     Attached as Exhibit A hereto is a true and correct copy of the Itemized Statement for Compensation and Expenses that I submitted to the Circuit Court of Itawamba County in connection with the work that I performed representing Mr. Loden. I believe that that Statement for Compensation accurately reflects the time I spent on the case.

4.     I first met with Loden on July 6, 2000 for about one to one and a half hours in jail in New Albany where Loden was held. I have reviewed my notes of that meeting, and they indicate that, during that initial meeting Loden told me that he was 36 years old; he was born in Tupelo; he had been married to Katrina ("Kat") for 5 years; he and Kat Loden had a 2 1/2 year

- 1 -

old daughter named Abby; Loden attended high school in the area; he had been a Marine since 1982 and had performed well with many promotions over the years; he had been married twice before, but those marriages ended because both wives had been unfaithful; he was often on deployment with the Marines; he fought in "Operation Desert Storm" from August 1990 to April 1991 where he was "first in and last out;" he saw a friend of his burned to death and couldn't do anything about it; after Desert Storm, he was frequently moved from one unit to another where problems existed because he was known as a problem solver; he was transferred in about 1995 to Virginia to serve as an instructor in the Marine Corps FAST ("Fleet Anti Terrorism Security Team") which Loden described as a prestigious and high pressure assignment; and more recently, he had been assigned to recruiting in Vicksburg. Mississippi, which also imposed pressures on Loden to make his recruiting goals every month.  Loden told me that his parents were divorced when he was two; his mother thereafter abandoned him; his stepmother abused him as a boy; he had been sexually abused at church at a young age; he had been exposed to pornography at a young age; he was shuffled back and forth between his mother and father while growing up; his sister had attempted suicide as an adolescent; Loden himself had attempted suicide several times; and his father died when he was 16.  Regarding the night of Ms. Gray's death, Loden told me that he had spoken to his wife that evening via cell phone, and that he had been drinking.

     5.     My time records indicate that I met with Loden again the next day in New Albany but that might be an error since my handwritten notes indicate that I spoke only with law enforcement that day.

     6.     On August 22, 2000, I met with some of Loden's family members who traveled to Pontotoc to meet with me, but they discussed only Loden's treatment in jail, and their request

that I assist in obtaining psychiatric help for Loden because they felt that he was still suicidal. I did not interview them about Loden at that time.

7.    The next time that I saw Loden was at his arraignment in November 2000.

8.    In January 2001, I asked David Daniels if we would associate in as my co-counsel on the case. On January 31, 2001, Daniels and I met with Loden for about 2.5 hours in jail although I do not recall what we discussed and I did not make any notes that refresh my recollection.

9.    We filed a number of different motions on March 2, 2001, including a motion for funds to hire Gary Mooers as a mitigation specialist. Judge Gardner denied that motion on April 25, 2001. After that ruling I did not personally interview any mitigation witnesses, and I did not personally conduct a "mitigation" investigation.

10.    I next saw Loden in Court for the hearings on several suppression motions on June 26 and 27, 2001. Mr. Daniels questioned Loden at the suppression hearing. I do not recall my discussing with Loden what questions if any he would be asked. Following the suppression hearing, Mr. Loden asked me to file a second suppression motion.

11.    David Daniels and I met with Loden on September 18 and 19, 2001. We told Loden that Judge Gardner had told us that Loden needed to decide within the next day or two whether to plead guilty. At that time, we did not have a mitigation case to present because there had not been any mitigation investigation. We did not discuss with Loden the report of Dr. O'Brien or whether he would testify on behalf of Loden at trial.

12.    Loden wanted to know whether, if he pleaded guilty, he could appeal, and in particular whether he could appeal from the Circuit Court's adverse pre-trial rulings including the rulings on the suppression motions. I told Loden that if he pleaded guilty and was sentenced

- 3 -

to death, the Mississippi Supreme Court would review his sentence, and that they would review everything that was in the record. I told Loden that I believed that (1) the rulings on the suppression motions, (2) the order denying the request for funds to hire a mitigation specialist, and (3) the use of Loden's wife Kat to induce Loden to talk with the police on June 30, 2000 were issues that might be reviewed that were potentially viable.

13.     Attached hereto as Exhibit B is a copy of a newspaper article where I was accurately quoted as having said that Loden had decided earlier that week to plead guilty and that his death sentence "has an automatic review."

FURTHER AFFIANT SAYETH NOT.

JAMES P. JOHNSTONE

Subscribed and sworn to before me on this __8th__ day of December, 2008, by __James P. Johnstone_____, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: __Tracy Taylor_____

STATE OF MISSISSIPPI
TRACY TAYLOR
ID NO. 72515
Commission Expires
01-21-2012
NOTARY PUBLIC
PONTOTOC COUNTY

la-1007849

- 4 -

IN THE CIRCUIT COURT OF ITAWAMBA COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI                              PLAINTIFF

VS.                                              NO. CR00-068

THOMAS EDWIN LODEN, JR.                          DEFENDANT

### ITEMIZED STATEMENT FOR COMPENSATION AND EXPENSES

Pursuant to statutory authority and Wilson v. State, 574 So. 2d 1338 (Miss. 1990), the undersigned attorney does hereby make a claim for compensation and expenses for representation in the total amount of Twelve Thousand Two Hundred Fifty-Four Dollars and Fifteen Cents ($12,254.15), itemized as follows:

I.  **TIME SPENT IN PREPARATION (OUT OF COURT)**

| DATE | DESCRIPTION OF ACTIVITY | HOURS |
|------|-------------------------|-------|
| 07/05/00 | Conference with Clay Joyner | 1.00 |
| 07/06/00 | Conference with Tom Loden Round Trip to New Albany | 3.00 |
| 07/07/00 | Conference with Tom Loden Round Trip to New Albany | 2.00 |
| 07/10/00 | Telephone Conference with Mickey Baker | .50 |
| 08/22/00 | Conference with Loden Family Members | 1.50 |
| 08/22/00 | Phone Conference with Captain J. Groharing | .50 |
| 08/26/00 | Research | 2.50 |

| | | |
|---|---|---|
| 10/09/00 | Conference with Tom Loden<br>Round Trip to Fulton | 3.50 |
| 11/21/00 | Conference with Tom Loden<br>Round Trip to Fulton | 5.50 |
| 01/09/01 | Conference with David Daniels<br>Round Trip to Tupelo | 2.00 |
| 01/11/01 | Conference with David Daniels<br>Round Trip to Tupelo | 3.00 |
| 01/12/01 | Conference with Clay Joyner<br>View Pictures | 1.00 |
| 01/15/01 | Review Discovery | 3.50 |
| 01/18/01 | Review Discovery | 3.50 |
| 01/31/01 | Conference with Tom Loden<br>Round Trip to Fulton | 3.00 |
| 02/05/01 | Conference with David Daniels<br>Round Trip to Tupelo | 2.50 |
| 02/28/01 | Conference with David Daniels<br>Motion Preparation<br>Round Trip to Tupelo | 5.25 |
| 03/01/01 | Preparation of Motions | 6.00 |
| 03/20/01 | Conference with Clay Joyner, David Daniels<br>Round Trip to Tupelo | 3.00 |
| 03/21/01 | Discovery Meeting with D.A. Office<br>Round Trip to Tupelo | 4.25 |
| 03/29/01 | Meeting at Mississippi Highway Patrol<br>Round Trip to New Albany | 2.00 |
| 04/24/01 | Conference with Prosecutors, Judge and David Daniels<br>Preparation for Motion Hearings<br>Round Trip to Tupelo | 6.25 |
| 04/25/01 | Motion Hearings<br>Round Trip to Tupelo | 1.50 |

2

OCT-08-01 11:32 AM    YEOMANJOHNSTONE          662 48. 4789              P.04

| Date | Description | Hours |
|------|-------------|-------|
| 06/22/01 | Conference with David Daniels<br>Round Trip | 4.00 |
| 06/24/01 | Preparation for Pre-Trial Motions | 4.50 |
| 06/26/01 | Pre-Trial Motions<br>Round Trip to Fulton | 2.00 |
| 06/27/01 | Pre-Trial Motions<br>Conference with Tom Loden<br>Round Trip to Fulton | 3.00 |
| 07/10/01 | Conference with David Daniels<br>Re:  Motion | 1.50 |
| 08/01/01 | Conference with Tom Loden<br>Round Trip to Fulton<br>Preparation of Motion | 4.25 |
| 08/21/01 | Conference with David Daniels<br>Conference with D.A. Office<br>Round Trip to Tupelo | 3.00 |
| 08/27/01 | Conference with David Daniels<br>Conference with Tom Loden<br>Round Trip to Fulton | 4.00 |
| 08/30/01 | Conference with Clay Joyner<br>Round Trip to Tupelo | 2.50 |
| 09/05/01 | Review file for trial preparation | 4.50 |
| 09/09/01 | Review file for trial preparation | 4.00 |
| 09/12/01 | Review Jury Questionnaires | 2.50 |
| 09/18/01 | Conference with David Daniels<br>Conference with Tom Loden<br>Round Trip to Tupelo | 7.25 |
| 09/19/01 | Conference with D.A. Office (Re:  Plea)<br>Conference with David Daniels<br>Conference with Tom Loden<br>Review Documents<br>Round Trip to Tupelo | 8.50 |

3

| 09/20/01 | Conference with David Daniels, Tom Loden, D.A. Office Review Documents | 8.00 |
|---|---|---|
| 09/21/01 | Guilty Plea – Sentence Hearing | 3.00 |
| SUBTOTAL | (133.75 Hrs. @ $40.00/Hr.) | $5,350.00 |

## II. TIME SPENT IN OPEN COURT

| 11/21/00 | Arraignment | 1.50 |
|---|---|---|
| 01/11/01 | Pre-Trial Hearing | 3.00 |
| 04/25/01 | Motion Hearings | 7.25 |
| 06/26/01 | Pre-Trial Hearing | 8.00 |
| 06/27/01 | Pre-Trial Hearing | 7.00 |
| 09/21/01 | Plea and Sentencing Hearing | 9.00 |
| SUBTOTAL | (35.75 Hrs @ $60.00/Hr.) | $2,145.00 |

## III. EXPENSES

| A. | Overhead ($25.00 x 169.5 Hrs.) | 4,237.50 |
|---|---|---|
| B. | WCBI (Video Tape) | 25.00 |
| C. | Mileage (1465 miles X $0.31 per mile) | 454.15 |
| D. | Copies (425 copies X $0.10 per copy) | 42.50 |
| | SUBTOTAL (EXPENSES) | $4,759.15 |

## III. TOTAL OF I, II, and III          $12,254.15

4

I, James P. Johnstone, Attorney for the named Defendant, do hereby certify that I have not received any payment or promise of payment for representing said indigent Defendant in this cause and that the hours and expenses listed above are true and correct.

This the _____ 8th _____ day of October, 2001

Respectfully submitted,

YEOMAN AND JOHNSTONE, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 337
PONTOTOC, MISSISSIPPI 38863
(662) 489-6698

_____
JAMES P. JOHNSTONE
Mississippi Bar Number 3175

Attorney for the Defendant,
THOMAS EDWIN LODEN, JR.

Case: 1:10-cv-00311-NBB Doc #: 5-2 Filed: 07/18/11 18 of 138 PageID #: 325

Highs 80s
Lows 60s

**Partly cloudy**

Weather, Page 2A

**State shouldn't suffer heavy insurance toll from terrorist attacks**

**NE Miss. High School Football Results**



---

### NORTHEAST MISSISSIPPI

# Daily Journal

www.djournal.com

A LOCALLY OWNED NEWSPAPER DEDICATED TO THE SERVICE OF GOD AND MANKIND.

50 CENTS · SATURDAY, SEPTEMBER 22, 2001

## UPFRONT

### EYE OPENERS



**Arrests made overseas in attacks**

Page 3A

### DID YOU HEAR?

**Youth leader gets kids to steal signs**

The head of the city's Youth Commission in Hawthorne, Calif., was arrested after he allegedly recruited children to steal the campaign signs put up by a rival in a school board election.

Hugo Rojas, 32, was arrested and booked for investigation of grand theft and city misdemeanor counts. If convicted, he could face up to eight years in prison.

Police said Rojas was arrested Monday at City Hall as he arrived to attend a Youth Commission meeting. He claims he was the victim of a "political setup," said police Lt. Wayne Salmon.

Three boys were caught over the weekend taking campaign signs from a person's yard. They said they then offered them $2 to $5 apiece to steal the signs of Hap Michelin, a deputy city attorney running against Rojas, and Mayor Larry Guidi, who is running for re-election.

Rojas allegedly told one of the boys that if he didn't participate in the sign-swiping, he would see him in court in a previous graffiti offense, Guidi said.

### UPCOMING

**New arrivals**

■ Making room for a new brother or sister is one of the biggest adjustments young children have to make. Parents can't eliminate sibling rivalry, but they can ease the transition. Read the story in Sunday Living.

### QUOTE, UNQUOTE

*"This is not the time for negotiations or discussions."*

spokesman
for President Bush's

### INSIDE

| Vol. 128 No. 1/5 | |
| --- | --- |
| Business/Page 5A | Local/Page 1B |
| Classifieds/Page 1C | Metro/Page 4C |
| Comics/Page 5C | Obituaries/Page 8A |
| FYI/TV/Page 1D | Religion/Page 6A |
| Letters/Page 4C | Scoreboard/Page 2D |

♻ Printed on recycled and recyclable paper.

---

# U.S. sends more warplanes to Persian Gulf

■ White House warns Taliban to heed Bush ultimatum on bin Laden.

**By Martial Frère**

WASHINGTON — The Pentagon committed more aircraft to the Persian Gulf and the gathering war on terrorism Friday as Afghanistan snubbed a demand from President Bush to turn over Osama bin Laden and others blamed for last week's death and extensive destruction.

"This is not the time for negotiations or discussions," warned President Bush's spokesman.

One day after Bush delivered a nationally televised montage of reassurance and resolve came a freshly sobering warning about more terrorist attacks.

"Everybody knows that if you take a look at this group and Osama bin Laden that there will be a next attack ... It's not a matter of if, but when," said Sen. Pat Roberts, R-Kan., emerging from an FBI briefing in a secure room at the Capitol.

The economy suffered further aftershocks from the attacks that jolted more than 6,000, brought down the World Trade Center twin towers and wounded the Pentagon. The stock market fell sharply, nearing the end of one of the gloomiest weeks in Wall Street history.

The airline industry was buffeted by fresh layoffs — a total of more than 100,000 since the attacks — and Congress hastened to provide relief.

The administration debated internally whether to seek fresh economic stimulus legislation in Congress. Aides involved in one meeting during the day said a consensus seemed to emerge to hold federal Reserve Board Chairman Alan Greenspan's



TAKING OFF: An F-14 Tomcat lands on the deck of the aircraft carrier, USS Theodore Roosevelt, Wednesday in the Atlantic Ocean. The USS Theodore Roosevelt left its home port at the Norfolk Naval Base in Norfolk, Va., Wednesday enroute to an unknown location.

advice and wait a week or two before acting.

There were determined expressions of optimism in the nation sought to rally from 10 days of anxiety and sadness.

"We will rebuild New York. It's our nature. It's our spirit," said Attorney General John Ashcroft, touring the 16-block rubble ruins of the World Trade Center.

■ Members of the New York Stock Exchange

*Turn to GULF on back page*

---

## IN TUPELO



A SWEET CAUSE: Grant Morgan, 6, waits for his mom, Lori, to finish pouring a cup of fresh squeezed lemonade as Grant cuts take it to a motorist who stopped by his home on Rachel Street in Tupelo Friday afternoon. Grant and his mom decided to get old toys and lemonade to raise money for victims in New York and Washington. After nearly two days of sales, the children have raised more than $20.

---

## Economists: Recession now appears certain

**By Martin Crutsinger**

WASHINGTON — Massive labor layoffs. Empty hotels and restaurants. Wall Street's biggest weekly point decline ever. The economic damage from the terrorist attacks has virtually guaranteed a recession this year, many economists said Friday.

The only question remaining: How long and how deep?

"I think we will have a mild recession that will end sometime in the first three months of next year, but we really don't know yet. Things are very uncertain and everybody's nervous."

*"I think we will have a mild recession that will end sometime in the first three months of next year, but we really don't know yet. Things are very uncertain and everybody's nervous."*

**David Wyss**
Chief economist at
Standard & Poor's in New York

Many economists said Friday, based that 18 of its 31 forecasters believe the country is now in a recession.

A Blue Chip Economic indicators reported that the number of economists it surveyed who believe a recession has begun had jumped to 42 percent, up from 13 percent in early September.

In both surveys, the new pessimism was

peered to a belief that consumers — who account for two-thirds of economic activity — would cut back sharply on their spending in the wake of the terrorist attacks and rising job layoff announcements.

Some analysts said the National Bureau of Economic Research, the official arbiter of recessions in the United States, will end up doing the work of the forecasters in how or later, based on when various monthly statistics start to turn down.

"The Sept. 11 tragedy has not didn't name the recession, but it's finally allowed the broader markets to recognize one," said Jeffrey Rubin, chief economist at CIBC, a New York investment bank, who predicts the U.S. economy will see an additional 600,000 layoffs in coming months.

Wall Street closed out a horrendous week in which the Dow Jones industrial average lost 1,369.70 points, its biggest one-week point

*Turn to ECONOMY on back page*

---

### Loden pleads; gets death

■ Former Marine recruiter killed teen girl in Itawamba County.

**By Sarah Patton**

A former United States Marine Corps recruiter pleaded guilty Friday to capital murder and five other charges, and was sentenced to death.

Theodore E. "Eddie" Loden, 36, pleaded guilty in the killing, rape and murder of 16-year-old Leesa Gray of the Dorsey community in Itawamba County. Loden pleaded guilty to the brutal murder of Leesa Gray, 16, of the Dorsey community, and was sentenced to death by Circuit Court Judge Thomas Gardner.

GUILTY: Investigators lead Thomas E. "Eddie" Loden from the Lee County Justice Center Friday. Loden pleaded guilty to the brutal murder of Leesa Gray, 16, of the Dorsey community, and was sentenced to death by Circuit Court Judge Thomas Gardner.

After a search, she was found dead of strangulation the next day in Loden's van.

"In the parents, family and friends of Leesa Gray, there are no words I could say that would offer comfort, solace or express my sorrow." Loden said, tearfully, during the hearing. "I am as guilty as anyone imaginable the worst part of your world. I wish I could change that ... I would if I could."

"I truly was sorry. I wish there was more I could say or do ... I wish that God would comfort you, and I beg that he may for give me."

Regardless of Loden's apology, said District Attorney Johnny Young, the message he conveyed can never be undone.

"It does not lessen the crime," Young said. "He spared the future of a two-week trial by coming in here and pleading guilty. I submit to the court that the deluxe trial, Mr. Loden, you shortened the penalties."

There is an overwhelming amount of evidence towards his guilt.

Loden pleaded guilty to six felony counts trial on him. Capital murder, with the underlying felony offense of kidnapping, one count of rape and four counts of sexual battery. As each charge was read to him by Circuit Court Judge Thomas Gardner, Loden answered, "Guilty, sir." "Yes, your honor," and "Yes, I'm guilty," in a low, steady voice.

With shaking hands, Young read aloud the details of the case.

*Turn to LODEN on back page*

---




## Gulf
Continued from Page 1A

team and their manager and coaches all agreed to donate their wages for the day to the relief effort, $400,000 in all. And a long roster of stars volunteered for a morale-boosting nationally broadcast entertainment program.

For the first time since the attacks, Bush did not appear in public, working instead in private meetings with his national security advisers, representatives of the insurance industry and others.

