IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**THOMAS EDWIN LODEN, JR.,**                                          *Petitioner*

*versus*                                                    **CAUSE NO. 1:10-cv-00311-NBB**

**CHRISTOPHER B. EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS
and JIM HOOD, ATTORNEY GENERAL, STATE OF
MISSISSIPPI,**                                                      *Respondents*

## ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS
_____

**COME NOW** the Respondents in the above styled and numbered cause and file this

Answer to the Petition for Writ of Habeas Corpus filed in this matter.  In response to the

allegations contained in the numbered paragraphs of the petition, respondents would show

unto the Court the following:

### INTRODUCTORY STATEMENT

This Court has jurisdiction over habeas corpus petitions under 28 U.S.C. §2254 as

amended on April 24, 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA).

The fact that this habeas petition is filed after that date requires that the provisions of the

AEDPA be applied with full force to this petition.  *Nobles v. Johnson*, 127 F.3d.. 409 (5th

Cir. 1997); *Williams v. Cain*, 125 F.3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118

F.3d 432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110

Stat. 1214 (1996), we apply the standard of review embodied in the AEDPA.  *See Drinkard*

*v. Johnson*, 97 F.3d 751 (5th Cir.1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).")  *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  The proper application of the AEDPA is fully explained in the decisions of the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) and *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).

The answer of Respondents is as follows:

1.    Respondents admit the allegations contained in paragraph 1 of the petition.

2.    Respondents admit the allegations contained in paragraph 2 of the petition.

3.    Respondents deny the allegations contained in paragraph 3 of the petition.

4.    Respondents admit the allegations contained in paragraph 4 of the petition.

5.    Respondents admit the allegations contained in paragraph 5 of the petition.

6.    Respondents deny the allegations contained in paragraph 6 of the petition.

7.    Respondents admit the allegations contained in paragraph 7 of the petition.

8.    Respondents deny the allegations contained in paragraph 8 of the petition.

Petitioner could not statutorily appeal his judgment of conviction.  However, he did appeal his sentence of death and the denial of a petition for post-conviction relief challenging his judgment of conviction.

9(a).    Respondents admit the allegations contained in paragraph 9 (a)of the petition, in-so-far as they apply to the appeal of the sentence and the denial of post-conviction relief

2

as to the judgement of conviction.

9(b).  Respondents deny the allegations contained in paragraph 9(b) of the petition. The appeal was a consolidated appeal given the double number:  Nos. 2002-DP-00282-SCT, 2006-CA-00432-SCT.

9(c).  Respondents admit the allegations contained in paragraph 9 (c)of the petition, however it should have stated that the judgments were affirmed.

9(d).  Respondents admit the allegations contained in paragraph 9 (d)of the petition, to the extent that it correctly states the date of the decision of the Mississippi Supreme Court in this case.  The judgment of conviction was not before the state court on direct appeal, only the sentence and the denial of post-conviction relief as to the guilt phase of the trial were before the court.

9(e).  Respondents admit the allegations contained in paragraph 9(e)of the petition.

9(f).  Respondents admit the allegations contained in paragraph 9(f), (g) and (h) of the petition.

10.    Respondents admit the allegations contained in paragraph 10 of the petition.

11.    Respondents admit the allegations contained in paragraph 11(a) 1, 2, 3, 4 and 5 of the petition.

11(a)6.  Respondents admit the allegations contained in paragraph 11(a)6 of the petition, however petitioner characterization is incorrect as he was afforded an evidentiary hearing by the trial court.

3

11(a)7 & 8. Respondents admit the allegations contained in paragraph 11(a)7 and 8 of the petition, but would add that the denial of relief was appealed to the Mississippi Supreme Court in the consolidated appeal in Nos. 2002-DP-00282-SCT, 2006-CA-00432-SCT, mentioned in the response to paragraph 9(b), *supra*. The denial of relief was affirmed.

11(b). Respondents admit the allegations contained in paragraph 11(b) of the petition

12. Respondents deny the allegations contained in paragraph 12-Ground One, parts I, II, III, IV and V; Ground Two; Ground Three; Ground Four; Ground Five; Ground Six;; Ground Seven; Ground Eight; Ground Nine, of the petition. Respondents deny the alle

13. Respondents admit the allegations contained in paragraph 13 of the petition.

14. Respondents admit the allegations contained in paragraph 14 of the petition.

15. Respondents admit the allegations contained in paragraph 15 of the petition.

16. Respondents admit the allegations contained in paragraph 16 of the petition.

17. Respondents deny the allegations contained in paragraph 17 of the petition. Petitioner was additionally sentenced to five thirty-year sentences to be served consecutively for the rape conviction, and four sexual battery convictions in this case. Petitioner only challenged the death sentence in his post-conviction petitions and therefore abandoned any challenge to these additional sentences.

18. Respondents admit the allegations contained in paragraph 18 of the petition in-so-far as it asserts that the petition if timely filed, otherwise respondents deny that petitioner

4

is entitled to the relief he request is paragraph 18(a), (b), (c) and (d).

## AFFIRMATIVE DEFENSES

**AND NOW** having responded to each of the allegations contained in the Petition for Writ of Habeas Corpus, Respondents would affirmatively show unto the Court the following:

A.     The Court lacks jurisdiction over the parties and the subject matter.

B.     The petition and/or its individual grounds fail to state a claim upon which relief may be granted.

C.     The constitutional grounds cited for relief in the petition are precluded from federal consideration in that such rest upon independent and adequate state law grounds.

D.     The grounds cited for relief in the petition are precluded from federal consideration in that such rest on decisions of the Mississippi Supreme Court that are not contrary to established precedent of the United States Supreme Court.

E.     The grounds cited for relief in the petition are precluded from federal consideration in that such rest upon a reasonable application of clearly established federal law as determined by the Supreme Court of the United States, and a reasonable determination of the facts in light of the evidence presented in the state court proceedings.

