## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**THOMAS EDWIN LODEN**                                                   **Petitioner,**

**versus**                                               **No. 1:10-CV-00311-NBB**

**CHRISTOPHER EPPS, Commissioner,**
**Mississippi Department of Corrections, and**
**JIM HOOD, Attorney General,**                               **Respondents**

_____

### PETITIONER'S REPLY TO RESPONDENTS' ANSWER
_____

Petitioner files this Reply to the Answer to Petition for Writ of Habeas Corpus by a Person in State Custody (Dkt #17). Petitioner addresses the State's assertion of various procedural defenses and various matters pertaining to the State's discussion of the Antiterrorism and Effective Death Penalty Act ["AEDPA"]. Pursuant to the Court's Order of April 5, 2012 (Dkt #19), Petitioner will file a brief addressing the merits of the petition by July 13, 2012.

### FACTUAL BACKGROUND

The State 's fact section is a regurgitation of the state's proffer at the sentencing hearing. Tellingly, the state ignores the key facts relevant to Petitioner's claims for relief, namely the utter failure of his trial counsel, David Daniels and Jim Johnstone, to conduct a mitigation investigation. As outlined in great detail in Petitioner's Petition for Habeas Corpus, instead of conducting a thorough investigation, Attorneys Daniels and Johnstone did almost nothing. Because the attorneys failed to perform any investigation into Petitioner's guilt or innocence or mitigating

1

circumstances, they were not in a position to properly advise Petitioner about pleading guilty and waiving the jury for sentencing. Had trial counsel conducted a mitigation investigation, they would have uncovered substantial and compelling information that would have allowed a proper medical diagnosis of Petitioner's mental illnesses, humanized Petitioner and provided a complete picture of his character and life. Trial counsel's failure to do so is at the heart of this Petition for Habeas Corpus relief, yet the State's discussion of the factual background of this case completely ignores these salient and determinative facts.

## I.    General Overview of the State's Answer Regarding Procedural Defenses.

Under Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the Answer "must address the allegations in the petition.  In addition, it must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations."   The Advisory Committee Notes on Rule 5 spell out in greater detail the function of the State's Answer: "it permits the court and the parties to uncover quickly the disputed issues; it may reveal to the petitioner's attorney grounds for release that the petitioner did not know; and it may demonstrate that the petitioners's claim is wholly without merit." With respect to defenses such as procedural default, the State's Answer is deficient.[1]

Respondents assert that "some of the substantive claims Loden presents here were held to be procedurally defaulted from consideration on direct appeal or state post-conviction review." Answer at 34.  Respondents, however, fail to specify which claims are defaulted, nor do they identify the nature of the alleged default. In many instances, the "procedural" rule on which the

---

[1]Respondents also refer to the nonretroactivity doctrine formulated in *Teague v. Lane*, 489 U.S. 288, 305-07 (1989).  Answer at 31.  Respondents, however, did not assert that *Teague* bars any particular ground for relief. Because Respondents' invocation of *Teague* is insufficient, the Court may find that this defense has been waived. *See Blankenship v. Johnson,* 118 F.3d 312, 316 (5th Cir. 1997).

state court relied was *res judicata*, which is not a true procedural bar precluding federal habeas review. "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell,* 556 U.S. 449, 466 (2009); s*ee also Wellons v. Hall,* 130 S. Ct. 727, 730 (2010); *Ylst v. Nunnemaker*, 501 U.S. 797, 804 n.3 (1991); *Hodges v. Epps,* 648 F.3d 283, 287 (5th Cir. 2011); *Porter v. Gramley*, 112 F.3d 1308, 1316 (7th Cir. 1997) (state post-conviction court's refusal to hear claim on *res judicata* grounds does not bar federal habeas review; "[w]hen a state court invokes *res judicata*, it simply means that the state courts have already resolved the matter and want nothing more to do with it").