Dozens of fast-writing White House aides sent the president off to Camp David as he boarded his helicopter at mid-afternoon. First Lady Laura Bush gave her husband a peck on the cheek before they boarded Marine One.

Halfway around the world, Pakistan, next door to Afghanistan, stood as a prime example of the complexities behind Bush's efforts to rally all nations to the anti-terrorism banner.

The president was burned in effigy during the day as thousands of Muslims protested their government's decision to cooperate with America.

At the same time, several sources, speaking on condition of anonymity, said the administration had notified Congress it was moving to ease Pakistan sanctions that had been in place for several years in an attempt to curtail weapons programs.

"We have to give something to them, and I think the sanctions have outlived their usefulness," said Rep. Henry Hyde, R-Ill., chairman of the House International Relations Committee.

Afghanistan's ambassador to Pakistan responded to Bush's demand that bin Laden and others be turned over. If America has proof, "we are ready for the trial of Osama bin Laden in light of the evidence," said Abdul Salam Zaeef. Asked if the ruling Taliban were ready to hand him over without a trial, he said: "No," if refusal amended by his translator to say, "No, not without evidence."

To Bush's demand, the ambassador added a warning of his own: "It has angered Muslims of the world and can plunge the whole region into a crisis."

Fleischer, responding a few hours later from the White House podium, refused comment to the conditions Bush laid down Thursday night, "to create clear effort to support and harbor terrorists used to have to render over to the United States or share guidelines, and to allow the United States access to the terrorists' training," he said.

Asked in detail evidence of bin Laden's and the children's involvement, he reviewed the they would like nothing better than to be able to hide where they are hiding and have the United States reveal what we know and how we know it," he said.

The Pentagon released little by way of detail about the deployment of forces around the globe. One senior official, speaking on condition of anonymity, said more Air Force planes had been ordered to support a buildup of firepower in the Persian Gulf region.

The dozen or so additions will join more than 100 warplanes already deployed for the effort to wipe out terrorism.

"You'll see a lot of activity," said Pentagon spokeswoman Victoria Clarke at an interview. "We're preparing for what could very well be a wide range of options. So, you will see a lot of people moving, you'll see a lot of equipment moving."

Bush's prime time speech drew strong support among Americans, according to surveys conducted in the aftermath of the address, and from most overseas leaders who have pledged America their backing.

And yet, Bush's warning that the Taliban would share the fate of bin Laden if they didn't meet U.S. demands marked expressions of anger not only in Pakistan.

Cleric Bakir Abdul-Razak condemned "the new crusade" as "war with a new cover" in prayers carried on Iraqi state TV.

"By God's will, the Americans will not have an easier hand on us," the Iraqi cleric said. "We call for jihad (holy war), we call on you, the Americans."

## Economy
Continued from Page 1A

drop in history.

Analysts said the plunge in stocks will further depress consumer spending so Americans watch their portfolios shrink.

Michael Evans, chief economist at American Economics Group, a private consulting firm, said he did not believe the economy will turn around until six months after the stock market finally starts to rebound.

"We have got to see corporate profits start to come back before we will get consumers relieving feel of anxiety and increasing their capital investment," he said.

It even could be looking for a relatively mild recession with an unemployment rate topping out at 6 percent. The nation's last downturn in 1990 to see the unemployment rate climb to 7.8 percent, Unemployment rose to 4.9 percent in August.

In just the past 11 days, the airline industry has announced more than 100,000 layoffs and the disruption in air travel has quickly rippled through to hotels and other businesses that depend on tourism.

"People have a fear in the head lights look right now. They are not traveling. They are not eating out to eat. They are not staying over as they might," Evans said.

The Conference Board released a new survey Friday that showed that 47 percent of economists believe the country will sink into recession.

"While nearly 50 percent of consumers say they will not cut back on their buying plans, it's important to note that this figure is very likely to fall in widespread layoffs begin to materialize," said Conference Board economist Lynn Franco.

Mark Zandi, chief economist at Economy.com, estimated the losses to the economy in September alone from the airlines at more than $25 billion, led by $4.8 billion in losses at airlines and $6 billion at hotels.

The Blue Chip survey said that three-fourths of its economists forecasting a recession believe the downturn will be either milder or about the same as the 1990-91 downturn.

## Loden
Continued from Page 1A

from the night of Gray's disappearance to Loden's arrest and conviction.

Among the evidence presented against Loden, Young said, was video footage of those acts being committed on Gray. It was apparent Loden, who later was not able to face the tape, had made the recordings, since, according to the statement, his loss, arms and legs were visible and his waist could plainly be heard.

Young said the incidents were filmed on previously recorded home footage of a family reunion.

In his statement made to law enforcement officials in the days after his arrest, Loden said the tape of his attack "would have had to have been made by me," and "I know that I did" kill Gray.

Gray's father had to be excused from the courtroom in details of her kidnap and assault were disclosed.

The videotape was not viewed during the hearing, but previously had been viewed by Gardner and attorneys for the prosecution and defense.

District Attorney Jim Johnstone said Loden had expressed his wish to plead guilty earlier in the week.

"That was his choice," Johnstone said.

During Friday's sentencing hearing, Loden answered his attorneys not to raise any objections to evidence presented by the prosecution and not to cross examine any witnesses. By pleading guilty to the charges, Johnstone said, Loden waived his right to an appeal, but that any death sentence has an automatic review.

"We feel justice has been done," said the Rev. Terry Lee Coleman, pastor of Bethel Baptist Church in Durant. "The family expressed gratitude for all who prayed for them. ... Our hearts go out to the Loden family."

Coleman spoke on behalf of Gray's family, who declined comment on the case.

"Law enforcement did an excellent job in this," Young said. "This was as much evidence I've ever seen gathered in a case."

If lawman had acted any slower than they did, he said, Gray's case may not have been resolved. Loden said he was sorry for Gray's death, Young said, adding, "I still believe he's sorry he got caught."



**UNLEASH YOUR PET!**
RADIO FENCE™ PET CONTAINMENT SYSTEMS

Call PetSafe of Northeast Mississippi
**On the Net**
■ National Association for Business Economics
http://www.nabe.com
■ National Bureau of Economic Research http://www.nber.org



Sat 9-7 • Sun 1-5    UP TO 12 MONTHS NO INTEREST

**Bassett**
Anniversary Celebration! **SALE**

*Everything's On Sale*

Final Weekend!

**Simply Yours!**

Choose from 2 tables, 3 leg styles, 4 chair styles, and 3 stylish finishes. Mix and Match to create a look that's uniquely you.



Select a Table

Select a Leg Style

Select a Chair

Select a Finish



$899

**Dining Room!**

$1999

$899







Take an additional 10% off all lamps, pictures and other accessories



**Bassett Quality Curios**
Cherry or Oak
Reg. $1253

ONLY
$398

**Bassett**
FURNITURE DIRECT
*Your One Stop Furniture Design Store*

MON-SAT 9-7
SUNDAY 1-5

121 N. Coley Rd
Tupelo, MS
601-841-0222



**Protect What You Value Most!**

For a **FREE** review of your present home owners insurance coverage call one of the agents listed below.

**GuideOne Insurance**
Helping Consumers As Partners

**FRED WATSON AGENCY**
2504 West Main Suite F • Tupelo
842-0009

**BETTY DYE AGENCY**
301 West Oxford Street
Fontotoc, MS
489-0345

**JON SULLIVAN AGENCY**
2531 S. President at Cliff
Gookin Blvd. • Tupelo
844-4065

**TINA BAILEY AGENCY**
2504 West Main Suite F • Tupelo
842-0009

**TALMADGE SMITH AGENCY**
1130 West Main • Tupelo
842-9670

**EDDIE SULLIVAN AGENCY**
2531 S. President at Cliff

# EXHIBIT 20

ROY O. PARKER
ATTORNEY AT LAW
209 COURT ST.
TUPELO, MISSISSIPPI 38801

PHONES:
OFFICE 842-4112
HOME 842-1156

September 11, 1968

Mr. Archie Lee Cates
Chancery Clerk - Itawamba County
Fulton
Mississippi

Re: Thomas Edwin Loden vs Bobbye
Annette Loden Brown
Cause No. 5976

Dear Sir:

Please issue subpoenas for the following witnesses to appear on behalf of the defendant, Mrs. Bobbye Loden Brown, at the hearing in this matter to be held in the Chancery Court Building in Tupelo, Mississippi at 10:00 o'clock A. M. on Friday, September 13, 1968:

1. Roy McComb
   ████████████████ - Tupelo, Mississippi

2. Evon Richey
   ████████████ - Tupelo, Mississippi

3. Christine Whitten
   ████████ (about 2 miles North of Tupelo)
   Tupelo, Mississippi

4. Mary Edwards
   ████████
   Tupelo, Mississippi

5. Mary Howell
   ████████ - Tupelo, Mississippi

Yours truly,

*Roy O. Parker*

ROY O. PARKER

ROP:jh

SCRIBNER & BREWER
ATTORNEYS-AT-LAW
BOX 736
315 WEST MAIN STREET
TUPELO, MISSISSIPPI 38801

ROBERT E. SCRIBNER
WILLIAM H. BREWER

November 28, 1967

TELEPHONE 842-5291

Mr. Lloyd Thomas
Chancery Court Clerk
Itawamba County
Fulton, Mississippi

Re: Thomas Edwin Loden
vs.
Bobby Annette Loden
No. 5976

Dear Mr. Thomas:

Please issue subpoenas for the appearance of the following persons to appear on behalf of the Complainant, Thomas Edwin Loden, returnable to the first day of your December, 1967 term of court:

(1) Mrs. Doris W. Nichols, Fulton, Itawamba Co., Miss.
(2) Jimmy Lothorp, Tupelo, Lee County, Mississippi;
(3) Darrell Garrison, Baldwyn, Lee County, Mississippi;
(4) Jerry Turner, Shannon, Lee County, Mississippi;
(5) James Sheffield, Tupelo, Lee County, Mississippi;
(6) Jean Kelly, Palmetto Community, Lee County, Mississippi.

We will appreciate your co-operation.

Yours truly,

Robert E. Scribner

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, STATE OF MISSISSIPPI

THOMAS EDWIN LODEN                                    COMPLAINANT

VS.                                                   NO. 5976

BOBBYE ANNETTE CHRISTIAN LODEN                        DEFENDANT

<u>AMENDED BILL FOR DIVORCE</u>

Comes now your Complainant, Thomas Edwin Loden, and brings
this action against the Defendant, Bobbye Annette Christian Loden,
and in support of such action would most respectfully show unto this
court the following facts, to wit:

I.

That your Complainant, Thomas Edwin Loden, is an adult resident
citizen of ████████, Dorsey, Itawamba County, State of Mississippi;
that the Defendant, Bobbye Annette Christian Loden, is an adult
resident citizen of ████████, Dorsey, Itawamba County, State of
Mississippi.

II.

Your Complainant would represent and show unto this court that
the Complainant and Defendant are actual bona fide residents within
the County of Itawamba, State of Mississippi, for more than one year
next preceding the commencement of this suit; that your Complainant
and Defendant are members of the Caucasion race; that your Complainant
and Defendant were legally married in a lawful ceremony in Lee
County, Mississippi on June 30, 1961; that there are two children
born of this marriage, being Annetta Gayle Loden, Age 4 years, and
Thomas Edwin Loden, Jr., age 2 years.

III.

Your Complainant would represent and show unto this cout that
the Complainant is entitled to a divorce from the Defendant on the
grounds of cruel and inhuman treatment; that the Defendant habitually

cruelly and inhumanly curses, nags, and argues with the Complainant;
that the Defendant refuses to wash and iron the clothes of the
Complainant and refuses to cook meals for the Complainant and re-
fuses to care for the children and properly provide for the
children; that the Defendant refuses to be a wife to the Complainant;
that all of such acts amount to habitual cruel and inhuman treat-
ment and the Complainant is entitled to a divorce from the
Defendant on the grounds of habitual cruel and inhuman treatment.

IV.

Your Complainant would represent and show unto this court that
your Defendant has become infatuated with another man, and has
continued to date this other man openly, and continuously, and
that your Defendant is guilty of adultery; that the name of the
other man is well known to the Defendant and will be given to the
Defendant's request in open court; that the Defendant has dated other
men, and is guilty of open adultery with other men other than the
man she is now dating; that the Defendant has invited said other
man to come to the home wherein her children reside, having been
in the presence of said minor children; that your Defendant is

guilty of adultery and the Complainant is entitled to a divorce on
the grounds of adultery.

V.

The Complainant would further represent and show unto this
court that Complainant is of good moral character and is a fit and
suitable person to have the care, of said children; that the
Complainant works, but lives in the same household with his mother
and father, and his mother and father are fit and suitable persons
to help him care for said children; that your Complainant is better
in a position to care for said children and should be the proper
person to have the care, custody and control of the two minor
children entrusted to him; that the Defendant, because of her neglect
of the children is not a fit and suitable person to have the care,
custody and control of said children.

VI.

Complainant would represent and show unto this court that the Complainant and Defendant resided in a home next door to the Complainant's mother and father; that while said home was furnished to them rent-free by his father and mother, Complainant and Defendant accumulated certain household goods, appliances, furniture within the family home to make a home for the Complainant, Defendant, and the two minor children; that your Complainant needs the possession and use of the furniture, household goods, appliances, and contents of the family home in order to make a good and suitable place for the two minor children.

WHEREFORE, PREMISES CONSIDERED, the Complainant prays for process to issue to the Defendant, Bobbye Annette Christian Loden, commanding her to appear and to plead, answer or demur to this Bill for Divorce at the next regular term of this court. Complainant further prays that upon a full and complete hearing herein that this court will grant to the Complainant a divorce absolute from the bounds of matrimony heretofore existing between the Complainant and Defendant. Complainant further prays that the court will award the care, custody and control of the two minor children, Annetta Gayle Loden, and Thomas Edwin Loden, Jr., to the Complainant; Complainant further prays that this court will award to the Complainant the possession and use of the household goods, furniture, and contents and appliances, located in the family home; Complainant prays for general relief.

_Thomas Edwin Loden_
THOMAS EDWIN LODEN

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, STATE OF MISSISSIPPI

THOMAS EDWIN LODEN                          COMPLAINANT

VS.                                          NO. 5976

BOBBYE ANNETTE LODEN                         DEFENDANT

## ANSWER OF COMPLAINANT TO CROSS BILL

Comes now the Complainant and Cross Defendant, Thomas Edwin
Loden, and in answer to the Cross Bill as filed against him would
most respectfully answer as follows:

### I.

Cross Defendant admits each and every allegation of Paragraph
1 of the Cross Bill.

### II.

Cross Defendant denies each and every allegation as contained
in Paragraph 2 of the Cross Bill.  Cross Defendant specifically
denies that he is guilty of habitual cruel and inhuman treatment
and specifically denies that he is guilty of adultery.

### III.

Cross Defendant admits that he is gainfully employed by
Orkin Exterminating Company but would state that his salary is
approximately $300.00 per month.  Cross Defendant denies that he
should be required to pay temporary and permanent support payments
for the two minor children and denies that he should be compelled
to pay the Cross Complainant's Attorney of record for representing
her and suit money either temporary or permanent, but would more
specifically show that the Cross Complainant is gainfully employed
at a factory in Tupelo, has her own funds, and has already paid her
attorney in full for handling this legal matter for her and does
not need counsel fees or suit money.

### IV.

Cross Defendant denies that the Cross Complainant should be
granted the temporary and permanent custody and control of the minor
children; Cross Defendant denies that the Cross Complainant is a
fit and suitable person to have the care, custody and control of

said children entrusted to her but would more specifically show
that the Cross Complainant is of bad moral character, and is unfit
to have the care, custody and control of said children; that the
Cross Complainant abandoned the children on one occasion for four
consecutive months, has left the children in the hands of a negro
woman and gone out on dates with other men, has never cared for
said children through out the lives of said children; that the
Cross Complainant has suffered a nervous breakdown, has been in
the hospital under the care of a doctor, and is not physically or
mentally able to take care of the two minor children of this marriage.
Cross Defendant would further show that the Cross Defendant should be
awarded the care, custody and control of said minor children; that
he resides with his mother and father and that his mother and
father have tended to the children all of the lives of said
children and have a fit and suitable place to help the Cross Defendant
with the care, custody and control of said children; that the Cross

Defendant further needs the household goods and furnishings therein
to make a suitable home for the use and benefit of said minor
children and the Cross Defendant needs the possession and use of
said Corvair automobile for transportation to and from his work.

WHEREFORE, PREMISES CONSIDERED, Cross Defendant prays that
this court will upon hearing in vacation grant to the Complainant
temporary care, custody, and control of the two minor children of
this marriage; Cross Defendant further prays that he will be awarded
the furniture, fixtures and household goods and contents in the
family home; Cross Defendant further prays that he be awarded the
temporary and permanent possession and use of the Corvair automobile.
Cross Defendant prays for general relief.

*Thomas Edwin Loden*
THOMAS EDWIN LODEN

Loyd Thomas, Clerk
Recorded in M.B. ........ page ........
Filed ... 13 ... day of ... March ... 196 7.

STATE OF MISSISSIPPI

COUNTY OF LEE

This day personally appeared before me, the undersigned authority in and for the County and State aforesaid, the within named Thomas Edwin Loden, who upon being duly sworn, states that the above and foregoing allegations are true and correct as stated therein.

Sworn to and subscribed before me on this the _____17_____ day of _____March_____, 1967.

JOHN A. RASBERRY, Chancery Clerk
and Ex-Officio Notary Public.

By _____ NOTARY PUBLIC _____ C.

My Commission Expires First Monday in January, 1968

My Commission Expires:

1-1-68

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, MISSISSIPPI

THOMAS EDWIN LODEN                        COMPLAINANT

VS.                                       NO. 5976

BOBBYE ANNETTE LODEN                      DEFENDANT

<u>ANSWER TO BILL FOR DIVORCE AND CUSTODY OF CHILDREN</u>

Comes now Bobbye Annette Loden and for answer to the
Complaint filed against her in this cause would most respectfully
show unto the Court the following:

- 1 -

That Defendant admits the allegations as set forth in
Paragraph 1 of the Complaint.

- 2 -

That Defendant admits the allegations as set forth in
Paragraph 2 of the Complaint.

- 3 -

Defendant denies the allegations as set forth in
Paragraph 3 of the Complaint and would deny that the said
Complainant is entitled to a divorce from the Defendant; Defendant
would show affirmatively that the said Complainant has fussed and
nagged at Defendant and on several occasions he has struck her
without just cause or reason. That none of the allegations as

set forth in Paragraph 3 are true and correct and Defendant can
show that she has made every effort to make this marriage a
success.

- 4 -

That Defendant would deny the allegations as set forth
in Paragraph 4 of the Complaint and would show affirmatively
that the said Complainant is not a fit and suitable person to have
the temporary or permanent custody and control of the two minor
children. That Defendant denies that she has ever neglected the
children in any manner or form but would show that she has been
required to work continuously during the marriage in order to
support herself and the two minor children.

- 5 -

That Defendant denies the allegations as set forth in
Paragraph 5 of the Complaint. That Defendant would show affirm-
atively that she has helped to pay for the household furnishings
and that she would be entitled to the furnishings in order to
furnish a home for the said minor children.

Now having answered the Complaint filed against her in
this cause, the said Defendant respectfully requests that the
original bill be dismissed and the cost taxed to the said Complain-
ant; that Defendant files this her Cross-bill and would respect-
fully show the following:

CROSS-BILL

Now comes Cross-complainant, Bobbye Annette Loden, who
would most respectfully show unto the Court that she and the
Cross-defendant are adult resident citizens of Itawamba County,
Mississippi; that both have resided in Itawamba County for more
than one year preceding the filing of this Cross-bill.