E.     The grounds given for relief are without merit.

5

## AFFIRMATIVE MATTERS PURSUANT TO RULE 5

Pursuant to 28 U.S.C.A. Section 2254, Rule 5, Respondents would show unto the Court the following:

### 1.    Procedural Background

Petitioner was indicted on November 21, 2000, during the Vacation Term, 2000 of the Circuit Court of Itawamba County, Mississippi, in a six count indictment.  The charges included:

> I.  The crime of capital murder of Leesa Marie Gray while engaged in the commission of the crime of kidnapping in violation of MISS. CODE ANN. § 97-3-19 (2)(e);

> II.  The rape of Leesa Marie Gray;

> III.  The sexual battery of Leesa Marie Gray by forcing her to perform fellatio on the appellant;

> IV.  The sexual battery of Leesa Marie Gray  by inserting his finger into her vagina;

> V.  The sexual battery of Leesa Marie Gray by inserting his finger into her anus;

> VI.  The sexual battery of Leesa Marie Gray by inserting an inanimate object into her vagina.

> CP. at 9-11.

Loden filed a motion for change of venue.  The trial court granted the motion and moved the trial to Rankin County, Mississippi.  Thereafter, Loden decided to enter a plea of guilty to the six counts of the indictment making the necessity for a change of venue moot.

6

On September 21, 2001, the trial court held a hearing to consider Loden's pleas of guilty to the six counts. Tr. 495-553. The trial court accepted the guilty pleas. Loden then moved to waive trial by jury on the sentence to be imposed on the conviction of capital murder. The State of Mississippi also waived the jury trial for the sentence phase as is required by MISS. CODE ANN. § 99-19-101(1).

Petitioner's sentencing trial then was conducted before the trial court sitting without a jury. At the conclusion of the sentencing phase the trial court entered a sentencing order. CP. 226-231. In pertinent part the order reads:

> As a threshold finding, the Court, when making a determination of the sentence without a jury, must find from the evidence beyond a reasonable doubt in writing that one or more of those factors set out in Section 99-19-101 (7( a.-d.) exists in order to impose a death sentence. In this case the Court finds beyond a reasonable doubt that (a) the Defendant, Thomas Edwin Loden, Jr., actually killed Leesa Marie Gray, a human being; (b) the Defendant, Thomas Edwin Loden, Jr., attempted to kill Leesa Marie Gray; (c) the Defendant, Thomas Edwin Loden, Jr., intended the killing of Leesa Marie Gray take place, and (d) the Defendant, Thomas Edwin Loden, Jr., contemplated that lethal force would be employed.

> Having found each of the four factors provided in Subsection (7) of Section 99-19-101, Mississippi Code of 1972, Annotated, to exist, the Court must then determine whether sufficient aggravating circumstances exists as enumerated in Subsection (5) of that code section. The Court is limited to those circumstances enumerated and may not consider any other factors.

> In considering those circumstances the Court must find beyond a reasonable doubt that they exist. The Court, having considered the aggravating circumstances, is of the opinion and finds beyond a reasonable doubt that the following aggravating circumstances provided in that subsection exist as follows:

> 1.     The capital offense (Capital Murder) was committed while the

7

Defendant, Thomas Edwin Loden, Jr., was engaged in the commission of the felony crimes of kidnapping, rape and sexual battery of Leesa Marie Gray, a human being;

2.    The capital offense (Capital Murder) was committed by the Defendant, Thomas Edwin Loden, Jr., for the purpose of avoiding or preventing his lawful arrest; and

3.    The capital offense (Capital Murder) was especially heinous, atrocious or cruel.

The Court, having found that one or more of the aggravating circumstances exists beyond a reasonable doubt as set out above, must now consider whether there are mitigating circumstances which outweigh the aggravating circumstances found to exist. In doing so, the Court must consider the following elements in determining whether the death penalty should be imposed:

1.    The Defendant's age at the time of the Capital Murder;

2.    Any other matter, any other aspect of the Defendant's character or record, and any other circumstance of the offense brought before you during the trial of this case which the Court, deems to be mitigating on behalf of the Defendant;

3.    Whether or not the Defendant has a significant history of prior criminal activity.

4.    Whether or not the offense was committed while the Defendant was under the influence of extreme mental or emotional disturbance;

5.    Whether or not the capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired;

6.    Any other mater, any other aspect of the Defendant's character or record, and any other circumstance of the offense brought to the Court during the presentation of evidence in this cause which the Court deems to be mitigating on behalf of the

8

Defendant.

The Court having considered and weighed the aggravating and mitigating circumstances finds that the aggravating circumstances outweigh the mitigating circumstances and that the mitigation circumstances do not outweigh the aggravating circumstances and that the death penalty should be imposed.

CP. at 228-30.

Thereafter, Loden was sentenced to death for the capital murder charge contained in Count I of the indictment. CP. 230. Loden was also sentenced to 30 years for the rape conviction contained in Count II of the indictment (CP. 230); 30 years for the sexual battery conviction contained in Count III (CP. 230); 30 years for the sexual battery conviction contained in Count IV (CP. 231); 30 years for the sexual battery conviction contained in Count V (CP. 231); and 30 years for the sexual battery conviction contained in County VI (CP. 231). The sentences, in addition to the death penalty, were all to run consecutive to all other sentences imposed in this cause.

Petitioner took his automatic appeal of the sentence of death to the Supreme Court of Mississippi.[1] *See Loden v. State*, No. 2002-DP-00282-SCT. Trial counsel was allowed to withdraw and the Office of Capital Defense Counsel was substituted as appellate counsel on January 27, 2003. Both appellant and the State filed appellate brief with the court below.

On July 16, 2003, counsel filed a post-conviction motion to vacate the guilty plea to

---

[1]There is no right of appeal for a conviction after a guilty plea. *See* MISS. CODE ANN. § 99-35-101 (Rev. 2008).

capital murder with the Circuit Court of Itawamba County, Mississippi.[2]  C.P. at 6-30.  The proceedings in the direct appeal were stayed pending the resolution of the post-conviction challenge to the guilty plea.  On October 13, 2004, the trial court filed an order dismissing the motion to withdraw the guilty plea on the basis of lack of jurisdiction in that the case was on appeal before the court below.  C.P. 43-44.  On January 24, 2005, the Mississippi Supreme Court entered an order noting that the circuit court had exclusive jurisdiction of a motion for post-conviction relief from the guilty plea entered by Loden.  C.P. at 115-16.  The trial court then set a hearing for June 2, 2005.  C.P. at 120.

A hearing was held on Loden's post-conviction motion on June 2, 2005.  At the conclusion of the hearing the trial court took the case under advisement.  On February 16, 2006, the trial court entered an opinion and order dismissing the motion to vacate Loden's guilty plea to capital murder.[3]

Loden then took an appeal from the denial of post-conviction relief on the capital murder guilty plea.  *See Loden v. State*, No. 2006-CA-00432-SCT.  The appeal of the denial of post-conviction relief was consolidated with the direct appeal of the sentence phase of his capital trial, No. 2002-DP-00282-SCT.  The issues relating to the direct appeal of the

---

[2] *Loden v. State*, No. 03-090(G)1.