If the state courts relied on a genuine procedural rule, as opposed to *res judicata*, it was incumbent upon Respondents to raise it. Instead, Respondents' lack of specificity is insufficient under Rule 5(b). It is well settled that these procedural defenses are subject to waiver if not raised by a respondent at the earliest opportunity. *See, e.g., Trest v. Cain*, 522 U.S. 87, 89 (1997) (quoting *Gray v. Netherland,* 518 U.S. 152, 166 (1996) ("procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter'") (modification by the Court); *Emery v. Johnson*, 139 F.3d 191, 195 n.4 (5th Cir. 1998) ("If the state does not plead procedural default in the district court, it is waived"). A respondent can forfeit procedural defenses not only by failing to mention them at all, but also by failing to raise them with sufficient specificity or support them with adequate argument. *See, e.g., Moore v. Quarterman*, 454 F.3d 484, 490 n.8 (5th Cir. 2006) (respondent waived defense that habeas claim was procedurally barred by offering no supporting argument other than that "the issue is certainly debatable"); *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006) ("the warden's objection . . . was insufficient because she has not identified with specificity which statements are allegedly defaulted"; "Simply put, we cannot identify which statements the state contends are

3

procedurally barred. The warden's vague assertion of the procedural default defense is not sufficient to bar federal review"). *cf. Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ( citing *Villanueva v. CNA Ins. Cos.,* 868 F.2d 684, 687 n.5 (5th Cir. 1989)) ("A party who inadequately briefs an issue is considered to have abandoned the claim").

II.     **Response to Respondents' Discussion of AEDPA**.

Respondents devote the greater part of the Answer to matters of habeas law and procedure under AEDPA and hope to convey the impression that AEDPA bars the grant of relief for all but the most outlandish decisions by a state court. Nevertheless, the Supreme Court has reaffirmed that "[t]he writ of habeas corpus stands against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter,* 131 S. Ct. 770, 780 (2011). Because Respondents' Answer contains a number of distortions of and misconceptions about the principles of the AEDPA, Petitioner will begin by setting out a more accurate description of what they are and how they operate. In his brief addressing the substantive claims, Petitioner will discuss in greater detail whether any of the provisions of AEDPA are applicable or whether they constrain this Court from granting relief based on how those particular grounds were addressed in state court.

A.     The structure and function of 28 U.S.C. §§ 2254(a) and (d).

While it is not uncommon for litigants, and even courts, to use terms like 'deference' and 'standard of review' as shorthand when describing § 2254(d), these terms must not be mistaken for a license to forego substantive review of the constitutional questions raised by a habeas petition. Instead, § 2254(d) requires an exacting inquiry into the constitutional merits of Petitioner's claims. Under 2254(d), a federal court's ability to grant habeas corpus relief is subject to the following

4

limitations:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was not adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Essentially, Respondents contend that this Court need only ask whether, on their face, the Mississippi Supreme Court's decisions rejecting Petitioner's claims were contrary to federal law, or were somehow unreasonable, and if neither question can be readily answered in the affirmative, then relief must be summarily denied. Such a superficial review would be inconsistent, however, with the plain language of the statute and inconsistent with the Supreme Court's rulings applying the statute.

The first step to properly understanding the function of § 2254(d) is to recognize that it applies only if the state court has adjudicated a constitutional claim on the merits. "If the state court to which the claim was previously presented failed to resolve the merits, or failed to reach any component of the standard prescribed for the claim by federal law, then § 2254(d) is inapplicable to the federal court's analysis. *See, e.g., Wiggins v. Smith,* 539 U.S. 510, 534 (2003) ("our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis").

For a claim that was adjudicated on the merits by the state court, § 2254(d) acts as a limitation on the grant of relief. Thus, it applies *only if a federal constitutional violation has been*

*found to exist*; it should not influence a federal court's discharge of its Article III mandate to determine the existence vel non of constitutional error. *See, e.g.*, *Williams (Terry) v. Taylor*, 529 U.S. 362, 412 (2000) (2254(d) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court") *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("The requirements for habeas relief established by 28 U.S.C. § 2254(d) are thus satisfied").

That § 2254(d) speaks to the availability of a remedy, rather than to the existence of an error for which a remedy might be warranted, is clear for at least two reasons. First, the opening clause of the statute -- "An application for a writ of habeas corpus . . . shall not be granted" -- is an express directive to withhold the writ unless certain conditions are met; it says nothing, however, that purports to modify the ways in which federal courts analyze or resolve constitutional questions, which must necessarily precede any consideration of a possible remedy.