- 1 -

Cross-complainant would show that she and the Cross-

defendant were married on or about June 29, 1961; that there were two children born to this marriage, namely: Anita Gayle Loden, age 4; and Thomas Edwin Loden, Jr., age 2. That both parties to this suit are members of the white race.

- 2 -

Cross-complainant would further show that Cross-defendant adopted a course of conduct toward her wherein he would fuss and nag at Cross-complainant; that he has threatened to do her bodily harm and has actually struck her on several occasions. That Cross-defendant has been keeping company with another woman, whose name can be furnished on request, prior to and after the separation; that he has on several occasions spent the night with another woman, of which proper proof will be presented at the trial. That the conduct of the said Cross-defendant has caused Cross-complainant great mental anguish, frustration, and uncertainty.

Therefore, Cross-complainant charges the Cross-defendant with habitual cruel and inhuman treatment and adultery.

- 3 -

Cross-complainant would further show that the Cross-defendant is an able-bodied man who is gainfully employed by Orkin Exterminating Company, Inc., and has a salary of approximately $325.00 per month plus commission. That Cross-complainant respectfully requests that Cross-defendant be required to pay a reasonable sum as temporary and permanent support and maintenance for the two minor children and that he be further required to pay a reasonable sum to Cross-complainant's attorney of record for representing her in this cause and that he also be required to pay suit money, both temporary and permanent.

- 4 -

That Cross-complainant respectfully requests that she be granted the temporary and permanent custody and control of the said minor children as she is a fit and suitable person to

rear the said children and that the said Cross-defendant is not
a fit and suitable person to have the custody either temporary
or permanent but Cross-complainant would agree to the said
Cross-defendant having the right of reasonable visitation. Cross-
complainant would further show that it is necessary for her to
have the household furnishings and fixtures in order for her to
furnish a home for the use and benefit of the said minors and
herself and respectfully requests that this Court award to her
the said household furnishings and fixtures now in her possession
and which are now being used for the use and benefit of the said
minors. That she be awarded the Corvair automobile for trans-
portation to and from her work.

WHEREFORE, PREMISES CONSIDERED, Cross-complainant prays
that process of summons do issue to the Sheriff of Itawamba County,
Mississippi, returnable to the April 1967 term of this Honorable
Court and that the Court set by fiat the time, place and date
for the temporary features of the Cross-bill to be heard and that
process issue for the said Cross-defendant returnable to the time,
date, and place of the temporary hearing in this cause; that
upon the final hearing of this cause that the said Cross-complainant
will be granted an absolute divorce from the said Cross-defendant
severing the bonds of matrimony now and heretofore existing be-
tween the parties hereto; that the said Cross-complainant will be
awarded the household furnishings and fixtures, reasonable
attorney's fee for representation in this cause, support and main-
tenance for the said minors, suit money and court costs, all
temporary and permanent; and for such other further and more general
relief as to the Court may seem mete and proper and as in duty
bound Cross-complainant will ever pray.


DOUGLAS D. SHANDS
Attorney for Defendant
and Cross-complainant

STATE OF MISSISSIPPI
          LEE
COUNTY OF ~~ITAWAMBA~~

      Personally appeared before me, the undersigned authority
in and for the said state and county, the within named Bobbye
Annette Loden, who, being by me first duly sworn, states on oath
that all the matters and things set forth in the above and fore-
going Answer and Cross-bill are true and correct as therein stated
and that this Bill for Divorce is not filed by collusion with the
Cross-defendant for the purpose of obtaining a divorce but that
the grounds for divorce as set forth therein are true and correct.

                                      _Bobbye Annette Loden_
                                        BOBBYE ANNETTE LODEN

      SWORN TO AND SUBSCRIBED BEFORE ME, this the 23rd day
of February, 1967.

                                      Notary Public

My Commission Expires:
_My Commission Expires June 22, 1969_

Filed _28_ day of _Feb_ 198_7_
Recorded in M.B. _____ page _____
Loyd Thomas, Clerk

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, STATE OF MISSISSIPPI

THOMAS EDWIN LODEN                COMPLAINANT

VS.                              NO. *5976*

BOBBYE ANNETTE CHRISTIAN LODEN     DEFENDANT

## BILL FOR DIVORCE

Comes now your Complainant, Thomas Edwin Loden, and brings this action against the Defendant, Bobbye Annette Christian Loden, and in support of such action would most respectfully show unto this court the following facts, to wit:

I.

That your Complainant, Thomas Edwin Loden, is an adult resident citizen of Route 2, Dorsey, Itawamba County, State of Mississippi; that the Defendant, Bobbye Annette Christian Loden, is an adult resident citizen of Route 2, Dorsey, Itawamba County, State of Mississippi.

II.

Your Complainant would represent and show unto this court that the Complainant and Defendant are actual bona fide residents within the County of Itawamba, State of Mississippi, for more than one year next preceding the commencement of this suit; that your Complainant and Defendant are members of the Caucasion race; that your Complainant and Defendant were legally married in a lawful ceremony in Lee County, Mississippi on June 30, 1961; that there are two children born of this marriage, being Annetta Gayle Loden, age 4 years, and Thomas Edwin Loden, Jr., age 2 years.

III.

Your Complainant would represent and show unto this court that the Complainant is entitled to a divorce from the Defendant on the grounds of cruel and inhuman treatment; that the Defendant habitually

cruelly and inhumanly curses, nags, and argues with the Complainant; that the Defendant refuses to wash and iron the clothes of the Complainant and refuses to cook meals for the Complainant and refuses to care for the children and properly provide for the children; that the Defendant refuses to be a wife to the Complainant; that all of such acts amount to habitual cruel and inhuman treatment and the Complainant is entitled to a divorce from the Defendant on the grounds of habitual cruel and inhuman treatment.

IV.

The Complainant would further represent and show unto this court that Complainant is of good moral character and is a fit and suitable person to have the care, of said children; that the Complainant works, but lives in the same household with his mother and father, and his mother and father are fit and suitable persons to help him care for said children; that your Complainant is better in a position to care for said children and should be the proper person to have the care, custody and control of the two minor children entrusted to him; that the Defendant, because of her neglect of the children is not a fit and suitable person to have the care, custody and control of said children;

V.

Complainant would represent and show unto this court that the Complainant and Defendant resided in a home next door to the Complainant's mother and father; that while said home was furnished to them rent-free by his father and mother, Complainant and Defendant accumulated certain household goods, appliances, furniture within the family home to make a home for the Complainant, Defendant, and the two minor children; that your Complainant needs the possession and use of the furniture, household goods, appliances, and contents of the family home in order to make a good and suitable place for the two minor children.

WHEREFORE, PREMISES CONSIDERED, the Complainant prays for process to issue to the Defendant, Bobbye Annette Christian Loden, commanding her to appear and to plead, answer or demur to this Bill for Divorce at the next regular term of this court. Complainant further prays that upon a full and complete hearing herein that this court will grant to the Complainant a divorce absolute from the bounds of matrimony heretofore existing between the Complainant and Defendant. Complainant further prays that the court will award the care, custody and control of the two minor children, Annetta Gayle Loden, and Thomas Edwin Loden, Jr., to the Complainant; Complainant further prays that this court will award to the Complainant the possession and use of the household goods, furniture, and contents and appliances, located in the family home; Complainant prays for general relief.

_Thomas Edwin Loden_
THOMAS EDWIN LODEN

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, MISSISSIPPI

THOMAS EDWIN LODEN                            COMPLAINANT

VS.                                       NO. 5976

BOBBYE ANNETTE LODEN                DEFENDANT

## ANSWER TO AMENDED BILL FOR DIVORCE

    Comes now Defendant, Bobbye Annette Loden, by her
attorney, and for answer to the Amended Bill for Divorce filed
against her in this cause would most respectfully show unto the
Court the following, to-wit:

- 1 -

    Defendant admits that Complainant is an adult resident
citizen of Itawamba County, Mississippi, but denies that she is
an adult resident citizen of Itawamba County but would show
that she is a resident citizen of Lee County, Mississippi.

- 2 -

    Defendant admits there were two children born to this
marriage, namely: Anita Gayle Loden, age 4; and Thomas Edwin
Loden, age 2 years.

- 3 -

    Defendant denies the allegations as set forth in

Paragraph 3 of the Amended Bill for Divorce that Complainant
is entitled to a divorce on the grounds of cruel and inhuman
treatment or any other grounds.

- 4 -

Defendant denies the allegations as set forth in
Paragraph 4 of the amended bill and would show that the said
Complainant is guilty of openly and notoriously keeping company
with other women during the last two or three years and that
at the present time, he has been regularly and constantly keep-
ing company with a certain woman whose name will be furnished
at the trial. That it is only safe to assume from his conduct
that he is guilty of adultery.

- 5 -

Defendant would deny the allegations as set forth in
Paragraph 5 of the amended bill but would show that the said
Complainant has never at any time shown any interest in the
two minor children involved in this proceeding; that he has
never shown the love and affection required of a father who is
interested in maintaining the proper home for his children and
loved ones. That he stayed gone every night and never made any
effort at all to show an interest in the said minor children
and that he is not a fit and suitable person to have the custody
and control and that should this be granted to him, then this
obligation and responsibility would be left to his father and
mother who are of an advanced age and should not be required at
this time to take on the responsibility of rearing two children
of this tender age.

- 6 -

Defendant denies the allegations as set forth in
Paragraph 6 of the amended bill and would show that all furniture,
fixtures, and household appliances have been acquired through
the joint efforts of Complainant and Defendant, and that it is

necessary that she be awarded these items in order that they can be used to make a livable place of abode for the two minor children. That the said Defendant is entitled to the automobile as set forth in the Answer to the Original Bill.

Now having answered the Amended Bill for Divorce, Defendant respectfully requests that same be dismissed and held for naught and that she be allowed to proceed on her Cross-bill in this cause and that she will be granted the temporary and permanent custody and control of the minor children, attorney's fee, household furniture and appliances, together with the automobile, suit money, and court costs, all temporary and permanent.

BOBBYE ANNETTE LODEN

Filed 22 day of March 196 7
Recorded in M.B.............., e............
Loyd Thomas, Clerk

Devit. No 5976

In Re: Sylvia Suttle

Jane Blackman Hickman

<u>ORDER OF CONTEMPT</u>

Sylvia Suttle and Jane Blackman Hickman having been duly served with subpoenas to appear in the Chancery Court of Itawamba County and to be present at 9:00 o'clock A. M. April 6, 1967, and did not appear after being called in open Court, and did not present any reason or excuse to the Court, are found to be in wilful contempt of the processes of this Court.

It is therefore, the finding of this Court that Sylvia Suttle and Jane Blackman Hickman are in wilful contempt, and are fined the amount of $25.00 each.

It is therefore, the order of this Court that the Sheriff of Lee County take Sylvia Suttle and Jane Blackman Hickman into custody and deliver them to the Sheriff of Itawamba County, who will keep them in custody until and unless the fine of $25.00 has been paid

ORDERED, ADJUDGED AND DECREED this the 6th day of April, 1967, in open Court.

FRED P. WRIGHT
CHANCELLOR

Filed 12 day of April 1987
Recorded in M.R. 23 page 3 & 4
Loyd Thomas, Clerk

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, MISSISSIPPI

THOMAS EDWIN LODEN                                    COMPLAINANT

VS.                                                  NO. 5976

BOBBYE ANNETTE LODEN                                 DEFENDANT

### TEMPORARY ORDER

This day this cause came on to be heard on the temporary
features, involving custody of the two minor children and upon
having heard said cause and the proof therein, this Court finds
that the custody of the two minor children, Annetta Gayle Loden
and Thomas Edwin Loden, Jr., should be granted to the Complainant
and that the Complainant should make a home for said children in
the home of Mr. and Mrs. Edwin (Dick) Loden.

The Court further finds that the Defendant should be
granted visitation rights in and to said children, including the
right to have said children in her home with her commencing at
5:00 o'clock P. M., on each Friday and continuing until 5:00
o'clock P. M., each Sunday.  Visitation rights from 5:00 o'clock
P. M., on Friday until 5:00 o'clock P. M., on Sunday are con-
ditioned upon the Defendant having no men at her home while the
children are in the home of the Defendant.

It further appears that the Complainant should be com-
pelled to provide transportation for said children to and from

the Defendant's home at 5:00 o'clock P. M., on Friday and return for the said children at the home of the said Defendant at 5:00 o'clock P. M., on Sunday.

It is therefore ordered and adjudged that the Complainant be and he is hereby granted the care, custody, and control of the two minor children, to-wit: Annetta Gayle Loden, and Thomas Edwin Loden, Jr., and that the Complainant be and he is hereby ordered to make a home for said children in the home of Mr. and Mrs. Edwin (Dick) Loden. It is further ordered and adjudged and decreed that the Defendant be and she is hereby awarded visitation rights in and to said children commencing at 5:00 o'clock P. M., on Friday and continuing until 5:00 o'clock P. M., on Sunday, including the right to have said children visit in the home with her for said periods, conditioned upon the Defendant having no men in the home at the time said children are with the Defendant. The Complainant be and he is hereby ordered to provide the necessary transportation for said children to and from the home of the Defendant.

Ordered, adjudged, and decreed, on this the 17th day of April, 1967.

_____
CHANCELLOR

APPROVED BY:

_____
ATTORNEY FOR DEFENDANT

SCRIBNER AND BREWER

BY _____
ATTORNEYS FOR COMPLAINANT

Filed 19 day of April 1967.
Recorded in M.B. 35 page
Lord Thomas, Clerk

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, STATE OF MISSISSIPPI

THOMAS EDWIN LODEN                                            COMPLAINANT

VS.                                                          NO. 5976

BOBBY ANNETTE LODEN                                          DEFENDANT

### PETITION FOR ALTERATION OF TEMPORARY ORDER

Comes now your Complainant, Thomas Edwin Loden, and files this his petition, asking that this court alter the temporary order of this court as entered in this cause on the _17th_ day of _April_, 1967, and in support of said petition would most respectfully show unto the court the following, to wit:

I.

That your Complainant is an adult resident citizen of Itawamba County, State of Mississippi; that the Defendant is now residing within the bounds of Lee County, State of Mississippi; and heretofore while both parties were residing in Itawamba County, Mississippi, the Complainant filed a bill for divorce and was asking for custody of the children.

II. That heretofore on the _17th_ day of _April_, 1967, this cause was heard on the temporary features and the order of this court was entered granting to the Complainant the care, custody, and control of the two minor children, Annetta Gayle Loden and Thomas Edwin Loden, Jr.; that a copy of said order on the temporary features is attached hereto and marked Exhibit A and is to be made a part hereof as if fully written herein in words and figures.

III.

That the Defendant was awarded visitation rights in and to said children commencing at 5 o'clock p.m. on Friday and continuing until 5 o'clock p.m. on Sunday, including the right to have said children visit in the home with her for said periods, conditioned upon the Defendant having no men in the home at the time said children are with the Defendant.

IV.

That your Complainant would show that he has faithfully lived up to the terms of said order and has provided the transportation to and from the Defendants residence and has faithfully delivered said children to the Defendant; that your Complainant would show that the Defendant is dating openly and has men in her apartment, and has left the children unattended in her own apartment while attending parties with men at neighbor's homes; that the Defendant has on frequent occasions dated men openly, and she and her boy-friends have taken the two minor children to the drive-in movie; that all of said dating and having men in the home while the children were with her is in violation of the conditions as ordered by this court.

V.

That during said periods of time when said children are in the hands of the Defendant the Defendant refuses to cook meals for said children, and does not properly fee said children, and does nor care for said children and does not try to keep the children out of the streets and away from dangerous fast moving traffic; that the Defendant talks hatefully to the children and that at the end of their stay over the weekend the children are hard for the Complainant and his parents to manage; that the children are in a constant state of nervousness by being transferred back and forth between the Complainant and the Defendant; that the children are not being fed suitable diet while they are in the hands of the Defendant; that the children have witnessed the Defendant and a man in bed in the Defendant's apartment.

VI.

That the Defendant goes out at night, stays at all hours at night, and frequently stays out til after 3:30 a.m. and the Defendant returns and does not even check with the babysitter as to the welfare of the two minor but sleeps other than in the same apartment with the minor children.

VII.

That the conditions of the order previously handed down by this court have been breached by the Defendant and the Defendant has

forfeited her right to have visitation rights to said children and have said children visit her; that the Defendant is not a fit, suitable person to have care, custody, and control of the children even on the weekend visitation periods as outlined by this court.

Wherefore, premises considered, the Complainant prays that this court will set a time and place for hearing in vacation, by fiat, and that upon a hearing in vacation that this court will alter its previous temporary order covering the custody of the two minor children, that this court will enter a new order, granting to the Complainant the full and complete care, custody, and control of the two minor children, Annetta Gayle Loden and Thomas Edwin Loden, Jr., and that this court will cut off any visitation rights or privilege that the Defendant has under the said order in and unto said children. Complainant prays for general relief.

*Thomas Edwin Loden*
THOMAS EDWIN LODEN

STATE OF MISSISSIPPI

COUNTY OF LEE

This day personally appeared before me, the undersigned authority in and for the County and State aforesaid, the within named Thomas Edwin Loden, who upon being duly sworn, states on oath that the facts and matters and allegations as contained in the above and foregoing petition for alteration of temporary order are true and correct as stated therein.

Sworn to and subscribed before me on this the 16th day of August, 1967.

NOTARY PUBLIC

My Commission Expires:

6-28-71

Filed 27 day of August 1967
Recorded in M.B. ............ page ..........
Loyd Thomas, Clerk

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, STATE OF MISSISSIPPI

THOMAS EDWIN LODEN                                    COMPLAINANT

VS.                                                   NO. 5976

BOBBYE ANNETTE CHRISTIAN LODEN                        DEFENDANT

ORDER

This day this cause came on to be heard on the Bill for
Divorce as filed by the Complainant, Answer and Cross-Bill filed
by the Defendant, and Answer to the Cross-Bill as filed by the
Complainant, and on proof in open court in term time, and after
hearing all of the proof the Court is of the opinion that the
Complainant is entitled to a divorce from the Defendant on the
grounds of habitual cruel and inhuman treatment.

It is therefore ordered and adjudged that the Complainant
be and he is hereby granted a divorce absolute from the bonds
of matrimony heretofore existing between the Complainant, Thomas
Edwin Loden, and the Defendant, Bobbye Annette Christian Loden.

It is further ordered, adjudged, and decreed, that the care,
custody, and control of the two minor children of this marriage,
being Annetta Gayle Loden and Thomas Edwin Loden, Jr., be and
it is hereby given to Thomas Edwin Loden conditioned upon the
said Thomas Edwin Loden keeping said children in the home of
Mr. and Mrs. E. O. Loden.  The Defendant be and she is hereby
granted weekend visitation rights in and to said children every
other weekend commencing at 5 o'clock P. M., on Friday and
continuing until 5 o'clock P. M., on Sunday, said weekend visitation
rights commencing on Friday, December 8, 1967.

The Defendant be and she is further granted the right to have
said children with her for two weeks during the summer months at
her own discretion, provided however that the Defendant shall so
notify the Complainant of the two week period she desires to have
said children with her two weeks in advance.

The Complainant be and he is hereby ordered to deliver and pick up said children at the residence of the Defendant at the specified times.

The Cross-Bill be and the same is hereby dismissed.

An attorney's fee for the Defendant be and the same is hereby denied.

The Complainant be and he is hereby taxed with the costs of this court, for which let execution issue.

Ordered, adjudged, and decreed, on this the 7th day of ___December___, 1967.