[3] Loden made no challenge to his entry of guilty pleas to the other five counts of the indictment in this case.  On the appeal of the denial of post-conviction relief he focused solely on the guilty plea to capital murder and that remained the focus of his argument before the Mississippi Supreme Court.  Thus, any challenge to the guilty pleas and sentences to the remaining five counts of the indictment was abandoned.

10

sentence presented to the state supreme court in this consolidated appeal were:

> (1) Whether Loden was improperly denied funds to retain the assistance of a forensic social worker to investigate and present relevant mitigating factors.
>
> (2) Whether the indictment charged a death-penalty eligible offense.
>
> (3) Whether the trial court erred in weighing the "avoiding arrest" aggravating circumstance.
>
> (4) Whether the submission of the Mississippi Code Annotated Section 99-19-101(5)(d) aggravating circumstance violated the state and federal constitutions.
>
> (5) Whether the trial court erred in considering both the Mississippi Code Annotated Section 99-19-101(5)(d) aggravating circumstance and the "especially heinous, atrocious or cruel" aggravating circumstance.
>
> (6) Whether the statutorily-mandated proportionality review of Mississippi Code Annotated Section 99-19-105(3) was satisfied.
>
> 971 So.2d at 561-62.

The single issue presented relating to the guilty plea post-conviction was:

> (7) Whether alleged erroneous advice of trial counsel prejudiced Loden by causing him to enter an involuntary guilty plea to capital murder.
>
> 971 So.2d at 562.

On October 14, 2007, the Mississippi Supreme Court rendered its opinion affirming the sentence of death and affirming the denial of post-conviction relief on the guilt phase of the trial. *See Loden v. State*, 971 So.2d 548 (Miss. 2007). A timely petition for rehearing was filed and later denied on January 17, 2008.

Loden then filed a petition for writ of certiorari with the United States Supreme Court

11

presenting two questions.  These questions were:

> 1.     Are the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States violated where counsel erroneously advises a capital defendant that he can appeal a guilty plea if he is sentence to death and the defendant enters a guilty plea based on that erroneous advice?

> 2.     Are the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States violated where a state court denied an indigent capital defendant funds to retain a forensic social worker to investigate mitigating factors.

> Petition at I.

On October 6, 2009, the United States Supreme Court denied the petition for writ of certiorari.  *See Loden v. Mississippi*, 555 U.S. 831, 129 S.Ct. 45, 172 L.Ed.2d 51 (2008).

Petitioner the filed a motion for leave to file a petition for post-conviction relief in the trial court seeking relief from his sentence of death with the Mississippi Supreme Court.[4] The claims presented were:

> (1) Loden was denied his constitutional right to effective assistance of counsel guaranteed by the United States and Mississippi Constitutions.

> (2) Apart from the ineffectiveness of Loden's counsel, his guilty plea was not knowing, voluntary or intelligent.

> (3) Loden was denied effective assistance of appellate counsel.

> (4) The State's use of the expert psychiatric report from Dr. McMichael violates the Eighth Amendment's reliability requirement, the Sixth Amendment's confrontation clause, and due process.

---

[4]Petitioner also included issues related to the guilt phase of his case in this petition.

(5) Loden's waiver of jury for sentencing was not voluntary, knowing and intelligent.

(6) Loden has been denied his Fourteenth Amendment due process right to fully develop and present the evidence in his case.

*Loden v. State*, 43 So.3d 365, 377 (Miss.,2010).

On April 15, 2010, the Mississippi Supreme Court denied post-conviction relief in a written opinion. *See Loden v. State*, 43 So.3d 365 (Miss. 2010). A petition for rehearing was filed and later denied on September 30, 2010. Petitioner did not file a petition for writ of certiorari with the United States Supreme Court following denial of post-conviction relief.

Petitioner has now filed a petition for writ of habeas corpus with this Court asserting several claim on which, he contends, he is entitled to relief from this Court.

**2.      Factual Background.**

At approximately 10:30 p.m. on the night of June 22, 2000, sixteen year-old Leesa Marie Gray left Comer's Restaurant where she worked and started her drive home. About that same time, a friend telephoned Leesa at her home and the call was answered by her mother Wanda Farris. Mrs. Farris called the restaurant and spoke with another employee, Richard Tallant, and was told that Leesa had just left on her way home. When Leesa had not arrived home by 11:00 p.m. Mrs. Farris called Tallant at his home and inquired if he has seen Leesa since she left the restaurant. Tallant stated that he had not seen her but he had seen a car with the emergency flashers blinking off of Highway 178 in Itawamba County on the road leading to Dorsey School. Tallant told Mrs. Farris he would go check and see if it was

Leesa's car. Tallant discovered that the car with the emergency flashes on was in fact Leesa's car, that the car had a flat tire and that Leesa was not with the car. Tallant drove to Wanda Farris home. Wanda Farris, her husband Mike Farris and Tallant then proceeded back to the location of Leesa's car. They found Leesa's purse and cellular telephone inside the unlocked car, but the car keys were missing. Mr. Farris and Tallant changed the flat tire and went back to the Farris home and called the Itawamba County Sheriff's Office to report the situation.

Officer David Sheffield talked with Tallant and other patrons of the restaurant who related that an individual had arrived at the restaurant driving a dark colored two tone van shortly before closing wanting a cheese burger. Tallant stated that he had gone to school with this person and that his name was Thomas Edwin Loden, Jr., and that he had grown up in the area. He also stated that Loden had been in the restaurant earlier in the day and had attempted to flirt with Leesa Marie Gray. Tallant also knew that Loden was visiting his grandmother, Mrs. Rena Loden, who lived at 2000 Ballardsville Road.

Officer Sheffield then went and examined the flat tire that had been removed from Leesa's car and found a razor blade in the center of the tire tread.

At approximately 5:00 a.m. on June 23, 2000, Officer Sheffield and Investigator Bryan Jones went to the home of Rena Loden. They were met by a sitter, Joyce Brewer, who stayed with Mrs. Loden because of her age and physical condition and health. Mrs. Brewer stated that Thomas Loden was in the house asleep. The officers did not disturb Loden at that

14

time, but returned to the restaurant and continued to question other patrons from the previous day and search for further clues relating to Leesa's disappearance.