Furthermore, when Congress created the limitation on relief in § 2254(d) as part of AEDPA, it made no changes to § 2254(a), which confers federal habeas jurisdiction for the purpose of determining whether a habeas petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." Taken together, §§ 2254(a) and (d) form a framework in which federal courts are both authorized and obligated to determine the existence of constitutional violations in the first instance, but may not remedy such violations by issuing the writ of habeas corpus unless they further find one or more of the conditions enumerated in 2254(d)(1) or (2) to be satisfied. *See Danforth v. Minnesota,* 552 U.S. 264, 270 (2008) (discussing distinction between violations of constitutional rights and redressability of such violations in habeas cases); *Gonzalez v. Crosby*, 545 U.S. 524, 532 n.4 (2005) (defining a "merits" decision in a habeas case as "a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief

under 28 U.S.C. §§ 2254(a) and (d)").

This analysis also explains why Congress set as a condition for the application of § 2254(d) a prior state court adjudication. If the state court adjudicated the claim, a federal court should determine whether there is constitutional error and then examine whether a petitioner can overcome the limitations on the grant of relief in § 2254(d). In other words, the plain language of the statute limits the reach of 2254(d)'s limitation on relief to claims previously adjudicated on the merits in state court proceedings. *Fisher v. Texas*, 169 F.3d 295, 299-300 (5th Cir. 1999).

With respect to the claims that the state court did address on the merits in state court, this Court must address the limitations on relief of § 2254(d) before it may grant relief. "[C]learly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412, and may constitute a "series of precedents" establishing "the governing legal principle or principles." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "[T]he relevant Supreme Court precedent need not be directly on point, but must provide a 'governing legal principle' and articulate specific considerations for the lower courts to follow when applying the precedent." *Quinn v. Haynes*, 234 F.3d 837, 844 (10th Cir. 2000). *See also Ryan v. Miller*, 303 F.3d 231, 248 (2nd Cir. 2002) ("[A]lthough the Supreme Court must have acknowledged the right, it need not have considered the exact incarnation of that right or approved the specific theory in order for the underlying right to be clearly established"); *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002) ("[F]actually similar cases from the lower federal courts may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns.").

A state court decision will be "contrary to" established Supreme Court precedent if the state court either "applies a rule that contradicts the governing law set forth" by the Supreme Court or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court] precedent." *Williams*, 529 U.S. at 405-06. A state court decision will be an "unreasonable application of" the Supreme Court's clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id*. at 407-08, or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," *id*. at 407. "An unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 410. Rather, a state court decision is unreasonable if the decision is "objectively unreasonable." *Id*. at 409. If the state court's decision was contrary to or based on an unreasonable application of Supreme Court law, the federal court must evaluate the claim "de novo, without applying the deferential standard prescribed by § 2254(d)(1)." *Allen v. Lee*, 366 F.3d 319, 343 n.3 (4th Cir. 2004) (en banc). If a state court bases its decision on an inaccurate formulation of firmly established precedent "while ignoring the fundamental principles established by our most relevant precedents," its adjudication of a claim may result in a decision that is both 'contrary to' and 'involved an unreasonable application of, clearly established Federal law.'" *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 258 (2007).

The state is incorrect to suggest that "a reasonable good faith application of Supreme Court precedent will immunize the state court conviction from federal habeas reversal." Answer at 25 (quoting *Mata v. Johnson*, 99 F.3d 1261, 1268 (1996)). In *Williams*, the Supreme Court unambiguously held that the question of the reasonableness of a state court's adjudication was an

objective, not a subjective, inquiry. *Williams*, 529 U.S. at 409-10. Thus, the relevant question is not whether the state court acted in good faith but whether its treatment of a federal constitutional claim was objectively reasonable.

That federal habeas review of claims previously adjudicated on the merits in state court involves the sort of two-tiered analysis described above, as opposed to the superficial "reasonableness" review suggested by the State, is confirmed by the Supreme Court's decisions granting relief in cases governed by 2254(d).