_____
CHANCELLOR

Filed this the 7th day Dec- 1967
Fayd Thomas
Chancery clerk

Book. 24 Page. 255-256

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, STATE OF MISSISSIPPI

THOMAS EDWIN LODEN                         COMPLAINANT

VS.                                    NO. 5976

BOBBYE ANNETTE CHRISTIAN LODEN         DEFENDANT

## PETITION FOR ALTERATION OF DECREE

Comes now your Complainant, Thomas Edwin Loden, and files this his Petition, asking that this court alter a previous decree of this court, and would most respectfully show unto this court the following facts, to wit:

I.

That your Complainant, Thomas Edwin Loden, is an adult resident citizen of Itawamba County, State of Mississippi, residing with his father and mother, Mr. and Mrs. E. O. Loden, in the Dorsey Community Itawamba County, State of Mississippi; that the Defendant, Bobbye Annette Christian Loden is presently residing in the City of Tupelo, Lee County, State of Mississippi, but was living within the County of Itawamba, State of Mississippi at the time of the filing of the original Bill for Divorce.

II.

That heretofore in this cause an order was entered on or about the 1 day of December, 1967 wherein the Complainant was granted a divorce from the Defendant and it was further ordered that the care, custody, and control of the two minor children of this marriage, being Annetta Gayle Loden and Thomas Edwin Loden, Jr., be given to Thomas Edwin Loden conditioned upon the said Thomas Edwin Loden keeping said children in the home of Mr. and Mrs. E. O. Loden.

III.

That the Complainant has complied with every detail of said order of the court; that he is still residing in the home of Mr. and Mrs. E. O. Loden, his mother and father, with the two children; that on December 30, 1967 your Complainant was married to Sylvia Suttle Loden and Sylvia Suttle Loden has resided with your Complainant and the two minor children in the home of the said Mr. and Mrs. E. O. Loden

That Sylvia Suttle Loden is employed at Southern Bell Telephone & Telegraph Company in the City of Tupelo, Mississippi; that the Complainant is now employed at Rockwell Manufacturing Company of Tupelo, Lee County, Mississippi; that Thomas Edwin Loden and Sylvia Suttle Loden have different hours of work, causing the parties to both make separate trips to and from Tupelo for the purpose of carrying on their employment; that with the two trips and with the distance of approximately 12 to 15 miles one way, travel expenses are a financial burden on the parties; that because of the complexity of married life, Thomas Edwin Loden and Sylvia Suttle Loden should be allowed to have their own home, separate and apart from Mr. and Mrs. E. O. Loden; that Sylvia Suttle Loden owns a good and suitable house at █████████████, Tupelo, Mississippi, which she has rented at the present time, but which she has requested the tenants to be prepared to move conditioned upon the Court allowing the Complainant to take the two minor children, Annetta Gayle Loden and Thomas Edwin Loden, Jr., from the home of Mr. and Mrs. E. O. Loden, and live with them at █████████████, Tupelo, Mississippi, but because of the condition limiting the care, custody and control to Thomas Edwin Loden upon keeping said children in the home of Mr. and Mrs. E. O. Loden, your Complainant has been unable to move.

IV

Your Complainant would represent and show unto this court that he is a good and suitable person to have the care, custody and control of the two minor children; that he and his present wife are in regular attendance at Sunday School and Church; that he and his present wife have been taking the children to Church and Sunday School on a regular basis; that with the help of his present wife, he is capable of caring for the two children; that the house owned by the Complainant's present wife at █████████████ is a good house, of good construction, with all the conveniences of a modern home, and is a good and suitable place to make a home for the Complainant, his wife, and the two minor children.

WHEREFORE, PREMISES CONSIDERED, Complainant prays that this court will by Fiat set a time and place for hearing this cause in vacation; Complainant further prays that this Court will issue process returnable to said date as set by this Court by Fiat and that upon a full and complete hearing therein that this court will enter its order altering, amending, and changing the previous Decree of this court so as to allow the Complainant to have the care, custody, and control of Annetta Gayle Loden and Thomas Edwin Loden, Jr., at places other than in the home of Mr. and Mrs. E. O. Loden, in order that the Complainant and his present wife can set up their own separate household.

Complainant prays for general relief.

_Thomas Edwin Loden_
THOMAS EDWIN LODEN

STATE OF MISSISSIPPI
COUNTY OF LEE

This day personally appeared before me, the undersigned authority in and for the County and State aforesaid, the within named Thomas Edwin Loden who upon being duly sworn, stated upon oath that the matters, allegations, and things contained in the above and foregoing Petition to Alter Decree are true and correct as stated therein.

Sworn to and subscribed before me on this the 2th day of June , 1968.

_____
NOTARY PUBLIC

My Commission Expires:

6-22-71

Filed 17 day of June 19 68
Recorded in M.B. page
Archie Cates, Clerk

# EXHIBIT 21

**Marriage Records of Loden's Parents**

76

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, MISSISSIPPI

VACATION, SEPTEMBER 25, 1968

THOMAS EDWIN LODEN                              PETITIONER

VS                                              NO. 5976

BOBBYE ANNETTE CHRISTIAN LODEN BROWN            DEFENDANT

### OPINION OF THE COURT

It is gratifying to the Court to see that these parties have apparent-
ly settled down and do not have some of the problems they were having
at the time of the temporary and permanent hearings last year.    I am
glad to see that they are cooperating to the extent that Mrs. Brown has
been permitted to take the children to the fair and to see them at times
other than those specified in the decree.

It has been stated here that the Complainant is in contempt of
Court by moving the children from the home of his parents as provided in
the decree to Tupelo.    The Complainant is now married and has a suitable
home in Tupelo and such move was necessary to put the children in school.
The Complainant tried several times to get this matter before the Court
long before School started, but was not able to do so.    There is no show-
ing of contempt by the Complainant.    His actions were for the best interest
of the children.

This case has a lengthy history before this Court.    It began at
the April term 1967 and a final decree was rendered at the December term
1967.    The defendant, Mrs. Bobbye Loden has a long history of numerous
and flagrant acts of adultery with various men.    At the temporary hear-
ing she denied these acts of adultery, but at the final hearing she admitted
these acts, but defended her suit on the grounds that their had been a
condonation of these acts.    It was her bad misconduct that resulted in
the children being awarded to the Complainant, and due to the fact that

767 155

77

he lived with his parents, that he was required to keep them their during the periods he had custody of them. The defendant had her times of visitation provided for in the decree.

The petition before the Court at this time is to allow the petitioner, who was the Complainant in the original suit, to move the children from the home of his parents to his new home in Tupelo, and he seeks to modify the decree of December 7, 1967 to that extent. The defendant by cross-bill seeks to regain custody from the Complainant.

The facts show that the Complainant has re-married since the divorce and has a suitable home for these children, and that his family life is good. The facts show that the defendant married June 28, 1968 and lives in Tupelo, and has offered to quit work if she could get the custody of the children.

The change of circumstances of the Complainant is sufficient to warrant the children to be moved from the home of his parents to his own home in Tupelo.

The decree of December 7, 1967 was entered granting custody of the children to the Complainant due to the many flagrant acts of adultery by the defendant with various men, and although she has now re-married and no new acts of mis-conduct has been shown, the Court is of the opinion that the best interest of the children will be served for them to remain with their father where they are being properly looked after.

The decree of December 7, 1967, will be modified to the extent that the children may be moved from the home of the Complainant's parents to the home of the Complainant in Tupelo, but which decree will otherwise remain in full force and effect.

Since both parties are before the Court on the petition of the Complainant to modify the decree and the Cross-bill of the defendant to modify the same decree, the Court costs of this proceeding will be divided

78

equally between them.

Dated this the 25th. day of September, 1968.

********

# EXHIBIT 22

# Loden's School Records

# EXHIBIT 22-A

# MISSISSIPPI CUMULATIVE PERMANENT SCHOOL RECORD — GRADES 1-12

Form 2

Prepared and provided by the State Board of Education in accordance with Chapter 24, General Laws of Mississippi, Extraordinary Session of the Legislature, 1953, as amended by Chapter 226, Regular Session, 1954.

Birth Certificate File No.: _____ or Reg. No.: _____

Place of Birth: _____ Date of Birth: _____

Verified By: _____ (Initials)

Pupil's Name: Oden Thomas Edwin

Race: N  Sex: M

Father's Name: Thomas

Mother's Maiden Name: Sylvia Suttle (Step)

Guardian's Name: _____

## ENTRANCE RECORD

| Date | Gr. | Name & Address of School |
|------|-----|--------------------------|
| 3-7-77 | 7 | Shannon |
| 8-78 | 9 | Cardinal School - Tupelo, Miss. |

## TRANSFER - WITHDRAWAL RECORD

| Date | Gr. | Transferred to: or Reason for Withdrawal |
|------|-----|------------------------------------------|
| 10-30-79 | 10 | Caldwell H.S. MSU960-1 |

## ATTENDANCE RECORD

| Gr. | Days Pres. | Days Abs. | Days Av. |
|-----|-----------|-----------|----------|
| 7 | 53 | 0 | |
| 8 | 127 | 7 | |

## SUMMARY OF HI-SCH. UNITS

| Subjects | Units |
|----------|-------|
| English | |
| Mathematics | |
| Science | |
| Soc. Studies | |
| Vocational | |
| Total | |

## GRADUATION FACTS

Graduated: _____

Rank in class: _____

Quartiles:
4—Highest ¼
3—High average
2—Low average
1—Lowest ¼

Principal: _____

## ELEMENTARY SCHOOL PROGRESS

| Year | Grade | Subjects | Passing Marks | Promoted | Teacher | School |
|------|-------|----------|---------------|----------|---------|--------|

## SECONDARY SCHOOL PROGRESS

| Subjects | Gr. 7 | Gr. 8 | Gr. 9 | Gr. 9 |
|----------|-------|-------|-------|-------|
| | B C B- | B C B- | B A- ½ | |
| English | B C B- | | | |
| Math | | | | |
| Sci./Health | | | | |
| Sci. | | | | |
| P.E. | | | | |
| Ind. Art | | | | |
| Spn./H | | | | |

## ACTIVITIES

| Activity | 7 8 9 10 11 12 |
|----------|----------------|

Code: 1=Outstanding Participation, 2=Average Participation, 3=Minimum Activity or Dropout.

## WORK EXPERIENCES

 **Tupelo High School**
4125 Cliff Gookin Boulevard • Tupelo, Mississippi 38801 • Phone (662) 841-8970 • Fax (662) 841-8987

Regarding the records of:
Thomas Edwin Loden, Jr.
███████████

Stacy Ferraro
510 George Street, Suite 300
Jackson, MS 39207

Dear Sir or Madam:

I am enclosing the transcript of Thomas Edwin Loden. All other records were sent to Coffeeville High School in 1979. It is possible that you will find the complete record at that school.

*Edwina Wood*
Edwina Wood, Registrar

000830



**Tupelo High School**
4125 Cliff Gookin Boulevard • Tupelo, Mississippi 38801

39202#3027

Stacy Ferraro
510 George Street, Suite 300
Jackson, MS 39207



TUPELO MS
PM
19 FEB
2003
38801



# EXHIBIT 22-B

000837

**Itawamba Agricultural High School**
11900 Highway 25 South
Fulton, MS 38843

1553074895071

Capital Defense Counsel
P.O. Box 2901
Jackson, MS 39207



# EXHIBIT 23

**Criminal Records of Loden's Sibilngs**

# EXHIBIT 23-A

# IN THE CIRCUIT COURT OF LEE COUNTY, MISSISSIPPI

VACATION _____ TERM, _2001_____

STATE OF MISSISSIPPI

VS.                                     CAUSE NO. _CR01-315(B)L_

_BILLY MURPHY BROWN, JR._

## ORDER

Came on this cause this day for hearing, the Defendant being before the Court in person and with his/her Attorney, Hon. _JOHN WEDDLE_____.

Said Defendant being before this Court on a charge of _DUI - 3RD OFFENSE_____ on indictment against him/her, and having entered a plea of not guilty to said charge on a former day of this Court, the Defendant, _BILLY M. BROWN, JR._____, withdraws his/her former plea of not guilty and enters a plea of guilty as charged, said plea is accepted by the Court, the Court finding that said plea is voluntarily and understandingly entered by the Defendant.

IT IS, therefore, **ORDERED AND ADJUDGED** by the Court that the Defendant be and he/she is hereby _RELEASED ON PRESENT BOND TO AWAIT SENTENCING ON AUGUST 6, 2001 AT 9:00 A.M._____

_____

_____

**ORDERED AND ADJUDGED IN OPEN COURT**, this the _23RD_ day of _JULY_____, _2001___.

_____
CIRCUIT JUDGE

TIME_____ P.M.

**FILED**

JUL 2 4 2001

JOYCE R. LOFTIN
CIRCUIT CLERK

216/316

# IN THE CIRCUIT COURT OF LEE COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI

VS.                                        CAUSE NO. __CR01-315(B)L__

BILLY MURPHY BROWN, JR.

# SENTENCING ORDER
## INTENSIVE SUPERVISION PROGRAM / HOUSE ARREST

This cause, having been brought before the Court for sentencing of the defendant, __BILLY MURPHY BROWN, JR._____, who has been adjudicated guilty of the crime of __DUI - 3RD OFFENSE_____.

**IT IS THERFORE ORDERED AND ADJUDGED** that the defendant be sentenced to a term of __five (5)__ years in the Mississippi Department of Corrections. The defendant is to be placed in the Intensive Supervision Program / House Arrest Program, per Section 47-5-1001 through 47-5-1015 of the Mississippi Code and the Court retains jurisdiction for a period of one (1) year. Said sentence is conditioned upon the defendant agreeing and complying with all conditions outlined in the Intensive Supervision Agreement as provided by the Mississippi Department of Corrections.

If the defendant should fail to successfully complete the Intensive Supervision Program, the Mississippi Department of Corrections may, without further orders of this court, place the defendant in whatever Mississippi Department of Corrections facility deemed appropriate to complete said sentence.

If the defendant completes the Intensive Supervision Program, the Mississippi Department of Corrections shall notify the Court and the Court shall have the option of ordering the defendant to be placed on supervised probation for the remainder of his/her sentence or until the court shall alter, extend, terminate or direct the execution of the above sentence.

**IT IS FURTHER ORDERED THAT** __defendant pay $2000 fine and $402 costs.__ __It is hereby ordered that defendant receive alcohol abuse treatment as directed by Probation Officer and complete said program._____

**SO ORDERED** this the _____6th_____ day of ____AUGUST_____, __2001__.

_____
CIRCUIT JUDGE

FILED

TIME_____P.M._____

AUG 0 6 2001

JOYCE R. LOFTIN

# EXHIBIT 23-B

```
JCMAFD01                        UNIFORM TRAFFIC CITATION              JCWAFD01/M4
Docket Book  187 Page  425 Citation Number  2222555        Status C (A, I, C)
Defendant Name BROWN BILLY M JR                   Out of State?
        Address ████████                                        _
City State Zip TUPELO, MS 38801
Phone Number                      State Licensed MS DL Number  ████████
Vehicle License                 State    Make     Year     Type     (Auto,Trck)
Judge  2 JOHN SHEFFIELD          Court  1 Returnable  8 / 9 / 2000
Disposition 10 - 1 - 2001 Time 13 :      M Code  58 CASE CLOSED-PAID IN FULL
Nature of Offense POSS CONTROLLED SUBST          Accident N (Y/N)
Owner of Vehicle                               Offense Date     Time
Restitution                 Garnishment   (Y/N)  6 - 26 - 2000 22 : 52
Bond Amount                                 _    Filing Date
Surety                                           6 - 27 - 2000
Badge L12  Agency 0041 Arresting Officer MANGUM          F5-SEARCH OFFICER
Constable                                 Comment
Location RD 931                          Hwy.   CMV N Y/N   Haz. N Y/N
Sex M   Race W  Date of Birth ████████            Appeared    Y/N
Speed      Zone     Alcohol       Remarks 4000 APP/GRAY BONDING
Plead G Vol Y     Found G on   /   /      Atty? N Jail Time
Total Owed      343.00  Total Paid        343.00  Total Due
    F1-JUDGMENT F2-CLEARING F3-WARRANTS F6-PROCESS F8-DCODES F12-RECEIPTS F13-IMAGE
```

```
JCMAFD01                    UNIFORM TRAFFIC CITATION              JCWAFD01/M4
Docket Book  187 Page   423 Citation Number   C000971        Status C (A, I, C)
Defendant Name BROWN BILLY M JR               Out of State? _
         Address
              POE CHICKASAW CONTAINER
City State Zip TUPELO, MS 38801
Phone Number              State Licensed MS DL Number
Vehicle License       State    Make    Year      Type      (Auto,Trck)
Judge  2 JOHN SHEFFIELD        Court   1 Returnable   8 / 9 / 2000
Disposition 6 - 11 - 2001 Time 13 : _  _ M Code   1 GUILTY
Nature of Offense DUI 2ND                    Accident N (Y/N)
Owner of Vehicle                         Offense Date    Time
Restitution            Garnishment  (Y/N)    6 - 26 - 2000 22 : 52
Bond Amount                              Filing Date
Surety                                   6 - 27 - 2000
Badge L12  Agency 0041 Arresting Officer MANGUM      F5-SEARCH OFFICER
Constable                                Comment
Location RD 931                               CMV N Y/N    Haz. N Y/N
Sex M  Race W  Date of Birth       Hwy.              Appeared _ Y/N
Speed   Zone   Alcohol     .281 Remarks 4000 APP/GRAY BONDING
Plead G Vol Y     Found G on   /   /     Atty? N Jail Time
Total Owed    1313.00   Total Paid    1313.00    Total Due
  F1-JUDGMENT F2-CLEARING F3-WARRANTS F6-PROCESS F8-DCODES F12-RECEIPTS F13-IMAGE
```



JCMAFD01                    UNIFORM TRAFFIC CITATION                    JCWAFD01/M4
Docket Book  288 Page  377 Citation Number  `92358000        Status C (A, I, C)
Defendant Name BROWN BILLY M                      Out of State? N
       Address ████████████████
City State Zip TUPELO MS 38801
Phone Number 6628419166      State Licensed MS DL Number ████████
Vehicle License 236LHU     State MS Make MITS Year      Type AUTO (Auto,Trck)
Judge  3 SADIE HOLLAND       Court  1 Returnable  1 / 17 / 2008
Disposition  5 - 27 - 2008 Time  1 : 30 P M Code  1 GUILTY
Nature of Offense DUI 1ST                  Accident N (Y/N)
Owner of Vehicle                         Offense Date   Time
Restitution                              12 - 8 - 2007   2 : 40
Bond Amount 2400 APP REBEL 1   Garnishment _ (Y/N)
Surety                                   Filing Date
Badge F022 Agency 9041 Arresting Officer BERRYHILL   12 - 10 - 2007
Constable                                             F5-SEARCH OFFICER
Location                                  Comment
Sex M   Race W  Date of Birth ████████  Hwy.  006  CMV N Y/N  Haz. N Y/N
Speed    Zone    Alcohol    .160 Remarks 2400 APP BOND REBEL 1 BONDING    Appeared _ Y/N
Plead   Vol   Found  on  /  /           Atty?   Jail Time
Total Owed   738.50   Total Paid    738.50   Total Due
 F1-JUDGMENT F2-CLEARING F3-WARRANTS F6-PROCESS F8-DCODES F12-RECEIPTS F13-IMAGE