At approximately 7:30 a.m. on the morning of June 23, 2000, Msgt. Rick Marlar of the Mississippi Highway Patrol Criminal Investigative Bureau arrived to assist the Itawamba Sheriff's Department in the investigation. Marlar and Officer Jones decided to return to Rena Loden's house to interview Thomas Loden as he was about the only one that had been at the restaurant the night before who had not been interviewed. When they arrived Mrs. Loden told them that Thomas had gone fishing at the lake a couple of hundred yards behind house in the pasture. Mrs. Loden gave the officers permission to attempt to locate Loden. The officers were unable to locate Loden even after shouting for him and looking around the lake. They returned to Mrs. Loden's house and she told them that she and her grandson had a signal to summons him if she needed him – three blasts of the car horn. The officers used that signal to no avail.

Becoming suspicious, the officers asked and obtained the permission from Mrs. Loden to search the house and area around the house. In the bedroom used by Thomas Loden the officers found a pair of shorts with what appeared to be blood in the crotch area. They then obtained permission to search Mrs. Loden's car in which they found a rope fashioned into a handcuff styled knot. Based on these findings, the officers sought a search warrant for the van belonging to Thomas Loden, the other vehicles on the property and all of the property and buildings located at 2000 Ballardsville Road, Itawamba County, Mississippi. The

15

property was secured until the search warrant was issued by Justice Court Judge Lance Bean. The van belonging to Thomas Loden was locked and no keys were found in Mrs. Loden's house that would unlock it. The van was towed under law enforcement escort to the F Troop Highway Patrol Headquarters in New Albany, Mississippi. The van was secured in a garage until the arrival of Ken Gill of the Mississippi Crime Laboratory. While the van was being processed the body of Leesa Marie Gray was found stuffed under the folded down seat in the rear of the van. Leesa Marie body was nude and her hands and feet were bound with the same type rope found in the search of Mrs. Loden's car. The crime scene technician also found a JVC Compact camcorder and three compact video cassettes. The also found a set of keys containing a Honda key, a Schlage key, a Kroger card, pink plastic shoe, white and read beads with Six Flags printed on it in the driver's door pocket. Also retrieved from the van was an H & R Sportsman .22 caliber revolver and a box of Winchester Super X .22 long rifle hollow point high velocity cartridges. The crime lab personnel also recovered numerous items that included the victim's clothing. A plastic Wal-Mart bag with tape around the top and hair fiber stuck in the tape. Numerous box cutter blades similar to the razor blade which had been removed from the flat tire of Leesa's Honda automobile were also found in the van.

A large scale search was instituted for Thomas Loden and continued through out the day. Later in the day Mary Ann Brown informed the authorities that she had found a man lying beside Charlie Donald Road, just north of Rena Loden's farm. Around 5:45 p.m. on

16

June 23, the authorities responded Mrs. Brown's call and found Loden. Loden was given his rights and the officers attempted to get him to tell them where Leesa Marie was.[5] Loden acknowledged his rights but provided no information to the officers. Loden had apparently carved the words "I'm sorry" into his chest and had lacerated his wrist. Loden was transported by ambulance to the North Mississippi Medical Center accompanied by Investigator Marlar and FBI Special Agent Matt Bullwinkle. After they arrived at the hospital, Loden's injuries were treated, but he continued to deny any knowledge of Leesa Marie Gray. Officials were in the process of obtaining search warrants of Loden's person when Leesa Marie's body was found in Loden's van. The search warrant was obtained and executed on Loden to obtain certain tissue samples from Loden. These samples were taken into custody by Investigator Marlar for transport to the Crime Lab.

Immediately upon his release from the hospital, Loden was arrested and held in the Union County Jail. At his initial appearance before Judge Frank Russell, Loden indicated that he wished to hire his own attorney rather than have one appointed for him.

When the video tape found in the camera was viewed it first depicts Leesa Marie Gray inside the van belonging to Thomas Loden. Early in the video Leesa Marie is partially clothed with her hands tied behind her back and her feet and legs tied at the ankles, later in the video she is totally nude. The video shows Leesa Marie being forced to perform fellatio on Thomas Loden. During this assault, Loden orders Leesa Marie to smile because he wants

---

[5]Leesa Marie's body had not been found at this point in time.

to see her braces. The video is stopped and started numerous times during its duration with Loden giving commentary and directions to the Leesa Marie. When the second scene begins Loden is vaginally raping Leesa Marie. Later in the video Loden is seen penetrating Leesa Marie's vagina with his fingers. He removes his fingers and comments "You really were a virgin, weren't you?" Later in the video Loden is seen inserting his fingers into Leesa Marie's anus and then rotating his fingers between her anus and vagina, penetrating both. Later, when the video is restarted we see that Leesa Marie's pubic area has been partially shaved. Then the video depicts Loden repeatedly inserting a cucumber into Leesa Marie's vagina. During the episode Leesa Marie is heard telling Loden, "I'm hurting . . . . please . . . I think I'm hurt really bad." There is a break in the video as it is stopped again. When it resumes we see Loden twisting Leesa Marie's breast and placing his fingers in her vagina in an apparent attempt to bring her back to consciousness. At the end of this segment Leesa Marie is still alive. The video stops again. When it is restarted, Leesa Marie is dead, her body has been cleaned up and posed in the back of the van with the cucumber being placed in her vagina. Loden then removes the cucumber and reinserts it several times before the video finally ends.

While incarcerated Loden indicated, through his wife, that he wished to make a statement to the law enforcement officers. Loden described in some detail the events of the evening and drew a map showing the different locations around Itawamba County where different acts took place. He stated that at one point he went to Rena Loden's house and

went inside, got a glass of water for Leesa Marie, a comforter from his bedroom and a cucumber from the kitchen. He also admitted to raping Leesa Marie three other times that were not on the video tape. Loden claims not to have any recollection of making the video tape, but said that he was the only other person in the van other than Leesa Marie. He stated that he did not remember killing her, but he must have put her in a "sleeper hold and choked her."

Loden stated that when he awakened on June 23, he went out to the van and saw Leesa Marie's body. He locked the van and went back into the house and had a cup of coffee. He then drove around in the pickup truck to think. He said that when he arrived back at the farm he went for a walk. It was during this period of time when he heard the officers calling for him. He hid and evaded the officers.