For example, in *Williams*, the Court engaged in a thorough, detailed examination of the constitutional merits of the petitioner's ineffective assistance of counsel claim, and an equally thorough examination of the ways in which the Virginia Supreme Court's adjudication of that claim was both "contrary to" federal law (by applying the wrong constitutional rule to the petitioner's claim) and "involved an unreasonable application of" federal law (by, inter alia, failing to consider all of the evidence relevant to the claim). *See Williams*, 529 U.S. at 390-98. Likewise, in both *Rompilla* and *Wiggins*, the Court undertook its own detailed review of the merits of the petitioners' contention that trial counsel were ineffective for failing to adequately investigate, *Rompilla*, 545 U.S. at 381-87; *Wiggins*, 539 U.S. at 519-27, and performed a careful analysis of the ways in which the state courts' decision rejecting the petitioners' claims were based on an "unreasonable determination of the facts," and involved an "unreasonable application of" federal law, *Rompilla*, 545 U.S. at 389-90; *Wiggins*, 539 U.S. at 527-534. The Court took the same approach in *Miller-El v. Dretke*, 545 U.S. 231 (2005), again conducting a painstaking evaluation of the merits of the petitioner's *Batson v. Kentucky*, 476 U.S. 79 (1986), claim before further concluding that the state court's rejection of that claim was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding," such

9

that federal habeas relief was appropriate. The Supreme Court used the same framework in *Porter v. McCollum,* 130 S. Ct. 447 (2009) – first conducting a careful review of the mitigating evidence Porter claimed his trial counsel ineffectively failed to uncover and present during the penalty phase of his capital trial, before then determining that the state court's decision that Porter suffered no prejudice was an unreasonable application of federal law.

In *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 258 (2007), the Supreme Court found that the Texas state courts adjudicated claims that were contrary to and involved unreasonable applications of *Penry v. Lynaugh* 492 U.S. 302 (1989). The Supreme Court carefully reviewed the reasoning of the state court and found that the Texas courts had primarily relied on another case, *Graham v. Collins*, 506 U.S. 461 (1993), "to the exclusion of our other cases in this line of jurisprudence." *Abdul-Kabir,* 550 U.S. at 258. More specifically, the Supreme Court found that the Texas state courts ignored the relevance of certain mitigating evidence and chided the state judge for relying on an assumption "that is neither reasonable nor supported by the *Penry* opinion." *Id*. at 259; *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*) (state court adjudication can survive § 2254 (d)(1) only where "neither the reasoning nor the result of the state court decision contradicts" Supreme Court precedents).

Any doubt about a federal court's obligation to do more than merely assess the outcome of the state court proceeding for reasonableness was conclusively removed in *Panetti v. Quarterman*, 551 U.S. 930 (2007). There, the Supreme Court addressed a Texas state court's determination that the petitioner was competent to be executed and found the state court's adjudication defective under § 2254(d), not on the basis of the state court's ultimate conclusion on competency, but because of its failure to utilize a procedure for reaching that conclusion which comported with established due process principles. As the Court explained:

10

> When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires. Here, due to the state court's unreasonable application of *Ford* [*v. Wainwright,* 477 U.S. 399 (1986),] the factfinding procedures upon which the court relied were "not adequate for reaching reasonably correct results" or, at a minimum, resulted in a process that appeared to be "seriously inadequate for the ascertainment of the truth." [*Ford,*] 477 U.S. at 423-424 (Powell, J., concurring in part and concurring in judgment) (internal quotation marks omitted). We therefore consider petitioner's claim on the merits and without deferring to the state court's finding of competency.

*Panetti,* 551 U.S. at 953-54 (citing *Wiggins v. Smith,* 539 U.S. 510, 534 (2003); *Williams v. Taylor,* 529 U.S. 362, 395-97 (2000); *Early v. Packer,* 537 U.S. 3, 8 (2002) (*per curiam*).

In short, when considering Petitioner's claims for relief, this Court must not merely determine whether it can be said at a glance that the Mississippi Supreme Court's rejections of those claims were "contrary to" federal law, or somehow "unreasonable" in their treatment of the law or the facts. Rather, the questions are (a) whether Petitioner's constitutional rights have been violated, and if so (b) whether the Mississippi Supreme Court's failure to recognize and remedy those violations can be attributed to one or more analytical mistakes falling with the categories enumerated in § 2254(d)(1) or (2).