# EXHIBIT 23-C

```
JCMAFD01                        CRIMINAL AFFIDAVIT                        JCWAFD21/M4
Book  520 Page   321         Out of State? _ (Y/N)              Status C (A, I, C)
Defendant Name BROWN SONIA
Address
City St Zip                                          Bond Amt
Affiant Name DOSS MIKE                               Surety Name
Sex F Race W  Date of Birth                                     Phone
State Licensed __  Drivers License Number
Vehicle License          State    Make       Year       Type      (Auto,Trk)
BAC       Speed     Zone      Nature of Off. POSSESSION-CONTROLLED SUBSTANCE
Filing Date  2 - 4 - 1998       Offense Date  2 - 3 - 1998    Time     :
Judge  1 PAT CARR                         Courtroom  1 Returnable  3 - 24 - 1998
Disposition  3 - 24 - 1998 Tme 13 :    M. Code  85 RETIRED TO FILE GJ BOND
Badge       Agency ____  Arresting Officer DOSS MIKE              Appeared  _ Y/N
Constable
Remarks                                              Bad Check Amount
Plead      Voluntarily   Found   on   _ / _ /      Atty?  Jail Time
Restitution               Garnishment   Y/N        Comment
Charge 0421 POSSESSION-CONTROLLED SUBSTANCE  FELONY
Total Owed                  Total Paid                 Total Due
   F1-JUDGMENT      F3-WARRANTS      F12-RECEIPTS      F13-IMAGES
                    F2-CLEARING   F5-OFFICERS   F6-PROCESS   F8-DISP CODES   F18-FORMS
```

# EXHIBIT 23-D

```
JCMAFD01                    CRIMINAL AFFIDAVIT                      JCWAFD21/M4
Book  520 Page  319         Out of State?  _ (Y/N)       Status C (A, I, C)
Defendant Name  RITCHEY ANNETTA
Address  ████████████████████
City St Zip                                      Bond Amt
                                                 Surety Name
Affiant Name  DOSS MIKE
Sex F Race W  Date of Birth  ██████████        ██████ Phone
State Licensed    Drivers License Number  ██████████
Vehicle License        State    Make    Year     Type    (Auto,Trk)
BAC      Speed    Zone    Nature of Off. POSSESSION-CONTROLLED SUBSTANCE
Filing Date  2 - 4 - 1998      Offense Date  2 - 3 - 1998   Time    :
Judge  1 PAT CARR               Courtroom  1 Returnable  3 - 24 - 1998
Disposition  3 - 24 - 1998 Tme 13 :   M. Code  85 RETIRED TO FILE GJ BOND
Badge     Agency     Arresting Officer DOSS MIKE        Appeared   Y/N
Constable
Remarks  CORBETT                            Bad Check Amount
Plead  Voluntarily  Found  on    /    /    Atty?   Jail Time
Restitution          Garnishment   Y/N     Comment
Charge 0421 POSSESSION-CONTROLLED SUBSTANCE  FELONY
Total Owed              Total Paid             Total Due
              F3-WARRANTS      F12-RECEIPTS   F13-IMAGES
   F1-JUDGMENT  F2-CLEARING  F5-OFFICERS  F6-PROCESS  F8-DISP CODES  F18-FORMS
```

# EXHIBIT 24

**Loden's Military Records**

# EXHIBIT 24-A

ADMINISTRATIVE REMARKS (1070)

| BLOOD TYPE | DATE: 830115 | |
|---|---|---|
| | Articles UCMJ explained to me this date as required by Article 137, UCMJ. | Articles UCMJ explained to me this date as required by Article 137, UCMJ. |
| CLASS SWIMMER | | |
| (DATE) | Thomas E Locken Jr. | |
| BY DIRECTION | (SIGNATURE) | (SIGNATURE) |

| (DATE) | (DATE) |
|---|---|
| INSTRUCTIONS GIVEN ON TYPE OF DISCHARGE, BASIS FOR ISSUE, EFFECT ON REENLISTMENT. VA BENEFITS AND CHARACTER OF SEPARATION IN ACCORDANCE WITH CURRENT REGULATIONS. | SATISFACTORY ENTNAC COMPLETED BY DIS NACC ON THIS DATE. THIS ENTNAC MAY BE USED AS BASIS FOR GRANTING SECURITY CLEARANCE WITHOUT FURTHER REVIEW. |
| (SIGNATURE) | BY DIRECTION |

| 830115 (DATE) | 830115 (DATE) ASSIGNED COMBAT SERVICE CODE 0 |
|---|---|
| INSTRUCTION IN CODE OF CONDUCT FOR MEMBERS OF THE ARMED FORCES OF THE UNITED STATES COMPLETED ON THIS DATE. | |
| BY DIRECTION | BY DIRECTION |

| 830115 (DATE) | (DATE) |
|---|---|
| COUNSELING HAS BEEN COMPLETED THIS DATE IN ACCORDANCE WITH PARA. 1010 OF MCO P1748.8 CONCERNING COVERAGE UNDER THE SERVICEMEN'S GROUP LIFE INSURANCE PROGRAM. | INSTRUCTIONS GIVEN ON TYPE OF DISCHARGE, BASIS FOR ISSUE, EFFECT ON REENLISTMENT, VA BENEFITS AND CHARACTER OF SEPARATION IN ACCORDANCE WITH CURRENT REGULATIONS. |
| (COGNIZANT OFFICER) | (SIGNATURE) |

| 830115 (DATE) | (DATE) |
|---|---|
| I HAVE BEEN COUNSELED AND UNDERSTAND THAT I HAVE (DO NOT HAVE) SERVICEMEN'S GROUP LIFE INSURANCE (SGLI) COVERAGE DURING THIS ENLISTMENT/ASSIGNMENT TO ACTIVE DUTY. I ALSO ACKNOWLEDGE THAT I HAVE BEEN PROVIDED A SGLI CERTIFICATE OF MEMBERSHIP. (VA FORM 29-8290). | INSTRUCTION IN CODE OF CONDUCT FOR MEMBERS OF THE ARMED FORCES COMPLETED THIS DATE AFTER SIX MONTHS OF ACTIVE SERVICE. |
| (SIGNATURE) | BY DIRECTION |

| 830115 (DATE) | 880405 2dBn, RTR, MCRD, PISC Selected outstanding recruit (honorman) of his platoon. |
|---|---|
| INITIAL DRUG ABUSE ORIENTATION CONDUCTED IN ACCORDANCE WITH MCO 6710.1 | T. G. McGioo By Dir |
| BY DIRECTION | |

| | 880405 SEC REC HON GRAD ISS OF DRESS BLUE UNIF IAW MCO 10120.49. THIS ISS WILL NOT JEOPARDIZE ENTL TO SUBQ ISS OF DRESS BLUE UNIF. |
|---|---|
| | VERIFIED |
| | 000403 |

CONTINUED ON SUPPLEMENTAL PAGE

| LOCEN, THOMAS EJR | 428 11 53 20 |
|---|---|
| NAME (LAST, FIRST, MIDDLE) | SSN |

NAVMC 118 (11) (Rev. 8-78)

(11) Cont on supp page Rk

# EXHIBIT 24-B

Mar-28-01  16:22    From-USMC Recruiting Station New Orleans    504-678-5660    T-471  P.01/01  F-966

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES          SAFEGUARD IT.          AREAS RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NO. |
|---|---|---|
| LODEN Thomas Edwin Jr | USMC - 11 | |

| 4.a. GRADE, RATE OR RANK | 4.b. PAY GRADE | 5. DATE OF BIRTH (YYMMDD) | 6. RESERVE OBLIG. TERM. DATE |
|---|---|---|---|
| LCpl | E-3 | | Year 88  Month 11  Day 22 |

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
|---|---|
| MEPS Memphis TN | Fulton MS 38843 |

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8.b. STATION WHERE SEPARATED |
|---|---|
| Recruiter USMC RS New Orleans LA | USMC RS New Orleans LA (RUC 84001) |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE  [X] None |
|---|---|
| NA | Amount: $ |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|---|
| 0861 -  Fire Support Man  14 yrs 8 months | a. Date Entered AD This Period | 1983 | 01 | 12 |
| 8531 -  Weapons Instructor 1 yr 1 month | b. Separation Date This Period | 2001 | 03 | 28 |
| 8411 -  Recruiter  1 yr 9 months | c. Net Active Service This Period | 17 | 05 | 23 |
| | d. Total Prior Active Service | 00 | 00 | 00 |
| | e. Total Prior Inactive Service | 00 | 11 | 20 |
| | f. Foreign Service | 00 | 06 | 06 |
| | g. Sea Service | 00 | 03 | 11 |
| | h. Effective Date of Pay Grade | 2001 | 03 | 28 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) |
|---|
| Rifle expert badge, Pistol sharpshooter badge, sea service deployment ribbon x 4, good conduc medal x 5, overseas ribbon, Navy Marine Corps Achievement medal x3, cobat action ribbon, Southwest Asia service medal, Kuwaiti Liberation Medal, Certificate of achievement, Certificate of Appreciation, Navy Unit Commendation Medal x 2 (3DBN 12TH Mar 900821-900909) |

| 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) |
|---|
| Marine Artillary Scout Observer Course 4 wks 8306 |
| NCO School 4 wks 8705 |
| SNCO Advanced Course 6 wks 9607 |
| Recruiters School 7 wks 9808    Laser System Operator Cat 1 wk 9202 |

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes | No | 16. DAYS ACCRUED LEAVE PAID |
|---|---|---|---|---|---|---|
| | | X | | X | | RLB 0.0 SLB 0.0 |

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | No |
|---|---|---|

| 18. REMARKS |
|---|
| BLOCK 13 CONTINUED  (I MEF 900814-910416), Meritorious Mast, National Defense Service Medal. |
| " SNM unavailable for signature" |

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address - include Zip Code) |
|---|---|
| Vicksburg MS 39180 | Katrina Loden (spouse)  Vicksburg MS 39180 |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO __ MS __ DIR. OF VET AFFAIRS  [X] Yes __ No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED  See Remarks | V. Bosquez, CAPT, O-3E |

| SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only) |
|---|

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| DISCHARGE | Other than honorable |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| MARCORSEPMAN par 6210.6 | HKQ1 | RE-4 |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| Commission of aserious offense |

000302

| 29. DATES OF TIME LOST DURING THIS PERIOD | 30. MEMBER REQUESTS COPY 4 |
|---|---|
| 20000626 -  20010328 | Initials |

DD Form 214, NOV 88    S/N 0102-LF-006-5500 Previous editions are obsolete.                    SERVICE - 2

# EXHIBIT 24-C

## COMMANDING GENERAL
1ST MARINE DIVISION (REIN) FMF
CAMP PENDLETON, CALIFORNIA 92055-5501

The Secretary of the Navy takes pleasure in presenting the
**NAVY ACHIEVEMENT MEDAL** to

**SERGEANT THOMAS E. LODEN, JR.**

**UNITED STATES MARINE CORPS**

for service as set forth in the following
CITATION:

"For professional achievement in the superior performance
of his duties while serving as the Assistant Liaison
Chief to 4th Marines from 3d Battalion, 12th Marines, 1st
Marine Division during Operations Desert Shield and Desert
Storm from 23 August 1990 to 28 February 1991. Sergeant Loden
consistently performed his demanding duties in an exemplary
and highly professional manner. Displaying exceptional skill
and resourcefulness, he supervised the training of the Fire
Support Coordination Center ensuring maximum combat
effectiveness. Quickly organizing the section's training, he
ensured each Marine was working at optimum levels despite
extremely adverse conditions and escalating combat
commitments. Sergeant Loden was instrumental in establishing
and positioning armor-killing teams to defend the
headquarters element while simultaneously constructing a fire
plan to provide indirect fire support. His diligent efforts
combined with his knowledge, inspired the Marines in his
section and contributed significantly to the accomplishment of
his unit's mission. Sergeant Loden's exceptional professional
ability, initiative and loyal dedication to duty reflected
great credit upon himself, the United States Marine Corps and
were in keeping with the highest traditions of the United
States Naval Service."

For the Secretary of the Navy,

J. M. MYATT
Major General, U. S. Marine Corps
Commanding General

ENCL (2)

The President of the United States takes pleasure in presenting the NAVY COMMENDATION MEDAL with COMBAT "V" to.

SERGEANT THOMAS E. LODEN

UNITED STATES MARINE CORPS

for service as set forth in the following CITATION:

For professional achievement in the superior performance of his duties while serving as a member of 4th Marines, 1st Marine Division (Task Force Grizzly's Combat Operation Center) during Operation Desert Storm from 17 January to 28 February 1991. Specifically assigned as an Assistant Liaison Chief in the Fire Support Coordination Center, Sergeant Loden on 26 February 1991 quickly an efficiently organized armor killing teams to counter an every thre to the Task Force headquarters. Subsequently, Sergeant Loden volunteered to deliver, under enemy mortar fire an essential targe list to a forward infantry battalion. Sergeant Loden's initiative courage, and dedication to duty were instrumental to the success enjoyed by Task Force Grizzly, and were in keeping with the highes traditions of the Marine Corps ant the United States Naval Service

For the Secretary of the Navy.

ENCL (3)

000656



**UNITED STATES MARINE CORPS**
3D BATTALION 12TH MARINES
3D MARINE DIVISION, FLEET MARINE FORCE
FLEET POST OFFICE, SAN FRANCISCO 96602-8083

The Secretary of the Navy takes pleasure in presenting the
NAVY ACHIEVEMENT MEDAL (Gold Star in Lieu of Second Award) to

SERGEANT THOMAS E. LODEN

UNITED STATES MARINE CORPS

for service as set forth in the following

CITATION:

For professional achievement in the superior performance of
his duties while serving as the Naval Gunfire Chief, 3d
Battalion, 12th Marines from 5 August 1991 to 12 December 1991.
During this period, Sergeant Loden consistently performed his
duties in an exemplary and highly professional manner. Within
three months of his return from combat operations in Southwest
Asia he volunteered to serve as naval gunfire chief for an
extended deployment. Demonstrating outstanding managerial
skills, he planned and supervised the operations of the
Regimental Naval Gunfire Section and two Shore Fire Control
Parties throughout operations Valiant Mark, Penyu Trident, and
Forest Light. Sergeant Loden concurrently organized the Naval
Gunfire Section for deployment as part of the lead echelon
and command element of the III MEF Alert Marine Air Ground Task
Force. Recognizing a skill deficiency in attached communications
personnel, he immediately implemented a program to cross train
shore fire control party radio operators in observed fire
procedures and land navigation techniques. His superb
performance of duty was epitomized by the ability to fill both
officer and enlisted fire support billets during both regimental
and division field exercises on Okinawa and operational
deployments. Sergeant Loden's exceptional professional
ability, initiative and loyal dedication to duty throughout
reflected great credit upon himself the United States Marine
Corps and were in keeping with the highest traditions of the
United States Naval Service.

For the Secretary of the Navy,

C. W. ADAIR
Lieutenant Colonel, U. S. Marine Corps
Commanding

000659

# EXHIBIT 24-D

000652



# DEPARTMENT OF THE NAVY

### THIS IS TO CERTIFY THAT

## THE SECRETARY OF THE NAVY HAS AWARDED THE

# NAVY AND MARINE CORPS COMMENDATION MEDAL

### TO

GUNNERY SERGEANT THOMAS E. LODEN JR.
UNITED STATES MARINE CORPS

### FOR

"MERITORIOUS SERVICE WHILE SERVING AS THE STAFF NONCOMMISSIONED OFFICER IN CHARGE OF THE COMBAT WEAPONS SECTION, MARINE CORPS SECURITY FORCE TRAINING COMPANY, MARINE CORPS SECURITY FORCE BATTALION, FLEET MARINE FORCE, ATLANTIC, FROM JANUARY 1996 TO JULY 1998. GUNNERY SERGEANT LODEN CONSISTENTLY PERFORMED HIS DEMANDING DUTIES IN AN EXEMPLARY AND HIGHLY PROFESSIONAL MANNER. HIS INNOVATIVE LEADERSHIP AND RELENTLESS PURSUIT OF EXCELLENCE CONTRIBUTED IMMEASURABLY TO THE COMBAT MARKSMANSHIP SKILLS OF OVER 3,000 SECURITY FORCES MARINES. HE HELPED DESIGN, PLAN, AND BUILD NUMEROUS PROJECTS, WHICH GREATLY ENHANCED THE ABILITY OF THE TRAINING COMPANY TO ACCOMPLISH ITS MISSION TO INCLUDE: CONSTRUCTION OF A 1,000 SQ. FT. CLASSROOM, CONCRETE CELL TOWERS, A 600 SQ. FT CLASSROOM, AND A COMPUTER OPERATED REACTIVE STEEL RANGE WITH AN ESTIMATED TOTAL COST SAVINGS OF OVER $50,000. GUNNERY SERGEANT LODEN'S INITIATIVE AND SELFLESS DEVOTION TO DUTY REFLECTED GREAT CREDIT UPON HIMSELF AND WERE IN KEEPING WITH THE HIGHEST TRADITIONS OF THE MARINE CORPS AND THE UNITED STATES NAVAL SERVICE."

GIVEN THIS   27TH   DAY OF   JANUARY 19   99



*[signature]*

SECRETARY OF THE NAVY

PETER PACE
LIEUTENANT GENERAL, U. S. MARINE CORPS
COMMANDING GENERAL, FLEET MARINE FORCE, ATLANTIC

# EXHIBIT 24-E

OPTICAL FORM

USMC FITNESS REPORT (1610)

ALIGNMENT LINE

## F.R.O.D.I.S. ACCEPTED

REF: MCO P1610.7

| PROGRAM | 1. ORGANIZATION a. NCC | b. RUC | c. DESCRIPTIVE TITLE (Abbreviate as required) |
|---|---|---|---|
| DFR | 226 | 53531 | MCSFTCO NSGA NORTHWEST CHESAPEAKE VA 23322 |

**2. MARINE REPORTED ON** a. LAST NAME: LODEN, JR. b. FIRST NAME: THOMAS c. M.I.: E d. GRADE: GYSGT e. IDENTIFICATION NO.: [redacted] f. PMOS: 0861 g. STATUS: F

3. OCCASION AND PERIOD COVERED a. OCC: AN b. PERIOD: FROM-TO: 960916 971031 c. TYPE: N d. PERIODS OF NONAVAILABILITY (30 or more consecutive days)-EXPLAIN: NA

4. DUTY ASSIGNMENT a. DESCRIPTIVE TITLE: COMBAT WPNS CHIEF b. MONTHS: 12 c. T/O NO.: 6502 d. LINE NO.: 205 e. DUMOS: 8532 5. SPECIAL INFORMATION a. QUALIFICATION: NSA212 b. REVIEWING OFFICER ID NO.: [redacted]

6. RESERVED FOR FUTURE USE    7. RESERVED FOR FUTURE USE    8. ORGANIZED RESERVE DRILLS

9. DEPENDENTS REQUIRING TRANSPORTATION a. NUMBER b. LOCATION c. ADDRESS    ATTN.    SKED.

10a. DUTY PREFERENCE (Code): 1st T9F 2nd 122 3rd 121    10b. DUTY PREFERENCE (Descriptive Title) (Abbreviate as required): 1st STUD RECRU SCHOOL 2d 2D MARDIV 3d 1ST MARDIV

11. REPORTING SENIOR a. SERVICE: USMC b. GRADE: CWO2 c. IDENTIFICATION NO.: [redacted] d. NAME AND DUTY ASSIGNMENT: P. R. GRASTY RANGE OFFICER

12. SPECIAL CASE (Mark if applicable): NOT OBSERVED REPORT / EXTENDED REPORT

13. PERFORMANCE
14a. ATTENTION TO DUTY
15a. YOUR ESTIMATE OF THIS MARINE'S "GENERAL VALUE TO THE SERVICE."
15b. DISTRIBUTION OF MARKS FOR ALL MARINES OF THIS GRADE:
15c. FILL BOXES SO THAT THE SUM OF EACH COLUMN CORRESPONDS TO ITEM 15b.