During the search of Rena Loden's farm the officers found a shovel next to a grave that had been dug behind the lake in the pasture. After viewing the video tape, the officers retrieved the comforter depicted therein from Loden's bedroom.

DNA testing was done on the bloody shorts, the blood on them matched Leesa Marie's DNA. Testing on the cucumber resulted in a major DNA match for the DNA of Leesa Marie and a minor match of Loden. A disposable razor found in the van and blood on the razor resulted in a major DNA match for Leesa Marie and a minor match for Loden. Loden's fingerprints were found on the tape containing hair fibers that was attached to the Wal-Mart bag. The hair stuck to the tape was found to be microscopically similar to Leesa

19

Marie's head hair.

The autopsy conducted by Dr. Steven Hayne concluded that Leesa Marie had died of "suffocation/manual strangulation" and listed the death as a "homicide". Dr. Hayne noted contusions on Leesa Marie's forehead, lower lip, the back of her neck, the apex of her scalp and on her right cheek. He further found that there were deep furrows in her wrist and ankles where she was tightly bound by the ligatures found on her body when she was discovered. Dr. Hayne also found contusions on her left arm which he stated were consistent with defensive posturing injuries. Dr. Hayne further found contusions on her chest, her back, her buttocks, her rectum and her anus. There were also lacerations to her rectum and anus. Dr. Hayne stated that the lacerations and contusions to the rectum and anus were consistent with penetration. His examination of her genitalia revealed extensive contusions and lacerations to her labia majora, labia minora, introitus and her vaginal vault consistent with penetration. The photographs taken during the autopsy demonstrate the extensive trauma to both the vaginal and anal area of Leesa Marie.

Loden moved for and was granted two mental examinations one at the State Hospital and another by Dr. C. Gerald O'Brien. The staff at the State Hospital found Loden to be competent to stand trial, competent to assist in his defense, competent to waive his constitutional rights. The staff further found that he knew the nature and quality of his acts and knew the acts were wrong and that his capacity to appreciate the criminality of his conduct, or confirm his conduct at the time of the crime was not substantially impaired. They

also found that he was not suffering from extreme mental or emotional disturbance at the time of the crime. *See* State's Exhibit No. 39.

Dr. O'Brien found that Loden's intellectual functioning was average to high average and showed no evidence of neuropsychological difficulties. His testing showed that Loden tended to exaggerate his psychological difficulties. He concluded that at the time of the crime, Loden was under the influence of extreme mental and emotional disturbance and distress, "although this probably did not rise to the level that he did know the nature and quality of his acts or the difference between right and wrong in relation to those acts at that time." He further found that Loden's "capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law was substantially impaired." Finally, he found Loden to be competent to stand trial and to assist in his own defense. Defendant's Exhibit No. 38. Both of the documents were introduced during the sentence phase of the trial.

Prior to the selection of the jury for the trial of this case, Loden informed the trial court that he wished to plead guilty to all counts of the indictment and to waive the jury for the sentence phase of this trial. He further instructed his attorneys not to place any evidence in mitigation or make any argument on his behalf during the sentence phase of the trial.

A joint Offer of Proof outlining the investigation, the crimes against Leesa Marie Gray and the agreement to the counts of the indictment was submitted to the trial court during the hearing on the guilty pleas. This document was signed by both the State and Loden. CP.

208-224. After viewing the videotape, hearing arguments from the State and a personal statement by Loden, the trial court took the matter of sentence under consideration. After consideration the trial court entered a sentencing order, in proper form, sentencing Loden to death. CP. 226-231.

**3.      Scope of Review.**

Petitioner filed his petition for writ of habeas corpus with this Court on July 18, 2011. As stated above, because this petition was filed after April 24, 1996, the provisions of Antiterrorism and Effective Death Penalty Act (AEDPA) apply with full force to this petition. *Nobles v. Johnson*, 127 F.3d.. 409 (5th Cir. 1997); *Williams v. Cain*, 125 F.3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), we apply the standard of review embodied in the AEDPA. *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997)."). *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

The petition presents several grounds for relief some of which are barred from consideration by this Court by an adequate and independent state law procedural bar. The fact that the Mississippi Supreme Court alternatively addressed the merits of these claims does not vitiate the imposition of the procedural bar. The claims that are not barred from consideration were fully addressed on the merits by the Mississippi Supreme Court on direct

appeal and/or on state post-conviction review. The resolution of the merits of these claims do not represent decisions that are contrary to or an unreasonable application of clearly established United States Supreme Court precedent as announced by the United States Supreme Court. Therefore, under the standards of review found in the AEDPA, habeas relief cannot be granted with respect to these claims. Further, any ground that has never been or has not been properly presented to the Mississippi Supreme Court in the context which they are presented to this Court are unexhausted. However, they too are now barred from consideration by this Court as it would be futile to resort to the state court in an attempt to exhaust these claims.

Further, any new evidence presented to this Court that was not presented to the state court cannot be considered in determining the merits of this habeas petition. *See Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).

Looking to the habeas law governing this petition we find the most sweeping change provided in the AEDPA is found in Section 104(3) codified in 28 U.S.C. § 2254(d). This subsection provides as follows:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in
> the State Court proceeding.

Thus, Loden's claims involving mixed questions of law and fact are governed by the dictates

of § 2254(d), which holds that a federal court cannot grant habeas corpus relief unless it

determines that the state court's decision involved an unreasonable application of the law to

the facts. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Moore*

*v. Johnson*, 101 F.3d 1069, 1075-76 (5th Cir. 1996) (*citing Drinkard v. Johnson*, 97 F.3d

751, 767-68 (5th Cir. 1996)).[6]

This "unreasonable application" standard of review of state court decisions does not

mean that a federal court may grant habeas relief based on a simple disagreement with the

state court decision; such a standard would amount to nothing more than a de novo review.

*Drinkard*, 97 F.3d at 768.  Instead, a federal habeas court can grant habeas relief only if the

state court decision was unreasonable.  In *Williams v. Taylor, supra*, the Supreme Court held:

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas
> court may not issue the writ simply because that court concludes in its
> independent judgment that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly.  Rather, that application
> must also be unreasonable.

> 529 U.S. at 411.