    B.   Section 2254(d) does not diminish this Court's duty to carefully review the state court process.

Respondents point out that in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), the Supreme Court held that a federal court may only consider the evidence before the state court when conducting its § 2254(d) analysis. *Pinholster*, however, did nothing to change the analysis that a federal habeas court undertakes, including an analysis of the process available in state court proceedings. Pinholster did not allege that the state court process prevented or impeded his

development of facts in support of this claims. Under such circumstances, the Court "emphasize[d] that review under § 2254(d) focuses on what the state court knew or did." *Id.* at 1399.

To determine whether a given state court decision contains any of the defects enumerated in § 2254(d)(1) or (2), this Court must look to the *process* used by the state court in adjudicating a constitutional claim. This is reflected with particular clarity in the statute's second and third categories ("involved an unreasonable application" and "was based on an unreasonable determination of the facts"), both of which incorporate past participles ("involved" and "was based on") explicitly directing the inquiry, not at the state court *outcome*, but at the subsidiary findings and reasoning that *produced* that outcome.

To properly evaluate the state court process, this Court must consider several well-established rules regarding how state courts are required to handle federal claims. First, a well-pleaded federal claim cannot be summarily dismissed. *See Coleman v. Alabama,* 377 U.S. 129 (1964); *Herman v. Claudy*, 350 U.S. 166 (1956); *Palmer v. Ashe*, 342 U.S. 134 (1952). Whether a federal claim was well-pleaded to the state court is itself a federal question. *See, e.g., Carter v. Texas,* 177 U.S. 442, 447 (1900); *Staub v. City of Baxley,* 355 U.S. 313, 318 (1958). A well-pleaded federal claim is one whose allegations are "plainly and reasonably made," *Davis,* 263 U.S. at 24, and are "not patently frivolous or false on a consideration of the whole record." *Herman*, 350 U.S. at 119; *Brown v. Western Ry. of Ala.,* 338 U.S. 294, 298 (1949) ("Strict local rules of pleading cannot be used to impose unnecessary burdens upon rights of recovery authorized by federal laws").

Moreover, as a matter of federal law, a state court is not free to summarily dismiss a well-pleaded federal claim merely because the respondents' answer denies the allegations. As the

Court explained in *Herman*, if a petitioner would be entitled to relief if he could prove his allegations, "[h]e cannot be denied a hearing merely because the allegations of his petition were contradicted by the prosecuting officers." 350 U.S. at 123. Instead, disputed material facts must be resolved through a hearing. *See Smith v. O'Grady,* 312 U.S. 329, 334 (1941) (reversing state court summary dismissal and remanding for a hearing where "[t]he state court erroneously decided that the petition stated no cause of action. If petitioner can prove his allegations the judgment upon which his imprisonment rests was rendered in violation of due process and cannot stand"); *Herman,* 350 U.S. at 120-21 (finding "the allegations in the petition and the answer reveal[] a sharp dispute as to the facts material to determining the constitutional questions involved . . . the very kind of dispute which should be decided only after a hearing"); *McNeal v. Culver,* 365 U.S. 109, 117 (1961). A court is obligated to facilitate fact development when a petitioner has shown "reason to believe" such development could lead to proof of a constitutional violation. *Harris v. Nelson,* 394 U.S. 286, 300 (1969).

Implicit in each of these principles is the requirement that the allegations in a well-pleaded complaint be taken as true for purposes of how to proceed. *See Pinholster*, 131 S. Ct. at 1402; *see also Smith*, 312 U.S. at 331 ("[I]n denying the writ the Nebraska court necessarily held that petitioner's allegations – even if proven in their entirety – would not entitle him to habeas corpus, even if the petition showed a deprivation of federally protected rights."); *Ex parte Hawk,* 321 U.S. 114, 116 (1944) ("From our examination of the papers presented to us we cannot say that [petitioner] is not entitled to a hearing on these contentions."); *Tompkins v. Missouri,* 323 U.S. 485 (1945); *House v. Mayo*, 324 U.S. 42 (1945).