13a. REGULAR DUTIES — 14a. COOPERATION
13b. ADDITIONAL DUTIES — 14f. INITIATIVE
13c. ADMINISTRATIVE DUTIES — 14g. JUDGMENT
13d. HANDLING OFFICERS (MARK RCO's "NO") — 14h. PRESENCE OF MIND
13e. HANDLING ENLISTED PERSONNEL — 14i. FORCE
13f. TRAINING PERSONNEL — 14j. LEADERSHIP
13g. TACTICAL HANDLING OF TROOPS — 14k. LOYALTY
14. QUALITIES
14a. ENDURANCE — 14l. PERSONAL RELATIONS
14b. PERSONAL APPEARANCE — 14m. ECONOMY OF MANAGEMENT
14c. MILITARY PRESENCE — 14n. GROWTH POTENTIAL

16. CONSIDERING THE REQUIREMENTS OF SERVICE IN WAR, INDICATE YOUR ATTITUDE TOWARD HAVING THIS MARINE UNDER YOUR COMMAND: NOT OBSERVED / PREFER NOT / BE WILLING / BE GLAD / PARTICULARLY DESIRE

17. HAS THE MARINE BEEN THE SUBJECT OF ANY OF THE FOLLOWING REPORTS? IF YES, REFERENCE IN SECTION C.
a. COMMENDATORY: YES/NO b. ADVERSE: YES/NO c. DISCIPLINARY ACTION: YES/NO

18. REPORT BASED ON OBSERVATION: DAILY / FREQUENT / INFREQUENT
19. QUALIFIED FOR PROMOTION: NOT APPLICABLE / YES
20. RECOMMENDATION FOR NEXT DUTY CONCUR (ITEM 10) / RECOMMEND
21. RESERVED FOR FUTURE USE

RECORD A CONCISE APPRAISAL OF THE PROFESSIONAL CHARACTER OF MARINE REPORTED ON. THIS SPACE MUST NOT BE LEFT BLANK.

## FIRST-RATE LEADER, MANAGER AND ORGANIZER

A quick-witted, energetic SNCO who is fit and presents a fine personal appearance (Ht. 75", Wt. 182 lbs). He is action oriented, well organized and extremely conscientious. As Weapons Chief, he supervises the largest section in the company, oversees formal weapons instruction, and runs a small arms weapons complex. A GIFTED LEADER he combines DRIVE and PATIENCE to accomplish the mission with EXCELLENCE. Has made improvements in range facilities through self-help projects that have resulted in a significant impact on our ability to train Marines with (CONTINUED)

22. I CERTIFY the information in section A is correct to the best of my knowledge.
_(Signature of Marine reported on)_    971125 _(Date)_

23. I CERTIFY that to the best of my knowledge and belief all entries made herein are true and without prejudice or partiality.
_Phil R. Grasty Jr._ _(Signature of Reporting Senior)_    971125 _(Date)_

24. (Check one when required) I HAVE SEEN THIS COMPLETED REPORT AND ☐ I HAVE NO STATEMENT TO MAKE. ☐ I HAVE ATTACHED A STATEMENT.
_(Signature of Marine reported on)_    _(Date)_

25. REVIEWING OFFICER (Name, Grade, Service, Duty Assignment):
J.C. BECKER JR MAJ USMC COMMANDING OFFICER
25a. INITIALS: JtB
25b. DATE: 971218

000500

← STAPLE ADDITIONAL PAGES HERE

USMC FITNESS REPORT Page 2 (1610)

| MARINE REPORTED ON (Last Name) (First Name) (M.I.) | | GRADE | IDENTIFICATION NO. | PERIOD (From) | (To) | OCCASION |
|---|---|---|---|---|---|---|
| LODEN JR | THOMAS E | GYSGT | ████████ | 960916 | 971031 | AN |

### REPORTING SENIOR'S CERTIFICATION

I certify that on the terminal date shown in item 3 of Section A, I was the Reporting Senior for only those Marines of the same grade as shown in item 15b of Section B. Those Marines are ALPHABETICALLY LISTED below. I rank this Marine as _____ of _____ (only rank Marines marked Outstanding in 15a and b; mark NA if not applicable).

| NAME (Last, First M.I.) | PMOS | NAME (Last, First, M.I.) | PMOS |
|---|---|---|---|

minimal cost. Notable accomplishments are: 1) construction of 600 sq ft indoor classroom; 2) modified the shooting house shipboard side to a land-based environment: 3) complete rehab/redesign of linear range and constructed concrete range towers with a total estimated cost savings of $100,000. Superb written and verbal skills, his importance to this command can not be overstated. As a leader this SNCO is a practitioner of General Lejeune's "father to son" and "teacher to scholar" relationship with his Marines. He is one of the most concerned, caring and involved leaders I have observed. Has completed Resident requirement for his grade and is presently enrolled in the Warfighting course. He has all the skills, traits and experience to make an OUTSTANDING First Sergeant of Marines. Promote now!

I have seen section C continuation    Date 971125

SIGNATURE _Phil R. Hasty Jr._    DATE 971125

### REVIEWING OFFICER'S CERTIFICATION

1. ☐ I have not had sufficient opportunity to observe this Marine, so I have no comment.

2. ☐ I have had only limited opportunity to observe this Marine, but from what I have observed I generally concur with the Reporting Senior's marks in items 15a and b.

3. ☒ I have had sufficient opportunity to observe this Marine; and concur with the Reporting Senior's marks in items 15a and b.

4. ☐ I have had sufficient opportunity to observe this Marine, and do not concur with the Reporting Senior's marks in items 15a and b. I would evaluate this Marine as _____ (Item 15a) and rank this Marine as _____ of _____ (only rank those evaluated as Outstanding (OS)).

**REMARKS (mandatory if item 4, above, is checked):**

EXCEPTIONAL SNCO who has made noteworthy contributions to Training Company during this period. I concur with the RS Section C comments and attest to their accuracy - THEY ARE NOT INFLATED! In addition to supervising the self-help projects, he got his hands dirty and did much of the skilled grunt work himself. His efforts/polished results have garnered much positive feedback and will form the heart of a major Navy Self-Help Award for the base.

Continues to be one of the hardest working Marines in this company. Equally dedicated to personal, professional development of his Marines - strong advocate, leader in ensuring their welfare is looked after.

One of the finest SNCO's I have ever worked with - easily within the top 10% in our Corps. Within the company, I rank him as 2 of 6 competitive Gunnery Sergeants! Difference between him and #1 is negligible. Highly recommended for selection as First Sergeant. This report late due to RO oversight.

SIGNATURE _JCBeckt_    DATE 971214

000501

# EXHIBIT 24-F

Robert Quin. 10/27/01

890616 10-15

DFR   530   13310   HM BTRY 1STBN (REIN) 12THMAR

LODEN   THOMAS   E   SGT   0811

AN   880801   890228   N   NA

SCT/OBS DRV   9   1142F   47   0811   SNFASS

KANEOHE HI

2A9  2A4  YO9  MCSF MEMPHIS TN   MCSF MERIDIAN MS   MCAS CA

USMC   CAPT   K L BRADFORD   BN LNO

A superb young NCO with superior skills. My most accomplished sergeant.
His overall competence is extraordinary; he is a dynamic individual with
no apparent weaknesses in his MOS. He has proven to be an adept commun-
icator as well, resulting in him being qualified to stand watch as the
FSC in the 3d Marine Regt. COC. As my operations NCO, he has been
responsible for training, scheduling, ammo expenditures, logistical
requirements, and the paperwork associated with each. His level of
maturity, moral courage, sense of justice and humor, and concern for
his marines are as those expected of a SNCO, which is what this young
marine should be at the earliest possible moment. He is that good.

890331

P S MOROSOFF LTCOL
BN CO   USMC

890526

000455 2/8

# EXHIBIT 24-G

004

| 130 | 33310 | HQ BTRY BATRN (REIN) 12THMAR | | | |

| EDEN | | THOMAS | E | SGT | 0861 |

| CH | 890301 | 890701 | N | NA | |

| SCOUT/OBSERVER | N | 1152F | 46 | 0861 | ESPASS |

| 2A5 | 2A2 | YOY | MSF MEMPHIS TN | MSF COLUMBUS MS | EAST COAST |

| USMC | CAPT | | K L BRADFORD BN LNO | |

2 C 0 C C C 0 0 1 2 1

Still my most accomplished NCO. He continues to be the driving force,
a stalwart personality amidst a group of stellar performers. Whether
in his operational billet or in his additional duty as the operations/
training NCO, he displays determination, candor, and a forthright
nature. He accomplishes all tasks; we have yet to have anything "fall
through the cracks" if he is involved. Filling a Staff Sergeants
billet, he has shown he can handle the tasks associated with that rank
with ease. This section, and the Marine Corps, is a better place with
him in our ranks.

000457

890701

P S MOROSOFF LTCOL
USMC

0556629

FITNESS REPORT Page 2

| REPORTED ON (last name, first name (MI)) | GRADE | IDENTIFICATION NO | PERIOD FROM | TO | OCCAS |
|---|---|---|---|---|---|
| LODEN THOMAS E | SGT | | 890301 | 890701 | CM |

## REPORTING SENIOR'S CERTIFICATION

I certify that on the termina: date shown in item 3 of Section A, I was the Reporting Senior for the Marines of the grade shown in item 15c of Section E. Those Marines are ALPHABETICALLY LISTED below. I rank the Marine N/A of ... only rank Marines marked Outstanding in 3a and b mark N/A if not applicable

| NAME (last, first, MI) | PMOS | NAME |
|---|---|---|
| ELLIS, Larry W. | 0861 | |
| ENGLISH, Terry C. | 2531 | |
| FERRIER, William R. III | 0861 | |
| HAMMOND, Dexter R. | 0861 | |
| JACKSON, Keith B. | 0861 | |
| LODEN, Thomas E. | 0861 | |

SIGNATURE _[signature]_ 890701

REVIEWING OFFICER

1. ☐ have not had sufficient opportunity to observe the Marine ...
2. ☐ have had only limited opportunity to observe the Marine ... Reporting Senior's marks in items 15a and b ...
3. ☒ ... have had sufficient opportunity to observe the Marine and agree with the Reporting ... marks in ...
4. ☐ have had sufficient opportunity to observe this Marine ... Section B, would evaluate this Marine ... ... portions those evaluated b, the Reporting OS

REMARKS (mandatory if item 4 above is checked)

Sgt Loden is a solid performer. As the reporting senior noted, when Sgt Loden is in charge, nothing falls through the crack. Has taken the initiative to start and/or complete major projects. The S-3 actual of the supported infantry regiment frequently calls my liaison officer's office. If my liaison officer is not in, regimental S-3 usually asks Sgt Loden his question. They have developed a very good working relationship because Sgt Loden gets the correct information for the regimental S-3 and explains it so the S-3 understands it. Clearly a Marine of many gifts including a good mind and gift for expressing himself. If I go to war, I want him with me.

000458

SIGNATURE _P P Moore_ DATE 890714

FER | 130 | 3310 | HQ BTRY 3RTBN (REIN) 12THMAR

LODEN JR | THOMAS | E | SGT | | DAL1

TR | 890702 | 900102 | X | NA

UT OBSERVER | X | 1142F | 46 | DAL1 | ESPASS

1 | NSA | | HONOLULU HI

153 | 144 | 134 | 2ND FSSG CAMLEJ | 1ST FSSG CAMPEN | 3RDMARDIV

USN | LCDR | | N D BUSS REGT NGLO

0 0 1 0 0 0 0 0 1 3 1

SGT LODEN s sustained superior performance has been an inspiration to each member of the NGF Liaison section. Whether in his operational billet or in his additional duties as the operating NCO, he works zealously with drive and dedication. Possesses a sound management background, combined with a keen analytical style and adaptability to changing situations makes him highly effective in any situation. SGT LODEN enjoys my complete trust and confidence in any assignment, regardless of difficulty or complexity. His immense talents and driving enthusiasm will be greatly missed.

14Dec89    Michael D. Buss    900103

R M RIVERS LTCOL
XO CO    USMC    900103

154

000459

DFR | 124 | 13330 | HQ BTRY 3/14 12THMAR 3DMARDIV

LODEN JR | THOMAS | E | SGT | ████████ 0861 |

CH | 900102 | 900726 | N | 900131 | 00206 PRO SE...

NGF CHIEF | 7 | 11342 | 146 | 0861 | EXPED

1 | 968 | ████████ | FRANCE...

124 | 130 | 122 | 3DMARDIV | ...DMARDIV

USMC | CAPT | ████████ | T R H...

LEPENDABLE, POISED, MATURE, EXTREMELY PROFESSIONAL MARINE. One for the three best
sergeants I have observed during my fifteen years in the Marine Corps. His leadership,
tactical and technical proficiency is outstanding. BRIGHT, ARTICULATE AND VERSATILE
Thrives on responsibility. By far, ahead of his peers as a naval gunfire chief
or watch observer. While attending the Advanced Naval Gunfire Course in the Republic of
the Philippines his technical proficiency and ability to cooperate was so appreciated by
the school's staff that he was invited to assist in the instruction of his fellow
students. Displays tireless energy, commendable motivation and enthusiasm. OUTSTANDING,
OUTSTANDING, OUTSTANDING. Fully qualified to be a drill instructor, recruiter and after
promotion to Staff Sergeant, a detachment commander on Marine security guard duty. Based
on my estimate of this Marines potential I recommend that he be considered for promotion
ahead of contemporaries.

R J GRAUS
MAJ USMC
S-3 OFFICER

| LODEN JR THOMAS E | SGT | | 900102 | 900716 | CM |
|---|---|---|---|---|---|

PERFORMING SENIOR'S CERTIFICATION

I certify that on the terminal Date shown in item 3 of Section A was the Reporting Senior for only those Marines whose same marking shown in item 3b of Section B. Those Marines are ALPHABETICALLY LISTED below. I rank this Marine as **N/A** only rank Marines marked Outstanding in 13a and b mark NA if not applicable.

| | | | |
|---|---|---|---|
| LEDET III ALBERT | | | |
| LODEN JR THOMAS E | | | |

SIGNATURE _____  DATE 16 Aug 90

REPORTING OFFICER'S CERTIFICATION

Outstanding in all respects. The finest Sergeant I have
worked with. Sgt. Loden should be promoted to Staff Sergeant
now. He is that Sergeant that we all look for as the backbone
of the Corps.

SIGNATURE _____  DATE 20 Aug 90

000464

Jt. Eval At Comd 2/28/93 [1] 6 A: 3/29/93

USMC FITNESS REPORT (1610)
NAVMC 10835 Rev 2-83

MMSB-32

930 224 55

| DFR | 130 | 33310 | HQ BTRY 1STBN 12THMAR |
| LODEN | | THOMAS | E | SSGT | | 0861 |
| AN | 920509 | 925233 | N | NA |
| SCOUT OBSERVER | 8 | 11426 | NG | 0861 | SSPASS |
| DEC 1705 | | | | |
| 1 | 947 | | KAILUA HI |
| 124 | 130 | 122 | 3RD MAR DIV | 1ST MEB K-BAY HI | CAMP LEJEUNE NC |
| USMC | CAPT | | M A SINGLETON REGIMENTAL LIAISON OFFICER |

**DETERMINED, LOYAL AND AGGRESSIVE! INITIATIVE IS STRONGEST TRAIT.** SSgt
Loden is a leader in every aspect. Immaculate in appearance, he is
courteous and continually strives to set the example for subordinates. As
my senior scout observer, I count on him to ensure that the proficiency
level of the 0861's within this battalion is unparalleled. SSgt Loden has
far exceeded my desired results by establishing a block of instruction
which challenges the scout observer instead of bombarding him with
information. Throughout PTA 1-93 held on the big island of Hawaii at the
Pohakuloa Training Area, SSgt Loden proved to be my right arm particularly
during the regimental fire support coordination exercise "VALIANT FIRE" as
well as for the MCCRES of 2nd Bn 3rd Marines.          CONTINUED

000475

930120

T R KELLY        LTCOL  USMC        TRK
BATTALION COMMANDER                 11FEB 93

45

Jstr-Eiso Al(oxo; 2/28/93 '1  6:A' 3/29/93

USMC FITNESS REPORT PAGE

LODEN    THOMAS   E  SSGT               920509   921231   AN

REPORTING SENIOR'S CERTIFICATION

I certify that on the termnal date shown in item 3 of Section A, I was the Reporting Senior... those Marines of the same grade as shown in item 16b of Section B. Those Marines are ALPHABETICALLY listed below... only rank Marines marked Outstanding in 16a and b mark NA if not applicable

BARKEN SCOTT M          0861
LODEN THOMAS E          0861

CONTINUATION OF SECTION C.  During this period he essentially served as the Assistant Regimental Fire Support Coordinator performing superbly during my absence.  In fact he was complimented by the Regimental Commander on at least three occasions. EXCELLENT PHYSICAL CONDITION.  Ssgt Loden helped organize and participated in a joint Air Force Training Exercise; "GILA BEND" 93 conducted in Arizona.  F111 and A-10 aircraft were controlled onto targets with the use of the (MULE) Modular Universal Laser Equipment.  No less than 50 live CAS missions were accurately controlled obtaining remarkable results.  SSgt Loden is one of the best.  I would actively seek to serve with him again.

I have seen Section B marks and Section C comments.

SIGNATURE _____  DATE 930120

REVIEWING OFFICER'S CERTIFICATION

1. [ ] I have not had sufficient opportunity to observe this Marine, so I have no comment.
2. [ ] I have had only limited opportunity to observe this Marine but from what I have observed I generally concur with the Reporting Senior's marks in items 15a and b
3. [X] I have had sufficient opportunity to observe this Marine, and concur with the Reporting Senior's marks in items 15a and b
4. [ ] I have had sufficient opportunity to observe this Marine, and do not concur with the Reporting Senior's marks in items 15a and b I would evaluate this Marine as ___ Item 15a and rank this Marine as ___ (only rank those evaluated as Outstanding (OS))

REMARKS (mandatory if item 4 above is checked)

I definitely concur with the reporting senior's marks in section B and comments in Section C.  Staff Sergeant Loden has made significant contributions to the battalion's combat readiness.  He anticipates events, plans ahead, establishes proper priorities of work and executes flawlessly. He is a versatile SNCO who is capable of handling numerous taskings simultaneously.  An aggressive leader, he gets things done.  Top 20 percent of SNCO's in the battalion.  Tremendous potential, highly qualified for promotion.

SIGNATURE Thomas R. Kelly  DATE 930623

NOTE The information above WILL NOT be entered into any computer program

000476

940210

| DFR | V3F | 33330 | F BATTERY 2ND BATTALION 12TH MARINES |
| LODEN JR | | THOMAS | E | SSGT | ████████ | 0861 |
| CH | 932403 | 940113 | N | N/A |
| LIAISON CHIEF | | 9 | 33136 | 36 | 0861 | SSPASS | ████████ |

3 | 967 | ████████ KAILUA HI 96734

324 | 2A4 | 2A4 | 3D MARDIV OKI JA | MCSF MEMPHIS TN | MCSF MERIDIAN MS

USMC | 1STLT | ████████ J M WATSON LIAISON OFFICER

REMARKABLE, AGGRESSIVE, TRULY SUPERIOR. Staff Sergeant Loden has performed his duties in an OUTSTANDING manner. As Liaison Chief, he has demonstrated an extremely detailed M/S knowledge, and has earned the respect of supported Infantry Commanders. Not only is he an Artillery "encyclopedia", his in-depth understanding of Naval gunfire systems render him invaluable in the FSCC. He is a SUPERB instructor and his prowess on Fire Support have greatly enhanced the ability of the supported Infantry Battalion to utilize and coordinate Artillery and Naval Gunfire. TRUSTWORTHY, EXTREMELY Reliable. He recently developed and instructed the Battalion's entire curriculum on the job. His training program enabled the efficient and successful employment of the DCT. He also constantly updates these applications to ensure optimum performance. In addition to his regular duties, SSgt Loden has served as the Battery Training Officer. CLASSED.