The Court further stated in *Williams*,

> In sum, § 2254(d)(1) places a new constraint on the power of a federal

---

[6]While *Moore* and *Drinkard* incorrectly applied the AEDPA retroactively to habeas corpus petitions pending prior its enactment, the manner in which the AEDPA will be applied in a proper case is controlling on this case.  *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997).

24

habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413.

 "In effect, a reasonable, good faith application of Supreme Court precedent will immunize the state court conviction from federal habeas reversal." *Mata v. Johnson*, 99 F.3d 1261, 1268 (5th Cir. 1996), *vacated in part on other grounds*, 105 F.3d 209 (5th Cir. 1997). Further, the term "clearly established law" signifies "the holdings, as opposed to the dicta, of this Court's decisions." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Loden has failed to demonstrate how, and respondents assert he cannot show, the resolution of the claims raised on direct appeal or state post-conviction review "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time of the direct appeal and post-conviction review litigation. Further, any claims of

ineffective assistance of counsel being questions of mixed law and facts do not present decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. Loden has not stated a claim on which relief can be granted.

The long standing requirement of deference to factual findings made by state courts remains intact in the amendments to § 2254. Section 2254(e) reads:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

However, the AEDPA changed the standard of proof that a petitioner must adduce to rebut the presumption of correctness of state court findings of fact. The standard is no longer a preponderance of the evidence standard, but the higher standard of clear and convincing evidence. Loden cannot meet this burden to overcome the findings of fact made by the State courts by clear and convincing evidence. *See Patterson v. Dretke*, 370 F.3d 480, 484 (5th Cir. 2004); *Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004).

In cases governed by the AEDPA, 28 U.S.C. § 2254, the analysis differs depending upon whether the issue is one of law, fact, or both. *See Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir.1996). The Fifth Circuit held in *Brewer v. Dretke*, 410 F.3d 773 (5th Cir. 2005):

> The Antiterrorism and Effective Death Penalty Act of 1996, at 28 U.S.C. § 2254(d), sets forth the conditions under which a court shall grant a

26

petition for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) addresses pure questions of law and mixed questions of law and fact. *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.2001). Under the first ("contrary to") clause, a federal district court may grant habeas relief if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief if the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts. *See id*.

Section 2254(d)(2) addresses pure questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir.2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceeding. [3]

_____

FN3. *See Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.2000) (as modified on denial of rehearing). Factual determinations made by the state court are presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

410 F.3d at 775.

Thus, for questions of fact, habeas relief may be granted only if the Court finds that

the state court made a determination of fact which was unreasonable in light of the evidence presented to the state courts. *See* 28 U.S.C. § 2254(d)(2); *Drinkard*, 97 F.3d at 767-68. When reviewing such factual determinations, the Court must presume correct the factual findings of the state court, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir.1997). When considering questions of law, on the other hand, this Court may grant habeas relief only if the state court's determination of law is contrary to "clearly established" Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1); *Drinkard*, 97 F.3d at 768. The Fifth Circuit, in *Jones v. Dretke*, 375 F.3d 352 (5th 2004), explained this requirement, stating:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . . 28 U.S.C. § 2254(d) (emphasis added). The Supreme Court, interpreting § 2254(d)(1), held that "a state-court decision is . . . contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In order to find that a state adjudication is objectively unreasonable, "the state court's application [of federal law] must be more than merely incorrect." *Robertson v. Cockrell*, 325 F.3d 243, 248 (5th Cir.2003) (*en banc*)

> 375 F.3d at 353-54.

Thus, the state court resolution of a claim must "not only be erroneous, but objectively

28

unreasonable" in order for habeas relief to be granted. *See Wetzel v. Lambert*, ___ U.S. ___, 132 S.Ct. 1195, 1198 (2012); *Hardy v. Cross*, 132 S.Ct. 490, 491, 181 L.Ed.2d 468 (2011); *Felkner v. Jackson*, 562 U.S.___, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011); *Cavazos v. Smith*. ___ U.S. ___, 132 S.Ct. 2, 3, 181 L.Ed.2d 311 (2011); *Renico v. Lett*, 559 U.S. ___, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010); \*Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011);*Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140, 2150 (2004); *Middleton v. McNeil*, 541 U.S.433, 124 S.Ct. 1830, 1832 (2004); *Mitchell v. Esparza*, 540 U.S. 1142, 124 S.Ct. 7, 12 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175 (2003); *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Holland v. Jackson*, 542 U.S. 649, 124 S.Ct. 2736, 159 L.Ed.2d 683 (2004), the United States Supreme Court gave the federal habeas courts the following admonition:

> As we explained in *Visciotti*, § 2254(d) requires that "state-court decisions be given the benefit of the doubt." *Id*., at 24, 123 S.Ct. 357. "[R]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Ibid*. The Sixth Circuit ignored those prescriptions.

> 124 S.Ct. at 2739.

*See Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357 (2002). The Supreme Court, in *Bobby v. Dixon*, ___ U.S. ___, 132 S.Ct. 26, 181 L.Ed.2d 328 (2011), stated:

> Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

29

disagreement." *Harrington v. Richter*, 562 U.S. ––––, ––––, 131 S.Ct. 770, 786–87, 178 L.Ed.2d 624 (2011).

132 S.Ct. at 27.

In addition, the clearly established law by which the state court decision is to be judged is the law that existed at the time of the state court decision. *See Fisher v. Greene*, ___ U.S. ___, 132 S.Ct. 38, 181 L.Ed.2d 336 (2011).

As is well established violations of state law are not within the jurisdiction of the federal habeas court. *See Swarthout v. Cooke*, ___ U.S. ___,131 S.Ct. 859, 178 L.Ed.2d 732 (2011); *Wilson v. Corcoran*, ___ U.S. ___, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

Looking to mixed questions of law and fact – that is, those containing issues of law and fact – the Fifth Circuit held in *Patterson v. Dretke*, 370 F.3d 480 (5th Cir. 2004):

> "Section 2254(d)(1) provides the standard of review for questions of law and mixed questions of law and fact." *Caldwell v. Johnson*, 226 F.3d 367, 372 (5th Cir.2000). A state court's decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412- 13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision "involve[s] an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413, 120 S.Ct. 1495.

370 F.3d at 483-84.

30

*See Williams v. Taylor*, 529 U.S. 362, 412- 13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000);

*Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002); *Carter v. Johnson*, 110 F.3d 1098,

1106-08 (5th Cir.) ("With a mixed question of law and fact, the facts are presumed correct

and then the law is reviewed for reasonableness, not de novo."). These are the standards that

must be applied by this Court in determining the claims made in this case.