To properly answer the questions set forth in § 2254(d), this Court must carefully review the state court's *process*. *See, e.g., Moore v. Dempsy,* 261 U.S. 86, 92 (1923) (holding that the

13

federal court should examine the facts and determine the truth of petitioner's allegations, given that "the [state court] corrective process afforded to the petitioners . . . does not seem sufficient"); *Ex parte Hawk,* 321 U.S. at 118 ("where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised . . . a federal court should entertain his petition for habeas corpus, else he would be remediless."). If the state court has failed to provide the process dictated by federal law, then it will necessarily lack the information required to apply the substantive elements of a federal claim in an informed, objectively reasonable manner. *See Wiley v. Epps,* 625 F.3d 199 (5th Cir. 2010) (refusing to apply AEDPA deference when petitioner satisfied state law requirements for a prima facie case but was nevertheless denied an evidentiary hearing); *Hall v. Quarterman,* 534 F.3d 365 (5th Cir. 2008) (federal hearing required because Hall was denied a meaningful hearing; as a result, there was a high risk of error in the state court proceedings).

The substantive test governing any federal claim raises a number of factual questions that must be properly resolved before the state court can reasonably determine the merits of the claim. As will be discussed in greater detail in Petitioner's forthcoming memorandum of authorities, there are disputes about his allegations. To take one example, Petitioner presented a wealth of evidence to the state court regarding trial counsel's failure to undertake any meaningful investigation regarding mitigating circumstances. Moreover, he uncovered information indicating that Petitioner's trial attorneys misrepresented the investigation they had done. One of his trial attorneys even went so far as to destroy his files even though he was on notice that Petitioner was actively seeking those files, to which he was entitled under state law. *See* Rule 22(c), M.R.A.P. Despite these factual issues, which also bear on the question as to whether Petitioner made a valid waiver of his right to a jury trial or his right to present mitigating evidence,

the state court denied a hearing.

Federal law requires the state court to have afforded sufficient process to resolve disputed facts and reach an accurate, reasonable, and non-arbitrary decision. The state court is not permitted to dismiss Petitioner's well-pleaded federal claims by arbitrarily resolving disputed factual questions against him without a hearing. A failure to apply a reasoned process according to the well-settled norms discussed above to resolve factual disputes amounts to arbitrary decision-making and a decision made in that manner is, by definition, objectively unreasonable. If a state court is to be afforded the last word on the federal questions raised by a well-pleaded claim, as § 2254 contemplates, then that court is obligated to adjudicate these questions on a record sufficient *both* to permit legitimate fact-finding *and* to inform appropriate application of the constitutional rules implicated by Petitioner's claims. Thus, whether the state court properly adjudicated Petitioner's federal claims in accordance with federal substantive and procedural law will necessarily inform this Court's determination of whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

C.      The evaluation of state court factual findings under AEDPA.

The State suggests that state court factual determinations are effectively beyond review by this Court. See, e.g., Answer at 26 ("Loden cannot meet this burden to overcome the finding of fact made by the State courts by clear and convincing evidence"). This is incorrect. As the Supreme Court demonstrated in *Wiggins*, and more recently in *Miller-El*, a faithful application of § 2254(d)(2) cannot be accomplished without looking beneath a state court's factual "findings" in order to assess the reasonableness of the conclusions reached by the state court in light of the

15

evidence that was before that court. *Miller-El*, 545 U.S. 231, 240-41 (2005); *Wiggins*, 539 U.S. at 528; *see also Guidry v. Dretke,* 397 F.3d 306, 328 (5th Cir. 2005) (granting relief in capital case where state court's decision was based on factual finding that ignored countervailing record evidence; under "§ 2254(d)(2), the district court concluded properly that the state court's adjudication of the claim was based on an unreasonable determination of the facts"); *Childress v. Johnson*, 103 F.3d 1221, 1226 n.7 (5th Cir. 1997) ("While the measure of deference afforded state court factual findings is substantial, we note that it is not absolute. Section 2254(d)(2) authorizes issuance of the writ if the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented'"); *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) (§ 254(d)(2) and (e)(1) "require meaningful federal court review of the evidentiary record considered by the state courts").