940128

G F BOND    CAPT
BTRY CO

940128

20 JAN 94

000479

LODEN JR     THOMAS     E  SSGT                    930401     9-0113     CH

LODEN JR T E                    0861

*SECTION C CONTINUED*His amazing initiative and meticulous attention to recall have resulted in a first-class training program. A Great Mentor. Through countless hours of field time and personal instruction, he has succeeded in training his Marines to the highest level of Competence and Professional Maturity, and vigorously looks after their welfare. Swift in accomplishment of the mission. His Loyalty to his Marine, and the Corps is Unsurpassed. Highly respected by subordinates, peers, and superiors. "Professional" describes his every endeavor. His Positive "Can-Do" attitude makes him a true asset to any command. Certainly a privilege to serve with. PROMOTE NOW AND DEFINITELY RETAIN!!! WOULD ACTIVELY SEEK TO SERVE WITH HIM AGAIN.  Due to limited boatspaces SSgt Loden has not been able to attend the SNCO Resident P.M.E. Course, but he has completed the 7100 series SNCO Career Non-Resident Course in 93.

I have seen SECTION B marks and SECTION C comments  _____

Superior SNCO.  Tremendous asset to both artillery battery and infantry company.  Invaluable leadership traits.  Motivates and educates.  Rank this fine SNCO 2 out of 6 SNCO's within this battery.  PROMOTE NOW!

USMC FITNESS REPORT

BEST IMAGE

---

LODEN JR ... SSGT ... 0861

LIAISON ... EEPASS

... H... KANEOHE HI

... MCRD MERIDIAN MS ... 3D MAR DIV OKI JA

H Q TAPEN LIAISON OFFICER

SSgt Loden's expertise in his POS is unparalleled in the 12th Marine Regiment. Received a Navy Achievement Medal for his innovative work with the Digital Communications Terminal and his input into 1/12's TACSOP. During Battery C's FCCEX, he was noted by the evaluator as being, "the best of the best in the 0861 field". Has received complaints outstanding rebuttals from his infantry brethren regarding his fire support expertise. Delinquent duty as Training Staff Non-Commissioned Officer keeps this dedicated Staff Sergeant challenged. Thinks ahead, plans effectively yet efficiently. Implemented a training management system which became the model for the battalion. During the Commanding General's inspection, the inspector stated that SSgt Loden ran an "outstanding, efficient, training program." Outstanding teaching skills and relentless devotion to duty motivated his Marines to reach their fullest potential. "CONTINUED"

23 I CERTIFY that to the best of my knowledge and belief all entries made herein are true and without prejudice or partiality.

James M. Topping ... 940727
(Signature of Reporting Senior)

24. REVIEWING OFFICER Name, Grade, Service, Duty Assignment

G F DOND ... CAPT.
USMC ... BTRY COMMANDER ... 140728

A6

75 000481

LODEN JR THOMAS E          940114     940827     CN

**REPORTING SENIOR'S CERTIFICATION**

I certify that on the terminal date shown in Item 8 of Section A, I was the Reporting Senior for [illegible] grade as shown in Item 15 of Section B. These Marines are ALPHABETICALLY LISTED below [illegible] of ____ (only rank Marine marked Outstanding in 15a and b: mark NA if not app [illegible]

**SECTION C REMARKS**

A Marine who is [illegible] performance and added responsibility [illegible]. Due to limited boat spaces, SSgt Loden has not been able to attend the ESCO Resident P.M.E. Course, but has completed the PME needed thru Career Non-Resident Course in 1993

I have seen SECTION B and [illegible] read SECTION C comments. [illegible] Acceptance

SIGNATURE _____                     Date 940827

SIGNATURE _____          DATE 940827

**REVIEWING OFFICER'S CERTIFICATION**

1. ☐ I have not had sufficient opportunity to observe this Marine. (I have [illegible])
2. ☐ I have had only limited opportunity to observe this Marine, but from what [illegible] generally concur with the Reporting Senior's marks in Items 15a and b.
3. ☒ I have had sufficient opportunity to observe this Marine, and concur with the Reporting Senior's marks in Items 15a and b.
4. ☐ I have had sufficient opportunity to observe this Marine, and do not concur with the Reporting Senior's marks in Items 15a and b. I would evaluate this Marine as _____ (Item 15a) and rank this Marine as _____ of _____ (only rank those evaluated as Outstanding (OS)).

REMARKS (mandatory if Item 4, above, is checked):

Staff Sergeant Loden is the most intelligent Staff Noncommissioned Officer I know. Single handedly implemented the Battalion's Digital Operation System. Sought after by many for his 0861 prowess. Premier 0861 within the Battalion. SSgt Loden's outgoing personality, keen sense of humor and ability to communicate easily is refreshing. I rank SSgt Loden 2 of 8 SNCO's within the Battery! QUALIFIED FOR PROMOTION!

SIGNATURE _____     [illegible]     DATE 940828

NOTE: The information above WILL NOT be entered into any computer program.

000482

LOREN JR                 THOMAS    E    SSGT

LIAISON CHIEF

KAILUA HI 96734

12TH MAR DIV CMP LEJE JENHMAR DIV CMP PEN    12TH MAR DIV OKI JA

C B PATON LIAISON OFFICER

**BOUNDLESS POTENTIAL!** Successfully acted as the Battery GySgt for the rear party while the battery was deployed for 2 1/12 months. During this time he dazzled the battalion by keeping the battery's equipment inspection ready with only a skeleton crew. **Unparalleled MOS proficiency** within 12th Marines. Acted as the Artillery Liaison Officer, a senior lieutenant's billet, during a combined arms exercise that incorporated artillery, air, mortars, and direct fire assets at Camp Fuji, Japan with admirable results. In his collateral duty as Training SNCO, he has shown himself to be an imaginative and far-sighted thinker. SSgt Loden is a jewel in the "King of Battle's" crown. Recommended for promotion with great enthusiasm! Has not attended SNCO Resident course due to limited seats, but has completed the SNCO Career Non-Resident course and the Advance SNCO Career Non-Resident Course.

I have seen SECTION B marks and SECTION C comments.

Christopher D Patte    A6

G P BOND    CAPT
USMC    BTRY CMDR

REPORTING SENIOR'S CERTIFICATION

I certify that on the period shown in Item 3 of Section A, I was the Reporting Senior for only those Marines of the same grade as shown in Item 15b of Section B. These Marines are ALPHABETICALLY LISTED below. I rank this Marine as ___ of ___ (only rank Marines marked Outstanding in 15a and b; mark N/A if not applicable).

SIGNATURE _Christopher D Patton_  DATE _941125_

REVIEWING OFFICER'S CERTIFICATION

1. [ ] I have not had sufficient opportunity to observe this Marine, so I have no comment.

2. [ ] I have had only limited opportunity to observe this Marine, but from what I have observed I generally concur with the Reporting Senior's marks in Items 15a and b.

3. [X] I have had sufficient opportunity to observe this Marine, and concur with the Reporting Senior's marks in Items 15a and b.

4. [ ] I have had sufficient opportunity to observe this Marine, and do not concur with the Reporting Senior's marks in Items 15a and b. I would evaluate this Marine as ___ (Item 15a) and rank this Marine as ___ of ___ (only rank if case evaluated as Outstanding (OS))

REMARKS (mandatory if Item 4, above, is checked)

Skilled. Intelligent. Staff Sergeant Loden continues to produce for the battery. Never in my year as CO have I seen this fine SNCO not give 110%. His ability to communicate, instruct and just get his hands dirty is refreshing. This superior SNCO will surely be missed by this unit. I rank this Marine 2 of 8 Staff NCO's within the battery. PROMOTE NOW! Is next on list to attend SNCO Academy.

SIGNATURE _J.F. Bond_  GRADE _CAPT USMC_  DATE _941125_

NOTE: The information above WILL NOT be entered into any computer program

000484

USMC FITNESS REPORT (1610)

LOBEN JR          THOMAS          E     SSGT          0863

GC    953035      560229   M    NA

COMPANY GYSGT          5    6502    148    0369    EEA245

122 11E2    1FT    2D MARDIV CAMLEJ    2D ANGLICO CAMLEJ    22D HEU CAMLEJ

USMC  MAJ          J C BECKER JR COMMANDING OFFICER

RECORD A CONCISE APPRAISAL OF THE PROFESSIONAL CHARACTER OF MARINE REPORTED ON. THIS SPACE MUST NOT BE LEFT BLANK

OUTSTANDING SNCO! Hand picked to be the Company Gunnery Sergeant, despite junior grade, because of his professionalism, desire, dedication. As Co GySgt, directly supervises numerous, concurrent operations of the company, as well as ensuring the needs of an average of 250 students per month are met. Experience, insight valuable - during transition into new Academics building and turnover in personnel, helped minimize impact on mission. Demonstrated consistent improvement in developing attention to detail, proactive planning process. Eager to learn, stays motivated; developing solid problem-solving, trouble-shooting ability, able to solve problems with minimal supervision. Sincere concern for welfare, professional growth of subordinates. Dedicated to personal and professional growth - has very high standards for himself; outstanding physical fitness, appearance. Weighs 192 and is 76" tall. Enrolled in Warfighting MCI. Leadership abilities will ensure continued success as a GySgt of Marines. Enthusiastically recommended for increased responsibilities. This report late due to RS oversight.

I have seen Section "B"
and Section "C" comments          960405

W H PARRISH          COL    USMC
CO MCSFBN NORVA          960426

STAPLE ADDITIONAL PAGES HERE

000491

000491

USMC FITNESS REPORT (1616)

OFFICIAL FORM

ALIGNMENT LINE

**F.R.O.D.I.S. ACCEPTED**

THOMAS E J GYSGT

MCSFCO NSGA NORTHWEST CHESAPEAKE VA 23322

COMBAT MPNS CHIEF

USMC CWO5 L SANDERS RANGE OFFICER

1F21322 1J9V 2D ANGLICO 2D MARDIV NAVAMPHSCH CA

RECORD A CONCISE APPRAISAL OF THE PROFESSIONAL CHARACTER OF MARINE REPORTED ON. THIS SPACE MUST NOT BE LEFT BLANK.

The glue that holds the section together. Boundless energy. Results-oriented. The clean up hitter. Architect of the plan - then makes it happen with the desired results. Among the most inspirational SNCO I have known. True example setter. The ultimate organizer and manager. Through his leadership, the section's potential is maximized. His aggressive PME training and individual counseling procedures builds confidence and self-esteem among his subordinates. The total Team Player. Always ready to assist anyone at anytime. No supervision required. His guidance and leadership has continually proven vital in the development of his Staff Sergeants. Range operations was significantly enhanced as a result of his leadership. He established and maintained strict accountability and preventive maintenance of range assets. He completed the SNCO Advance Course at Quantico. Currently enrolled in the 7300 series, and read a book from the Commandant's reading list. Destined for increased responsibilities. Height is 76 inches, and weight is 194 pounds.

22. I CERTIFY the information in section A is correct to the best of my knowledge.
(Signature of Marine reported on)   (Date) 96/025

23. I CERTIFY that to the best of my knowledge and belief all entries made hereon are true and without prejudice or partiality.
(Signature of Reporting Senior)   (Date) 96/025

24. (Check one when required) I HAVE SEEN THIS COMPLETED REPORT AND
☐ I HAVE NO STATEMENT TO MAKE   ☐ I HAVE ATTACHED A STATEMENT.

(Signature of Marine reported on)   (Date)

25. REVIEWING OFFICER (Name, Grade, Service, Duty Assignment)
J C BECKER JR   MAJ   USMC
COMMANDING OFFICER
25-A. INITIALS JCB
25-B. DATE 96 1111

← STAPLE ADDITIONAL PAGES HERE

000497

OPTICAL FORM

USMC FITNESS REPORT (1610)

ALIGNMENT LINE

## F.R.O.D.I.S. ACCEPTED

REF: MCO P1610.7

**SECTION A. COMPLETED BY REPORTING SENIOR. (USE OCR-FONT TYPEWRITER ONLY)**

| PROGRAM | 1. ORGANIZATION a. MCC | b. RUC | c. DESCRIPTIVE TITLE (Abbreviate as required) |
|---|---|---|---|
| DFR | 226 | 53531 | MCSFTCO NSGA NORTHWEST CHESAPEAKE VA 23322 |

2. MARINE REPORTED ON a. LAST NAME LODEN JR — b. FIRST NAME THOMAS — c. M.I. E — d. GRADE GYSGT — e. IDENTIFICATION NO. — f. PMOS 0861 — g. STATUS F

3. OCCASION AND PERIOD COVERED a. OCC TR — b. PERIOD: FROM-TO 971101 980706 — c. TYPE N — d. PERIODS OF NONAVAILABILITY NA

4. DUTY ASSIGNMENT a. DESCRIPTIVE TITLE COMBAT WPNS CHIEF — b. MONTHS 8 — c. TJO NO. 6502 — d. LINE NO. 374 — e. DeMOS 8532 — 5. SPECIAL INFORMATION MEA211 — b. REVIEWING OFFICER ID NO.

9. DEPENDENTS REQUIRING TRANSPORTATION

10a. DUTY PREFERENCE (Code) J9F | JJU | 122 — 10b. DUTY PREFERENCE (Descriptive Title) STUD RECRU SCHOOL | NAVAL AMPHIB SCH | CG 2ND MARDIV

11. REPORTING SENIOR a. SERVICE USMC — b. GRADE CWO2 — c. IDENTIFICATION NO. — d. NAME AND DUTY ASSIGNMENT P.R. GRASTY RANGE OFFICER

**SECTION C. REPORTING SENIOR (USE TYPEWRITER)**

RECORD A CONCISE APPRAISAL OF THE PROFESSIONAL CHARACTER OF MARINE REPORTED ON. THIS SPACE MUST NOT BE LEFT BLANK.

EXCEPTIONAL SNCO. Would easily be in the top 10% of all Gunnery Sergeants I have served with. A self-starter who's initiative is only surpassed by his imagination. Never satisfied with the "status-quo", he constantly seeks ways to improve our ability to train Marines. As the SNCOIC of one of the largest pistol ranges in the Marine Corps, he oversees the training of not only the 1500 students belonging to MCSFBN but ensures the safe training and smooth operation of the facilities for over 5000 military and law enforcement personnel a year. INNOVATIVE and FLEXIBLE his self help projects has drastically improved the training facility and our ability to support our mission. Improvements during this period include: 1) construction of a 1000 sq. ft classroom at an estimated cost savings of $35,000; 2) construction of a computer operated reactive steel range with an estimated cost savings of $20,000; (CONT)

**SECTION D. SIGNATURES**

22. I CERTIFY the information in section A is correct to the best of my knowledge. (Signature) 980721 (Date)

23. I CERTIFY that to the best of my knowledge and belief all entries made hereon are true and without prejudice or partiality. (Signature) Phil R. Grasty 980721 (Date)

24. (Check one when required) I HAVE SEEN THIS COMPLETED REPORT AND ☐ I HAVE NO STATEMENT TO MAKE. ☐ I HAVE ATTACHED A STATEMENT.

25. REVIEWING OFFICER (Name, Grade, Service, Duty Assignment) G.L. LYON MAJ USMC COMMANDING OFFICER 000303 — 25b. DATE 980724

◄── STAPLE ADDITIONAL PAGES HERE

USMC FITNESS REPORT  Page 2                                                    (1610)

| MARINE REPORTED ON (Last Name) (First Name) (M.I.) | | | GRADE | IDENTIFICATION NO. | PERIOD (From) | (To) | OCCASION |
|---|---|---|---|---|---|---|---|
| LODEN JR | THOMAS | E | GYSGT | ████████ | 971101 | 980706 | TR |

### REPORTING SENIOR'S CERTIFICATION

I certify that on the terminal date shown in item 3 of Section A, I was the Reporting Senior for only those Marines of the same grade as shown in item 15b of Section B. Those Marines are ALPHABETICALLY LISTED below. I rank this Marine as _____ of _____ 1 _____ (only rank Marines marked Outstanding in 15a and b; mark NA if not applicable).

| NAME (Last, First, M.I.) | PMOS | NAME (Last, First, M.I.) | PMOS |
|---|---|---|---|
| LODEN THOMAS E | 0861  960301 | | |
| STAFFORD EYLUSS | 0369  961201 | | |

3) construction of two outdoor covered classrooms with an estimated cost savings of $10,000. Given minimal assets, can accomplish almost any task. Range improvements continue to garner laudatory comments from all who visit this facility. Leads his Marines in all endeavors. Invaluable source of counsel/advice. His leadership ability coupled with his communication skills and breath of experience would make him a **SUPERB** 1stSgt of Marines. He is 75 inches tall and weights 182 lbs and is within the acceptable standards. PROMOTE NOW!

I have seen section C continuation             Date

_[signature]_                                  980721

SIGNATURE _[signature] Phil R. Prasty_      DATE  980721

### REVIEWING OFFICER'S CERTIFICATION

1. ☐ I have not had sufficient opportunity to observe this Marine, so I have no comment.
2. ☐ I have had only limited opportunity to observe this Marine, but from what I have observed I generally concur with the Reporting Senior's marks in items 15a and b.
3. ☒ I have had sufficient opportunity to observe this Marine, and concur with the Reporting Senior's marks in items 15a and b.
4. ☐ I have had sufficient opportunity to observe this Marine, and do not concur with the Reporting Senior's marks in items 15a and b. I would evaluate this Marine as _____ (Item 15a) and rank this Marine as _____ of _____ (only rank those evaluated as Outstanding (OS)).

**REMARKS (mandatory if item 4, above, is checked):**

This outstanding Gunnery Sergeant of Marines has saved the Marine Corps in excess of $65,000 in this reporting period alone. He is the epidome of a leader from the front. The efforts of this Marine will be appreciated for many years to come. This is the type of SNCO that we need to promote and retain in our Corps. I rank him number 1 out of all the Gunnery Sgt.s in this command. He will leave a void here that will be hard to fill. Ready for promtion now!

000304

SIGNATURE _[signature]_                      DATE  980724

# EXHIBIT 25

# Attorney Notes

# EXHIBIT 25-A

Thomas Edwin Loden
"Tom"

7/4/00 ▓▓▓▓▓▓▓▓▓▓
Vicksburg, MS 39180
▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓ - Tupelo, MS.
▓▓▓▓▓▓

wife Kat - Katrina - ▓▓▓▓▓▓▓
office
Abby - 2½ yrs old
5 yrs - Muscle Shoals, Ala.
married twice before - no children
from previous marriages

Phelps Dunbar - Jackson
mother - Bobbie - Kennedy Drive?
∅ father (dead)

13 L - , 1yr college ICC -
IAHS - attended Tupelo also
1982
Recruiting - Temp. 3 yrs.
major - Vermont - New Orleans
Marine Corps -

Oct. 1982 - signed up
Jan. 1983 boot camp - school Oklahoma
San Diego - number 1 novel gun fire
(heavy.)

Japan - order (1st manager)
aprox. 2 yrs - Divorce (unfaithful wife)

2nd wife - Joy (8 yrs)
Hawaii - lot of deployments - Home/away/
                                          Home/away/etc
2 yrs - 6 months (unfaithful wife)

Desert Storm -
          Aug. 5th '90 - April 91
          "1st in last out"
          2½ month "float" right after that

"Hired Gun" in Hawaii - Go into unit - "fix them"
'95 filed for divorce
Transfer to - Marine Corp Security Forces
Instructor - close quarters
(Virginia) combat
pressure job
into pressure job of recruit - "make
                                       the mission"

Came to check on Grandmother -
Reva "B" hoden
████████████████████████
          Fulton, Ms.
Wed - aprox 3:00 pm
stoped "Varsity" on Main St. Tupelo
got haircut - Planned to leave
Sat morning early.