Further, habeas relief generally may not be premised on rules of constitutional law that

have yet to be announced or that were announced after the challenged conviction became

final on direct review. *See Teague v. Lane*, 489 U.S. 288, 305-07, 109 S.Ct. 1060, 1073, 103

L.Ed.2d 334 (1989). *See also Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159

L.Ed.2d 442 (2004); *Beard v. Banks*, 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004).

In explaining what rules are to be retroactively applied the United States Supreme Court, held

in *Tyler v. Cain*, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001):

> The Supreme Court does not "ma[k]e" a rule retroactive when it merely
> establishes principles of retroactivity and leaves the application of those
> principles to lower courts. In such an event, any legal conclusion that is
> derived from the principles is developed by the lower court (or perhaps by a
> combination of courts), not by the Supreme Court.[4] *We thus conclude that a
> new rule is not "made retroactive to cases on collateral review" unless the
> Supreme Court holds it to be retroactive*.[5]

_____

FN4. Similarly, the Supreme Court does not make a rule retroactive through
dictum, which is not binding. *Cf. Seminole Tribe of Fla. v. Florida*, 517 U.S.
44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (contrasting dictum with
holdings, which include the final disposition of a case as well as the preceding
determinations "*necessary* to that result" (emphasis added)).

FN5. Tyler argues that defining "made" to mean "held" would create an

31

anomaly: When it is obvious that a rule should be retroactive, the courts of appeals will not be in conflict, and this Court will never decide to hear the case and will never make the rule retroactive. Thus, Tyler concludes, we should construe § 2244(b)(2)(A) to allow for retroactive application whenever the "principles" of our decisions, as interpreted by the courts of appeals, indicate that retroactivity is appropriate. This argument is flawed, however. First, even if we disagreed with the legislative decision to establish stringent procedural requirements for retroactive application of new rules, we do not have license to question the decision on policy grounds. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Second, the "anomalous" result that Tyler predicts is speculative at best, because AEDPA does not limit our discretion to grant certiorari to cases in which the courts of appeals have reached divergent results.

533 U.S. at 663, 121 S.Ct. at 2482. [Emphasis added.]

Thus, no new rule of constitutional law can be retroactively applied unless the Supreme Court has specifically held it to have retroactive application and it falls within the narrow exceptions to non-retroactivity.

Further, even if the Court finds error in some aspect of the case, before the Court can grant habeas relief, the Court must also conduct a harmless error analysis under the dictates of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *See Simmons v. Epps*, 654 F.3d 526, 537-42 (5th Cir.,2011); *Holland v. Anderson*, 583 F.3d 267, 279 (5th Cir. 2009); *Nixon v. Epps*, 405 F.3d 318, 328-332 (5th Cir. 2005); *Billiot v. Puckett*, 135 F.3d 311 (5th Cir. 1998), *cert. denied*, 525 U.S. 966, 119 S.Ct. 413, 142 L.Ed.2d 336 (1998). Any constitutional error found, must be subjected to an analysis of whether the "error had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637.

Basically, in order for habeas relief to be granted to petitioner, this Court must find that the State court resolution of the claims raised were contrary to or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Jones v. Dretke*, 375 F.3d 352, 354 (5th Cir. 2004).

Respondents would further point out that petitioner is not entitled to an evidentiary hearing on any of the claims presented in this petition. The AEDPA provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> > (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Thus, any factual basis of Loden's claims not developed in the State court proceedings do not fall into either of the exceptions noted by §2254. Respondents presume that petitioner wants this Court to conduct an evidentiary hearing so he can adduce evidence concerning the factual allegations raised in the petition. Such a hearing would be contrary to the dictates of the AEDPA and the precedent announced in *Cullen v. Pinholster, supra*. Petitioner is not

33

entitled to an evidentiary hearing to further develop facts not developed at trial, on direct appeal or state post-conviction review.

Further, some of the substantive claims Loden presents here were held to be procedurally barred from consideration on direct appeal or state post-conviction review. Thus, this Court is similarly barred from consideration of these claims as they rest on the adequate and independent state law ground of procedural bar or waiver unless petitioner can show cause and actual prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Further, in those instances where the state court has imposed a procedural bar and then gone on to address the merits of the claim, the procedural bar must be recognized by this Court as a bar to consideration of the merits of that claim. *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

In *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), the United States Supreme Court held:

> . . . Title 28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Because "[t]his requirement . . . refers only to remedies still available at the time of the federal petition," *Engle v. Isaac,* 456 U.S. 107, 125, n. 28, 102 S.Ct. 1558, 1570, n. 28, 71 L.Ed.2d 783 (1982), it is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law," *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989). However, the procedural bar that gives rise to exhaustion

34

provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default. *Teague v. Lane, supra,* at 298, 109 S.Ct., at 1068-1069; *Isaac, supra,* at 125, n. 28, 129, 102 S.Ct., at 1570, n. 28, 1572; *Wainwright v. Sykes,* 433 U.S. 72, 90-91, 97 S.Ct. 2497, 2508-2509, 53 L.Ed.2d 594 (1977).

518 U.S. at 161-162.

Earlier in *Teague v. Lane*, 489 U.S. 288 (1989), the Court held:

. . . "It is well established that 'where an appeal was taken from a conviction, the judgment of the reviewing court is *res judicata* as to all issues actually raised, and those that could have been presented but were not are deemed waived.'" *People v. Gaines,* 105 Ill.2d 79, 87-88, 85 Ill.Dec. 269, 274, 473 N.E.2d 868, 873 (1984) (citation omitted), cert. denied, 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985). The default prevents petitioner from raising the *Swain* claim in collateral proceedings under the Illinois Post-Conviction Act, Ill.Rev.Stat., ch. 38, ¶ 122-1 *et seq.* (1987), unless fundamental fairness requires that the default be overlooked. *People v. Brown,* 52 Ill.2d 227, 230, 287 N.E.2d 663, 665 (1972).