Moreover, while § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence," this presumption is likewise far from absolute. In fact, Congress clearly contemplated that habeas petitioners would challenge, and federal courts would consider, whether state court factual determinations are supported by the record when it enacted § 2254(f).[2]   If an examination of the sufficiency of the record evidence to support a state court's factual findings were off limits under § 2254(e)(1), it would make no sense to provide, in the very next subdivision of the same statute, a mechanism for facilitating review of precisely that question. Furthermore, the Supreme Court in its analysis in

---

[2]Section 2254(f) addresses the requirements for providing the federal court with the state court record in situations where "the applicant challenges the sufficiency of the evidence adduced in such State court proceedings to support the State court's determination of a factual issue made therein . . . ."

both *Wiggins* and *Miller-El* has clearly rejected any arguments that federal courts are required by § 2254(e)(1) to take state court factual determinations at face value.

At first glance, some tension does appear to exist between § 2254(e)(1), under which state court factual findings are to be presumed correct, and § 2254(d)(2), which can only be read as requiring federal habeas courts to look beneath a state court's factual findings to assess their reasonableness in light of the record that was before the state court. *See Rice v. Collins,* 546 U.S. 333, 339 (2006) (acknowledging but declining to resolve dispute over whether both §§ 2254(e)(1) and (d)(2) should apply to a particular state court factual determination). This tension largely dissolves, however, when the two provisions are viewed with a practical eye, in light of the principle that a "statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *Washington Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879)).

Viewed through this lens, it becomes clear that the function of § 2254(e)(1), which is situated immediately preceding the provision limiting the availability of federal evidentiary hearings, *see* § 2254(e)(2), is to define the burden a prisoner must bear when seeking to disprove a state court's factual findings using evidence that was not before the state courts. Where, on the other hand, the evidentiary record before the federal court is the same as the record considered by the state court, § 2254(d)(2), with its focus on the reasonableness of factual determinations "in light of the evidence presented in the state court proceeding," provides the mechanism for dealing with a petitioner's contention that a state court's resolution of (or failure to resolve) a factual issue was materially unreasonable. *See generally Lambert v. Blackwell*, 387 F.3d 210, 235-37 (3rd Cir. 2004); *Taylor v. Maddox*, 366 F.3d 992, 999-1008 (9th Cir. 2004).

In any event, the most important point for purposes of this case is that none of the instances

17

of the state court misapprehending the facts relating to Petitioner's claims that were adjudicated on the merits in state court present close questions likely to give rise to difficult issues of statutory construction or application. To the contrary, as will be discussed in Petitioner's forthcoming brief, the material defects in the state court's factual determinations are obvious. And, where this Court finds the state court decision to be an unreasonable determination of the facts in light of the evidence presented or the state court failed to make a relevant factual finding, this Court's ability to grant relief is not limited by § 2254(d) or § 2254(e). Likewise, because the state court did not grant an evidentiary hearing, any factual findings that it made are "unreasonable" and should not be entitled to a presumption of correctness. *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004); *but see Valdez v. Cockrell*, 274 F.3d 941, 948-50 (5th Cir. 2001).

      D.    The availability of a federal evidentiary hearing.

In its Answer, Respondents purport to recite the law governing the availability of a federal evidentiary hearing, first quoting the text of § 2254(e)(2), then declaring: "Thus, any factual basis of Loden's claims not developed in the State court proceedings do not fall into either of the exceptions noted by § 2254." Answer at 33. This suggests that § 2254(e)(2) operates as a sort of "strict liability" provision that precludes federal evidentiary hearings whenever facts have gone undeveloped in state court, regardless of the reason why. The Supreme Court, however, squarely rejected precisely this reading of the statute in *(Michael) Williams v. Taylor*, 529 U.S. 420 (2000), and instead read § 2254(e)(2)'s opening clause ("If the applicant has failed to develop") to mean that a petitioner is not subject to the AEDPA's restrictions on federal evidentiary hearings at all "unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 432; *see also McDonald v. Johnson*, 139 F.3d 1056, 1058-60 (5th Cir. 1998); *Fisher v. Lee*, 215 F.3d 438, 454 (4th Cir. 2000). Once a federal court determines

18

pursuant to *Williams* and § 2254(e)(2) that the prisoner was not at fault for the lack of factual development before the state courts, it should convene an evidentiary hearing on any factual issue not adequately resolved by the state courts, so long as the petitioner has alleged facts which, if proven, would entitle him to relief. See Rule 8, Rules Governing Section 2254 Cases in the United States District Courts; *Townsend v. Sain*, 372 U.S. 293, 312 (1963); *Guidry v. Dretke,* 397 F.3d 306, 323 (5th Cir. 2005); *Murphy v. Johnson*, 205 F.3d 809, 815-816 (5th Cir. 2000). Petitioner has alleged such facts in the Petition.