Ford Conversion Van - 1995-1996
visited Cousin Michael HARE - Wed evening
J.R's visited didn't get out -
Back "home"

Thus - morn - cooked breakfast
Got truck running -
Car up and Running - fixed brush hog

Took grandmother to mall in Tupelo
whaled around mall - Back home
Saw Sister Anita in Tupelo
(Ritchey) -
2:30 - Two cheesburgers to go from Comers
Left
Maxwell's across the street - Back to pick up c.B.
Drove to Fulton - manty Grays
- welded bushog
Back home - bushogged - Drinking six to to
eight
Went to Michael's talked to Girlfriends
daughter - 4 or 5 drinks
17 yrs. old
aprox 9:00 pm
left in van - plan to call
wife from house
called wife from cell phone
Comers at aprox 9:40
Ordered cheesburger to go
pulled off on old 78
went to Skyline or toward Skyline
Dorsey exit off 178 - car with lights
flashing - 10:30 - 10:45 don't recognize
"Have you thought about the Marie
I know I did it       Corps"
I know I tied her up       "Thats the last thing
                           I want to do with
I know I raped her          my life"
I don't Remember killing her

mother abandoned at two
abusive stepmother - physical & probably sexual
sexual abuse young age at a church
exposed to pronos - at young age
back & forth from mom & dad
sister attempted suicide (pills)

He has attempted approx 5 times
16 when father died

Va. beach (psychologist) - Referral from
marriage counselor
always in top 10% of everything
saw friend burn to death 300 yds away
couldn't do anything about it
- "War fucked me up"

# EXHIBIT 25-B

Call from M. Baker - Loden wants to talk
to them and tell "whole truth"
Will talk to him unless I'm present or "give
7/7/00        permission"
6:00 P

July 13th 2OO

Conversation with M. Baker
Client tried to kill himself
Slit wrist but called guards
was transferred back to Tishomingo Co.

8/22    Meeting with Bobbi Chastain (mother) Anita
Ritchey (sister) other sister (Ramona ?)
Discussed treatment at jail and obtaining psych
help. feels he is still suicidal!

8/22    phone conf. Cap. Jeff Groharing
U.S. Marine Lawyer from San Diego

10/9    — Conf. at Fulton - Town

11/22/00 - Travel to Fulton + Conf. - meeting

# EXHIBIT 25-C

page 831

2 Jones reports
2nd reports - charges

8/1/01

page 841 - SO ordered roll-back
10:19
warrant issued - 11:13

page 342 -

Went in Van 1st? then got warrant?

Rope found before consent signed
see time entered - no ret

Video from Residents - supress?

Cell Kent fud nt when she mailed
stuff
██████████ cell

# EXHIBIT 26

**Herb Wells Report Regarding Interview of Katrina**

# EXHIBIT 26-A

May 30, 2001

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

TO: David Daniels and James Johnston
    Attorneys for Thomas E. Loden

RE: Katrina Loden
    Employment:
    Phelps Dunbar, L.L.P.
    ███████████████████████
    Jackson, MS 39225
    ██████████████

CONFIDENTIAL SUMMARY REPORT

SYNOPSIS OF INTERVIEW:

On May 30, 2001, 2:00 P.M., I interviewed Kat Loden in the presence of her Attorney, James W. Craig (Phelps Dunbar) at her place of employment (Phelps Dunbar, Jackson, MS). Prior to commencing our interview, Ms. Loden told me that Tom was no longer in the Marines as she had received a correspondence (forwarded to her new address ██████████████████) Clinton, MS ██████████) from the Department of Veterans Affairs. This correspondence was an application for veterans group life insurance giving a separation date of 04/04/01 (correspondence enclosed to be delivered to Tom Loden). I served Ms. Loden a Subpoena Duces Tecum and she gave me a copy of Tom Loden's medical records (enclosed with this report). Ms. Loden was first made aware of this matter while making a telephone call to the residence of Rena Loden on June 23, 2000, at approximately 10:20 A.M. Margaret Gasaway answered the phone and Ms. Loden ask to speak to Tom. At that time Ms. Gasaway put Rena Loden on the phone. Rena Loden seemed more confused than normal and she told Kat that she was scared. Rena Loden began rambling about the police or law enforcement being at her house looking for "Eddie" and said something about a missing girl, she did not understand what was going on. Rena Loden was also in fear that something may have happened to "Eddie". A short time later Kat received a call from MHP Officer Boxx concerning limited information about Tom. She then picked up her children from school. Boxx was constantly on the phone with her most of the afternoon until Tom was taken into custody. Kat was made aware of the wording cut into the chest of Tom, "I'm Sorry", which she felt was meant for her. At about 11:45 P.M., the same date, Boxx and other law enforcement arrived at her residence with a search warrant and searched her home

She and Tom were married Thanksgiving 1995 and approximate one week later he attempted suicide. From that date to the date of this matter Tom had attempted suicide on several occasions. Since the time of their marriage Tom frequently experienced nightmares. Tom was a very disciplined trained Marine as a foot soldier fighting Marine. Tom could not handle the stress of an administrative recruiting possession. Tom's behavior had worsened with his temper becoming explosive, drinking alcohol more frequently and language more profane. Tom did not seek medical attention for his suicide attempts as he was afraid the Marines would find out

Some time later located at the Union County Sheriff's Department in New Albany, Mississippi, Kat convinced Tom to give a statement. This was a result of the request and strong encouragement of MHP Investigators Mickey Baker and Mike Berthay (ACCORDING TO MY FILE THE QUESTIONING OF TOM BEGAN AT 1615 HRS WITH A TIME NOTED ON THE RIGHTS WAIVER AT 1632 HRS, HOWEVER DOCUMENTATION OF THE STATEMENT DID NOT BEGIN UNTIL 1818 HOURS ON 06/23/00 — WHAT TOOK PLACE FOR TWO HOURS PRIOR TO THE STATEMENT AS I HAVE NO DOCUMENTATION IN MY FILE FOR THE MISSING DOCUMENTATION TO COVER THAT TIME PERIOD OR THE AUDIO TAPE OF THE STATEMENT NOR VERIFICATION OF IT'S AUTHENTICITY).

Herb Wells, CLI, LCI, MCI
*Certified Legal Investigator*
Herb Wells & Associates, Inc.

Page 2 of 2

# EXHIBIT 26-B

**ATTORNEY WORK PRODUCT**
**PRIVILEGED AND CONFIDENTIAL**

### INVESTIGATION CASE REFERENCE

INVESTIGATOR  Herb Wells                                    OUR #  21049
RE:  State of Mississippi vs. Thomas Edwin Loden, Jr.
       Itawamba County Circuit Court No.:CR00-068

### CONFIDENTIAL INVESTIGATION NOTES

---

**March 8, 2001 Thursday:**
04:30 PM   Picked up copy of the order from Attorney David Daniels.

---

**March 28, 2001 Wednesday:**
02:30 PM   Departed in route to the Highway Patrol station, New
           Albany, Mississippi.  With Attorney James Johnston and
           David Daniels in New Albany and the Highway Patrol
           Investigator Rick Marr re: viewing Loden file.  We then
           adjourned to Attorney James Johnston's office in Pontotoc
           re: trial preparation.
05:45 PM   Secured.  Miles 71.

---

**March 29, 2001 Thursday:**
07:00 AM   Information investigation re: trial preparation re:
           Thomas E. Loden.
07:30 AM   Trial preparation.
08:30 AM   Secured.

09:35 AM   Departed in route to meet with Attorney David Daniels.
12:45 PM   Secured.  Miles 18.

---

**April 4, 2001 Wednesday:**
09:00 AM   Telephone call to Stella Renick at ██████████, set up
           meeting at this time.  I then departed in route to meet
           with her.  Met with Stella Renick.
01:30 PM   Secured.  Miles 62.

---

**April 9, 2001 Monday:**
09:00 AM   Telephone call to Bobby Christian re: trial preparation.

11:15 AM   By telephone with David Daniels, trial preparation
           seeking information on second wife.  After talking with
           David I stopped in his office, met with Jeannie, picked
           up some documents requested and left off documents
           concerning my interview with Stella.
11:55 AM   Left David Daniels office.
12:35 PM   Received a call from Bobby Christian requesting we change
           the appointment to Friday in order for her to have an
           opportunity to get some more documents in.

---

**April 10, 2001 Tuesday:**
09:00 AM  Trial preparation re: discovery evaluation.
12:00 PM  Secured.

---

**April 12, 2001 Thursday:**
10:00 AM  Talked with Bobby Christian, ███████████ set up meeting
          for 1:00 p.m. on 04/13/2001.

---

**April 13, 2001 Friday:**
12:40 PM  Departed in route to ██████████████ Bobby Christian.
          Met with Bobby Christian, ████████████, Tupelo, MS
          38801, telephone number ██████████. Picked up
          information she had concerning Eddie in the Marines.
          Delivered them to Attorney David Daniels office.
02:45 PM  Secured.  Miles 18.

---

**April 16, 2001 Monday:**
11:00 AM  Telephone call to Attorney David Daniels office, not
          available at this time, left message for him to call me
          back.

---

**April 17, 2001 Tuesday:**
09:45 AM  Returned a call to Bobby Christian, ██████████████
          Advised she had received certain documents in concerning
          Eddie and requested I call her back in the morning and
          set up appointment.

---

**April 18, 2001 Wednesday:**
10:40 AM  Met with David Daniels re: trial preparation.  Requested
          subpoenas for venue, interview housekeepers and time
          table.
11:50 AM  Secured.

---

**April 19, 2001 Thursday:**
08:00 AM  Met with Bobby Christian, picked up documents, also
          information on Joy Gibo.  Delivered documents to Jeannie
          at David Daniels office.
10:45 AM  Secured.

01:15 PM  Departed in route to Attorney David Daniels office re:
          venue investigation.  Met with Jeannie, talked with David
          by phone re: subpoenas.  In route to Itawamba County
          Circuit Clerk's office.  Subpoenas issued, Itawamba
          County.
02:50 PM  Served Sandra Newton, Itawamba County Times.
03:25 PM  Served Judy Campbell, Northeast Mississippi Daily
          Journal.
03:50 PM  Served Terry Abernathy, Channel 4, WCBI.

04:45 PM   Served Terry Smith, WTVA Channel 9.
05:00 PM   Secured. Miles 72.

---

**April 20, 2001 Friday:**
09:00 AM   Trial preparation re: time table.
12:00 PM   Secured.

01:30 PM   Departed in route to Attorney David Daniels office. Met with Attorney David Daniels. Proceeded with Attorney David Daniels to Fulton, met with Thomas Loden.
05:10 PM   Secured. Miles 18.

---

**April 23, 2001 Monday:**
10:30 AM   Departed in route to the Daily Journal re: subpoena. Picked up newspaper articles from the Daily Journal. Cost of copies $5.00. Checked TV4, Terry Abernathy not in at this time. Picked up subpoenaed information from WTVA Channel 9.
01:15 PM   Secured. Miles 27.

---

**April 24, 2001 Tuesday:**
10:25 AM   Received a call from Attorney David Daniels re: status of venue and medical authorization re: Rena Loden, advised of same. Departed in route to Rena Loden residence. Medical authorization release X'ed and witnessed by her daughter, and by myself. Served Melissa Shackleford at IMA, Custodian of Records for Dr. Flowers. Picked up subpoenaed information from Channel 4. Delivered all venue information along with a copy of the medical release to Attorney David Daniels. David not in at this time, left off information with Jeannie. Departed to copy video tapes. Met with Attorney David Daniels re: trial preparation.
04:10 PM   Secured. Miles 79.

---

**April 25, 2001 Wednesday:**
12:00 PM   Departed in route to Itawamba County Circuit Clerk's office. Delivered return for subpoena duces tecum for Dr. Alan Flowers.
01:45 PM   Secured.

---

**April 26, 2001 Thursday:**
12:00 PM   Picked up requested copies.

---

**April 30, 2001 Monday:**
12:30 PM   Trial preparation re: time table.
03:20 PM   Called David Daniels office, not in, left message. Secured.

**May 1, 2001 Tuesday:**
01:00 PM  Met with David Daniels.
01:45 PM  Secured.

**May 2, 2001 Wednesday:**
10:45 AM  Left off the invoice for the WTVA Channel 9 tape with Jeannie at Attorney David Daniels office.

03:00 PM  Departed in route to Joyce Brewer's residence. Information provided from Stella as Joyce Brewer's residence ███████████ Fulton, Itawamba County, Mississippi.
03:50 PM  At ███████████
05:00 PM  Called Margaret Gassaway at ███████████, a lady answered the phone and identified herself as her daughter Marsha, advised that Margaret was at the doctor's office and did not know for sure what time she would be in this date. I told her that I would call back later.
05:05 PM  Secured my interview with Joyce Brewer, tag number ████ ████ in drive. Advised that she is putting the house up for sale, going to be moving to Hamilton, Alabama, getting married to someone in Alabama.
06:00 PM  Secured. Miles 71.

**May 3, 2001 Thursday:**
09:15 AM  Telephone call to Margaret Gassaway, ███████████, advised she would meet with me at this time. Departed in route to her address, ███████████ Itawamba County. Written statement by Margaret Gassaway.
11:15 AM  Gary and Lynn O'Neal, Pastor at Greenwood Baptist Church, no one home at this time. ███████████ 1st house on the left off of Dorsey.
11:45 AM  Secured. Miles 47.

**May 4, 2001 Friday:**
08:30 AM  Commenced trial preparation re: time table interview reports.
10:30 AM  Secured.

**May 10, 2001 Thursday:**
02:15 PM  Met with Attorney David Daniels at the Lee County Justice Center re: trial preparation.

**May 13, 2001 Sunday:**
08:30 AM  Received a letter from Tom Loden.

**May 14, 2001 Monday:**
10:30 AM  Called David Daniels re: this letter at ███████████

David not in at this time, left message for him to return my call.

---

**May 15, 2001 Tuesday:**

08:50 AM  Called Attorney David Daniels office, not in, left message on the answering machine.

11:45 AM  Met with Attorneys Jim Johnston and David Daniels re: trial preparation.  Set up meeting 2:00 p.m. this date with Attorney David Daniels.

01:45 PM  Departed in route to Attorney David Daniels office re: trial preparation.  Met with Attorney David Daniels re: trial preparation.  Also David Daniels called Katrina Loden, ██████████ requested I call her Monday or Tuesday afternoon to go to Jackson and meet with her. Departed to Fulton to meet with Tom Loden.  Met with Tom Loden, Itawamba County Jail.

05:50 PM  Secured.  Miles 59.

---

**May 16, 2001 Wednesday:**

09:20 AM  At Attorney David Daniels office, David not in, left message for him to call me.

11:15 AM  Received a call from David Daniels re: status and trial preparation.  Requested I attempt to locate Joy.

---

**May 22, 2001 Tuesday:**

11:15 AM  Met with Attorney David Daniels re: witness list. Requested I attempt to locate and interview the second wife.

03:35 PM  Attorney David Daniels office.  Met with Attorney David Daniels re: trial preparation.  Received a subpoena for Katrina Loden.

04:50 PM  Secured.  Miles 18.

08:00 PM  Information investigation on Joy Loden. $95.00.

---

**May 24, 2001 Thursday:**

03:10 PM  Telephone call to Katrina Loden, set up appointment May 30th at 2:00 p.m. her office.  Called Attorney David Daniels office and advised Jeannie of meeting.

---

**May 25, 2001 Friday:**

11:20 AM  Telephone call to Attorney David Daniels office re: scheduled trip for Jackson.  Also advised of the requested additional funds.

**May 29, 2001 Tuesday:**

12:30 PM   Met with Attorney David Daniels re: trial preparation, re: Katrina Loden and re: Tom Loden's request.

04:30 PM   Received a call from Attorney David Daniels authorizing additional funds for investigation re: this matter.

**May 30, 2001 Wednesday:**

09:00 AM   Departed in route to meet with Tom Loden, Itawamba County.  Met with Tom Loden.  Then to Jackson to meet with Katrina Loden.

02:00 PM   Met with Kat Loden and Jim Craig.  Also served subpoena and picked up copy of records for the Marines information.  Copies $58.00 paid by cash.

03:30 PM   Secured meeting.

07:25 PM   Secured.  Miles 443.

**June 5, 2001 Tuesday:**

09:45 AM   Met with Attorney David Daniels, delivered all correspondence, medical records and report.

11:00 AM   Secured.

**June 15, 2001 Friday:**

03:45 PM   Telephone call with Attorney David Daniels re: trial preparation and subpoenas.

**June 18, 2001 Monday:**

11:15 AM   Attorney David Daniels office re: trial preparation and picked up subpoenas to be issued in Itawamba County.  In Itawamba County Circuit Clerk's Office, Subpoenas issued for Kat Loden, Joyce Brewer, Margaret Gasaway, Gary O'Neal, Stella Renick, and Rena Loden.  I then met with Tom Loden at the Itawamba County Sheriff's Department, delivered discovery requested from Attorney David Daniels office.  All of the noted above were served personally except for Rena Loden, due to health, Stella Renick accepted on her behalf.  Kat Loden lives in Jackson.

06:30 PM   Arrived at my office, called Bobby Christian and Anita Ritchey re: trial preparation.

07:00 PM   Secured.  Miles 71.

**June 19, 2001 Tuesday:**

09:30 AM   Attorney David Daniels, trial preparation meeting, requested cancel Kat's subpoena and to issue and serve subpoena to Anita Ritchey.

11:30 AM   Secured.  Miles 18.

**June 20, 2001 Wednesday:**
10:00 AM   Departed in route to Attorney David Daniels office.   With
           Attorney David Daniels, re: interviewing witnesses and
           also issuing and serving subpoena to Anita Richey.   Also
           served Rena Loden personally.

**June 21, 2001 Thursday:**
11:25 AM   Received a call from Attorney David Daniels' office
           advising to send subpoena to Katrina Loden.   Check to
           process server Cynthia Longino $50.00 for rush serve and
           sent Fed-Ex.

03:00 PM   Called Margaret Gassaway, ████████████, requested she
           contact Stella and have her help with taking care of Ms.
           Loden while she testifies in the motions on the 26th.
           She was very cooperative and insinuated she would call
           Stella to work something out.   I then departed in route
           to Fed-Ex re: sending subpoena to process server in
           Jackson.   Fed-Ex to Ridgeland and back, $36.00.
04:00 PM   Secured.   Miles 20.

**June 22, 2001 Friday:**
11:20 AM   Telephone call to ████████████, spoke to Mr. Gassaway.
           Advised that Stella and Margaret had something worked out
           to where she could stay with Ms. Loden while Stella
           testified Tuesday morning for the hearing.

**June 25, 2001 Monday:**
10:30 AM   Telephone call to David Daniels' office, re: motions for
           06/26 hearing.

**June 26, 2001 Tuesday:**
10:00 AM   Received process return from Katrina Loden process.

01:00 PM   Delivered return to Attorney David Daniels' office.

**July 9, 2001 Monday:**
09:50 AM   Received a call from Bobby Christian requesting I meet
           with her concerning some issues involving this matter.

11:00 AM   Talked with Bobby Christian at her residence.   Her
           granddaughter Charlie was home.   Talked with her re: her
           concerns of legal representation.   I suggest that with
           the legal area of concern she had that she contact her
           Attorney for assistance and she advised me she would
           contact Ed DePriest.
11:55 AM   Secured.

03:10 PM  Called Attorney David Daniels, not available at this time, left message.

**July 28, 2001 Saturday:**

02:00 PM  Spoke by phone with David Daniels.  This trial has been continued until October 8, 2001.


Herb Wells, CLI,LCI, MCI
*Certified Legal Investigator*
Herb Wells & Associates, Inc.