The fundamental fairness exception is a narrow one, and has been applied in limited circumstances. Compare *People v. Goerger,* 52 Ill.2d 403, 406, 288 N.E.2d 416, 418 (1972) (improper instruction on reasonable doubt "does not constitute such fundamental unfairness as to obviate the *res judicata* and waiver doctrines"), with *People v. Ikerd,* 47 Ill.2d 211, 212, 265 N.E.2d 120, 121 (1970) (fundamental fairness exception applies "where the right relied on has been recognized for the first time after the direct appeal"), and *People v. Hamby,* 32 Ill.2d 291, 294-295, 205 N.E.2d 456, 458 (1965) (fundamental fairness exception applies to claims that defendant asked counsel to raise on direct appeal). It is clear that collateral relief would be unavailable to petitioner. *See People v. Beamon,* 31 Ill.App.3d 145, 145-146, 333 N.E.2d 575, 575-576 (1975) (abstract of decision) (not invoking fundamental fairness exception and holding that *Swain* claim not raised on direct appeal could not be raised for the first time in collateral proceedings). As a result, petitioner has exhausted his state remedies under 28 U.S.C. § 2254(b) with respect to the *Swain* claim. See *Engle v. Isaac,* 456 U.S. 107, 125-126, n. 28, 102 S.Ct. 1558, 15701571, n. 28, 71 L.Ed.2d 783 (1982); *United States ex rel. Williams v. Brantley,* 502 F.2d 1383, 1385-1386 (CA7 1974).

35

Under *Wainwright v. Sykes,* 433 U.S. 72, 87-91, 97 S.Ct. 2497, 2506-2509, 53 L.Ed.2d 594 (1977), petitioner is barred from raising the *Swain* claim in a federal habeas corpus proceeding unless he can show cause for the default and prejudice resulting therefrom. See *Engle v. Isaac, supra,* 456 U.S., at 113-114, 117, 124-135, 102 S.Ct., at 1564-1565, 1566, 1570-1576 (applying procedural default rule to claim that had never been raised in state court). Petitioner does not attempt to show cause for his default. Instead, he argues that the claim is not barred because it was addressed by the Illinois Appellate Court. Cf. *Caldwell v. Mississippi,* 472 U.S. 320, 327- 328, 105 S.Ct. 2633, 2638-2639, 86 L.Ed.2d 231 (1985). We cannot agree with petitioner's argument. The Illinois Appellate Court rejected petitioner's Sixth Amendment fair cross section claim *without* mentioning the Equal Protection Clause on which *Swain* was based or discussing whether *Swain* allows a prosecutor to be questioned about his use of peremptory challenges once he volunteers an explanation. See *People v. Teague,* 108 Ill.App.3d, at 895-896, 64 Ill.Dec., at 405, 439 N.E.2d, at 1070. Accordingly, we hold that petitioner' *Swain* claim is procedurally barred, and do not address its merits.

Our application of the procedural default rule here is consistent with *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), which holds that a "procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar" (citations and internal quotations omitted). The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding. It is simply inapplicable in a case such as this one, where the claim was never presented to the state courts. *See id.,* at 268- 270, 109 S.Ct., at 1046-1047 (O'CONNOR, J., concurring).

489 U.S. at 297-299.

Respondents would submit that any claim that has not been fairly presented to the state courts is unexhausted. Under the provisions of § 99-39-5 (2)[7] and § 99-39-27 (9)[8], petitioner cannot

---

[7]One year statute of limitations bar.

[8]Successive petition bar.

now exhaust these claims as it they would be procedurally barred from consideration by the state court. Therefore, he has no recourse in state court. Respondents submit this Court must hold any such claims to be procedurally barred from consideration on federal habeas review.

Finally, it appears from the content of the claims outlined in the petition that all of claims petitioner is raising before this Court have been presented to the state courts in some fashion. The respondent would submit that the resolution of those claims by the Mississippi Supreme Court are not contrary to or an unreasonable application of established precedent as announced by the United States Supreme Court, nor do they represent an unreasonable application of the established precedent to the facts of this case. Loden is entitled to no habeas relief.

4.      Petitioner has not filed a separate memorandum of authorities in support of his petition with the Court. Respondents would request the Court to set a date certain for petitioner to file his memorandum in support of the petition if he intends to file such a document. Respondents would further request a period of sixty (60) days within which to file a responsive memorandum to any such memorandum filed by petitioner.

5.      Copies of the entire State trial court transcript of the original trial and the post-conviction hearing are being copied and will be filed with the Clerk of this Court as soon as copying can be completed, as well as the briefs, responses and petitions filed with the Mississippi Supreme Court. Also, all briefs and responses filed with the United States Supreme Court with regard to the petitions for writ of certiorari are also being filed with the

Clerk of this Court. Respondents know of no proceeding which were recorded, but have not yet been transcribed.

6.     Based on what respondents can discern from the claims raised in this petition, respondents are of the opinion that petitioner has exhausted all available state court remedies on the issues raised. As to any unexhausted claims contained in this petition, respondents would assert that further resort to state court in an attempt to exhaust these claims would be futile. *See* MISS. CODE ANN. § 99-39-1, *et seq* (Supp. 1999). These claims are now barred from consideration by this Court.

Wherefore, **PREMISES CONSIDERED**, Respondents respectfully move this Court deny an evidentiary hearing, dismiss the petition for writ of habeas corpus filed herein with prejudice, and deny petitioner a certificate of appealability to appeal this matter to the United States Court of Appeals for the Fifth Circuit.

Respectfully submitted,

**JIM HOOD**
ATTORNEY GENERAL
STATE OF MISSISSIPPI

**MARVIN L. WHITE, JR.**
ASSISTANT ATTORNEY GENERAL
Miss. Bar No. 7149
*(Counsel of Record)*

BY:   s/ *Marvin L. White, Jr.*

OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220

38

Jackson, Mississippi 39205
Telephone:    (601) 359-3680
Telefax:      (601) 359-3796
swhit@ago.state.ms.us

## CERTIFICATE OF SERVICE

This is to certify that I, Marvin L. White, Jr., Assistant Attorney General for the State of Mississippi, have electronically filed the foregoing ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS AND FOR OTHER RELIEF with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Charles S. Barquist, Esquire
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, CA 90013-1024
cbarquist@mofo.com

Charles E. Patterson, Esquire
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, CA 90013-1024

Mark R. McDonald, Esquire
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, CA 90013-1024
mmcdonald@mofo.com

Stacy Leah Ferraro, Esquire
P.O. Box 708
Flora, MS 39071
stacy@watervalley.net

This, the 15th day of March, 2012..

s/ *Marvin L. White, Jr.*