*Pinholster* provides no barrier to a federal evidentiary hearing if the requirements of § 2254(d)(1) or (2) are satisfied. *Pinholster*, 131 S. Ct. at 1401; *see also id.* at 1412 (Breyer, J., concurring in part) ("Like the Court, I believe that its understanding of 28 U.S.C. § 2254(d)(1) does not leave AEDPA's hearing section, § 2254(e), without work to do. An offender who believes he is entitled to habeas relief must first present a claim (including his evidence) to the state courts. If the state court rejects the claim, then a federal habeas court may review that rejection on the basis of the materials considered by the state court. If the federal habeas court finds that the state court decision fails (d)'s test (or if (d) does not apply), then an (e) hearing may be needed."). As Justice Breyer explained, a hearing may be needed in these circumstances for a variety of permissible purposes:

> [I]f the state-court rejection assumed the habeas petitioner's facts (deciding that, *even if* those facts were true, federal law was not violated), then (after finding the state court wrong on a (d) ground) and (e) hearing might be needed to determine whether the facts alleged were indeed true. Or if the state-court rejection rested on a state ground, which a federal habeas court found inadequate, then an (e) hearing might be needed to consider the petitioner's (now unblocked) substantive claim. Or if the state-court rejection rested on one of only several related federal grounds (e.g., that counsel's assistance was not "inadequate"), then, if the federal court found that the state court's decision in respect to the ground it

> decided violated (d), an (e) hearing might be needed to consider other related parts of the whole constitutional claim (e.g., whether the counsel's "inadequate" assistance was also prejudicial).

*Id. See also Morris v. Thaler*, 425 Fed.Appx 415, 2011 WL 1886096, *7 n.1 (5th Cir. 2011) (a hearing may be necessary "not to evaluate the state court's decision, but to determine whether [petitioner's allegations are true").

E.    Assessing the Prejudicial Effect of a Constitutional Error.

Discussing harmless error, Respondents broadly asserts that if the Court finds error in the case, then it "must also conduct a harmless error analysis under the dictates of *Brecht v. Abrahamson*, 507 U.S. 619 (1993)." Answer at 32. However, the majority of Petitioner's grounds for relief concern allegations of trial counsel's ineffectiveness. This claim does not require a federal court to apply the *Brecht* standard for assessing the prejudicial impact of constitutional error. *See, e.g, Kyles v. Whitley*, 514 U.S. 419, 436 (1995); *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (*en banc*).

WHEREFORE, for the foregoing reasons, and for any additional reasons that may be set forth in Petitioner's brief on the merits, this Court should find Respondents have waived the procedural default defense and reject Respondents' misreading of AEDPA.

Respectfully Submitted,

THOMAS E. LODEN, Petitioner


By:   /s/ Stacy Ferraro
Stacy Ferraro
MS Bar #100263
P.O. Box 708
Flora, Mississippi   39071
Telephone:  (601) 853-8331
Facsimile:   (601) 853-8331

Charles E. Patterson (appointed pro hac vice)
Charles S. Barquist (appointed pro hac vice)
Mark R. McDonald (appointed pro hac vice)
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California   90013-1024
Telephone:  213.892.5200
Facsimile:   213.892.5454
Attorneys for Petitioner

## <u>CERTIFICATE OF SERVICE</u>

   I, Stacy Ferraro , hereby certify that I have served this day, through the court's electronic filing system, a copy of the foregoing Petitioner's Reply to Respondents' Answer on the following counsel for Respondents.

     Marvin L. White, Jr.
     Assistant Attorney General
     P. O. Box 220
     Jackson, MS 39205-0220

This the 4th day of June 2012.


          By: <u> /s/ Stacy Ferraro  </u>